IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Electronically Filed on November 12, 2004)

| | |
|---|---|
| **PSEG NUCLEAR, L.L.C.** and **PUBLIC SERVICE ELECTRIC AND GAS COMPANY**,<br><br>Plaintiffs,<br><br>v.<br><br>**THE UNITED STATES**,<br><br>Defendant. | No. 01-551C<br>(Judge Sypolt) |

**PLAINTIFFS' RESPONSE TO THE COURT'S**
**OCTOBER 14, 2004 ORDER TO SHOW CAUSE**

Alex D. Tomaszczuk
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102
(703) 770-7940
(703) 770-7901 (fax)
Counsel of Record for Plaintiffs
PSEG Nuclear, L.L.C. and
Public Service Electric and Gas Company

Of Counsel:

Jay E. Silberg
David J. Cynamon
Devon E. Hewitt
Michael G. Lepre
Daniel S. Herzfeld
Jack Y. Chu
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

November 12, 2004

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INDEX TO APPENDIX ........ iv

INTRODUCTION ........ 2

ARGUMENT ........ 3

I. SECTION 119 OF THE NWPA GOVERNS JUDICIAL REVIEW OF ACTIONS OR INACTIONS UNDER THE NWPA, NOT CONTRACT CLAIMS INVOLVING THE PLAINTIFFS' CONTRACTS WITH DOE ........ 5

II. THE STANDARD CONTRACT IS A CONTRACT, NOT A REGULATION ........ 10

- A. The NWPA Directs DOE To Enter Into "Contracts" ........ 11
- B. The Standard Contract Between The Parties Includes The Four Essential Elements Of A Government Contract ........ 13
- C. The D.C., Eleventh, And Federal Circuits Have Treated The Standard Contract As A Contract ........ 16
- D. The Parties And This Court Are Bound By The Prior Decisions ........ 19

III. THE STANDARD CONTRACT IMPOSES AN UNCONDITIONAL OBLIGATION ON DOE TO BEGIN DISPOSING OF SNF NO LATER THAN JANUARY 31, 1998 ........ 22

IV. IF THE COURT CONCLUDES THAT IT LACKS SUBJECT-MATTER JURISDICTION, IT SHOULD STAY ALL FURTHER PROCEEDINGS PENDING APPEAL ........ 24

CONCLUSION ........ 26

# TABLE OF AUTHORITIES

## Cases

*Alabama Power Co. v. DOE*,
307 F.3d 1300 (11th Cir. 2002) ........ 11, 15, 18, 19, 20

*Atacs Corp. v. Trans World Communications, Inc.*,
155 F.3d 659 (3d Cir. 1998)........ 14

*Barrett Refining Corp. v. United States*,
242 F.3d 1055 (Fed. Cir. 2002)........ 13

*California v. United States*,
271 F.3d 1377 (Fed. Cir. 2001)........ 10

*Commonwealth Edison Co. v. DOE*,
877 F.2d 1042 (D.C. Cir. 1989) ........ 11, 20, 21

*FDIC v. Maco Bancorp, Inc.*,
125 F.3d 1446 (Fed. Cir. 1997)........ 24

*General Electric Uranium Management Corp. v. DOE*,
764 F.2d 896 (D.C. Cir. 1985) ........ 9

*Indiana Michigan Power Co. v. DOE*,
88 F.3d 1272 (D.C. Cir. 1996) ........ 2, 10, 14, 15, 20

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982)........ 19

*Int'l Air Response v. United States*,
324 F.3d 1376 (Fed. Cir. 2003)........ 19

*Maine Yankee Atomic Power Co. v. United States*,
225 F.3d 1336 (Fed. Cir. 2000)........ passim

*Morton v. Mancari*,
417 U.S. 535 (1974)........ 10

*New Hampshire v. Maine*,
532 U.S. 742 (2001)........ 7

*Northern States Power Co. v. DOE*,
128 F.3d 754 (D.C. Cir. 1997) ........ 2, 10, 16, 19, 20

*Northern States Power Co. v. DOE*,
1998 U.S. App. LEXIS 12919, Nos. 97-1064 et al. (D.C. Cir. May 5, 1998) ........ passim

*Northern States Power Co. v. United States*,
224 F.3d 1361 (Fed. Cir. 2000) .......... 8, 16, 18, 20, 23

*Regional Rail Reorg. Act Cases*,
419 U.S. 102 (1974) .......... 10

*Roedler v. DOE*,
255 F.3d 1347 (Fed. Cir. 2001) .......... 17, 20

*Ruckelhaus v. Monsanto Co.*,
467 U.S. 986 (1984) .......... 10

*Stoll v. Gottlieb*,
305 U.S. 165 (1938) .......... 20

*United States v. Stauffer Chemical Co.*,
464 U.S. 165 (1984) .......... 19

*United States v. Seckinger*,
397 U.S. 203 (1970) .......... 15

*Williams v. Walker-Thomas Furniture Co.*,
350 F.2d 445 (D.C. Cir. 1965) .......... 16

*Wisconsin Elec. Power Co. v. Dep't of Energy*,
211 F. 3d 646 (D.C. Cir. 2000) .......... passim

*Wisconsin Elec. Power Co. v. Hodel*,
626 F. Supp. 424 (D.D.C. 1984) .......... 8, 9

**Federal Statutes, Regulations and Rules**

28 U.S.C. § 1292 .......... 1, 24, 26

28 U.S.C. § 1346 .......... 17

28 U.S.C. § 1491 .......... 2

28 U.S.C. § 1631 .......... 1, 24, 26

Nuclear Waste Policy Act, § 119, 42 U.S.C. § 10139 .......... passim

Nuclear Waste Policy Act, 42 U.S.C. § 10157 .......... 12

Nuclear Waste Policy Act, § 302, 42 U.S.C. § 10222 .......... passim

# INDEX TO APPENDIX


Description | Page

Order Granting Motion For Leave To Intervene In Indiana Michigan Power Co. v. DOE, No. 95-1279 (D.C. Cir., filed on July 24, 1995) ........ 1

Docketing Of Petition For Review In Pub. Serv. Elec. & Gas Co. v. DOE, No. 95-1463 (D.C. Cir., docketed on September 7, 1995) ........ 2

Excerpt From Brief In Opposition For The Utility Respondents' to Petition For A Writ Of *Certiorari* in DOE v. Northern States Power Co., No. 98-384 ........ 3

Cover Page From Joint Petition For Review In Alabama Power Co. v. DOE, No. 00-16138 (11th Cir., filed on November 22, 2000) ........ 7

Excerpts From Respondent's Motion To Dismiss In Wisconsin Elec. Power Co. v. DOE, No. 99-1342 (D.C. Cir., filed on October 12, 1999) ........ 8

Excerpt Of Signature Page From Contract No. DE-CR01-83NE44411 Executed Between PSEG and DOE (June 13, 1983) ........ 15

Excerpt Of Signature Page From Contract No. DE-CR01-83NE44480 Executed Between PSEG and DOE (June 13, 1983) ........ 17

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **PSEG NUCLEAR, L.L.C.** and **PUBLIC SERVICE ELECTRIC AND GAS COMPANY**, Plaintiffs, | ) | |
| v. | ) | No. 01-551C (Judge Sypolt) |
| **THE UNITED STATES**, Defendant. | ) | |

**PLAINTIFFS' RESPONSE TO THE COURT'S**
**OCTOBER 14, 2004 ORDER TO SHOW CAUSE**

Plaintiffs Florida Power & Light Company ("FPL"), Duke Power ("Duke"), a division of Duke Energy Corporation, Nebraska Public Power District ("NPPD"), and PSEG Nuclear, L.L.C. and Public Service Electric and Gas Company (together, "PSEG") submit this response to the Court's Order to Show Cause ("OSC") entered on October 14, 2004.[1] Plaintiffs respectfully submit that the Court should reconsider and reverse its view that it lacks subject-matter jurisdiction over the contract claims in these cases and should proceed to adjudicate the cases on their merits. If the Court nonetheless determines that it lacks subject-matter jurisdiction, Plaintiffs respectfully request that the Court (1) transfer the contract claims in the FPL and Duke cases to the D.C. Circuit pursuant to 28 U.S.C. § 1631, certify that transfer order for interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(2), and stay that order, as well as further

[1] This brief is captioned individually for each case to which the Court addressed its OSC and, therefore, a separate filing will be made in each case. Additionally, each brief is accompanied by a separate appendix, each of which varies only by the incorporation of excerpts from the captioned Plaintiff's contract(s) with DOE. "A_" refers to each brief's accompanying appendix.

consideration of Plaintiffs' takings claims, pending Plaintiffs' appeal; and (2) dismiss the breach of contract claims in the NPPD and PSEG cases, certify that dismissal for interlocutory appeal, and maintain the stay of the takings claims pending Plaintiffs' appeal.

**INTRODUCTION**

Over the past eight years, three different U.S. Courts of Appeals (the D.C. Circuit, the Eleventh Circuit, and the Federal Circuit) have issued decisions that recognize that: (1) the Department of Energy's ("DOE") Standard Contract for Disposal of Spent Nuclear Fuel ("SNF") and High-Level Radioactive Waste (the "Standard Contract") is a contract, not a regulation; (2) DOE breached the Standard Contract by failing to perform its unconditional contract obligation to begin disposing of SNF by January 31, 1998; and (3) Standard Contract holders may seek damages from DOE for its breach of contract.

Following the D.C. Circuit's rulings in *Indiana Michigan Power Co. v. DOE*, 88 F.3d 1272, 1277 (D.C. Cir. 1996) and *Northern States Power Co. v. DOE*, 128 F.3d 754 (D.C. Cir. 1997) ("*Northern States I*"), Plaintiffs and other utilities filed damage actions against DOE in the Court of Federal Claims, pursuant to the Tucker Act, 28 U.S.C. § 1491(a). An effort by some utilities to pursue contract remedies against DOE in the D.C. Circuit was successfully opposed by DOE, which claimed that the D.C. Circuit lacked jurisdiction to consider such contract (as opposed to statutory) claims. *See Wisconsin Elec. Power Co. v. DOE*, 211 F.3d 646 (D.C. Cir. 2000) ("*WEPCO*"). Judicial estoppel precludes DOE from taking a different position now.

Consistent with the appellate rulings that have been issued, the parties and the various judges of this Court have spent significant time and resources on the merits of the instant cases, focusing on such issues as the appropriate acceptance rate and the types of damages available for

partial breach of contract. One case, *Indiana Michigan Power Co. v. United States*, No. 98-486C (Hodges, J.), has gone to trial and is now on appeal.

Now, in its OSC, this Court has parted company with all of the prior decisions and has concluded that it lacks subject-matter jurisdiction over the instant cases. The position staked out in the OSC, however, violates well-established principles of res judicata and stare decisis. For the reasons described below, Plaintiffs submit that prior decisions of the D.C. Circuit and Federal Circuit are binding on this Court and conclusively establish that this Court has subject-matter jurisdiction over the present breach-of-contract suits. And, even putting aside the extensive case law that the OSC dismisses, Plaintiffs respectfully submit that the OSC is simply incorrect in its jurisdictional analysis.

**ARGUMENT**

The OSC determines that this Court lacks subject-matter jurisdiction over these breach-of-contract cases because the judicial review provision of the Nuclear Waste Policy Act of 1982 ("NWPA"), Section 119, gives original and exclusive jurisdiction to the federal courts of appeals to review challenges to agency actions or inactions under the NWPA, including Section 302(a)(5)(B). OSC at 24-34. Plaintiffs agree that Section 119 provides for original and exclusive jurisdiction in the courts of appeals for judicial review of final agency decisions or actions under the NWPA, or review of the failure of DOE to take any action required by the NWPA. Indeed, Plaintiffs and other utilities relied on Section 119 in seeking judicial review in the D.C. Circuit regarding DOE's misinterpretation of its obligations under Section 302(a)(5)(B), which led to the decisions in *Indiana Michigan* and its progeny.

But whether Section 119 provides jurisdiction for review of decisions or actions arising under the NWPA, including Section 302, is not the relevant question before this Court. The issue here is whether the present cases for breach of contract challenge DOE decisions or actions arising under the NWPA. They do not. The present cases assert claims against DOE for breach of its independent, contractual obligations under each Plaintiff's contract with DOE, for which each Plaintiff seeks money damages. Section 119 does not give jurisdiction to the courts of appeals to hear and decide breach of contract cases, nor does it waive the government's sovereign immunity to damage claims. Thus, Section 119 can apply to the present cases only if it is found that: (1) the Standard Contract is not really a contract, but rather a regulation implementing the NWPA; and (2) DOE's obligation to begin disposing of SNF by January 31, 1998 is not an unconditional contractual obligation, breach of which gives the affected utilities a right to recover money damages, but rather is a statutory prescription that is conditioned on the existence of an operational repository for SNF. Although the OSC reached both such conclusions, those conclusions have been uniformly rejected by the prior decisions of the D.C. Circuit, Eleventh Circuit, and Federal Circuit.

This is not a situation in which either the parties or another court are attempting to confer subject-matter jurisdiction on this Court that would not otherwise exist. Rather, the prior litigation between the parties has established the factual and legal foundations on which Tucker Act jurisdiction is properly based – specifically, the existence of a breach of contract claim against DOE for failing to perform its unconditional obligation under each Plaintiff's contract with DOE to begin disposing of SNF by January 31, 1998.

## I. SECTION 119 OF THE NWPA GOVERNS JUDICIAL REVIEW OF ACTIONS OR INACTIONS UNDER THE NWPA, NOT CONTRACT CLAIMS INVOLVING THE PLAINTIFFS' CONTRACTS WITH DOE

The OSC devotes considerable attention to whether the NWPA's judicial review provision, Section 119, governs challenges to agency actions under NWPA § 302(a)(5), and concludes that it does. OSC at 24-34. As noted earlier, however, there is no dispute on that issue. The relevant question here is whether the present cases constitute challenges to agency actions or inactions under NWPA § 302(a)(5). The answer to that question is clearly "no."

In its analysis of Section 119, the OSC fails to recognize the crucial distinction between judicial challenges to DOE's failure to comply with the statutory obligations imposed by the NWPA, on the one hand, and suits to recover damages for DOE's breach of its separate, independent contractual obligations under the Standard Contract. Section 119 clearly provides for original and exclusive jurisdiction in the federal courts of appeals for judicial review of final agency decisions or actions under the NWPA, or to challenge the failure of DOE to take any action required by the NWPA. Just as clearly, Section 119 says nothing about jurisdiction to review breach-of-contract claims arising out of DOE's failure to adhere to its contractual obligation under each Plaintiff's contract with DOE. Unlike the claims in *Indiana Michigan*, *Northern States I*, and other cases in which the courts of appeals exercised jurisdiction under Section 119, the present cases do not ask the Court to order DOE to take any particular action under the NWPA or to make a different decision in the application of that statute. Rather, Plaintiffs simply ask for damages for DOE's breach of its contract with each Plaintiff. Such claims, like any other government contract claims, are within the core of the Tucker Act jurisdiction of this Court.

That is precisely the holding of *WEPCO*. The OSC characterizes that decision as the only case holding that "disputes regarding agency action under the NWPA belonged elsewhere than in a federal court of appeals." OSC at 33. But the D.C. Circuit held no such thing in *WEPCO*. Rather, the court there reaffirmed that Section 119 provides jurisdiction in the courts of appeals for disputes regarding agency action under the NWPA, but pointed out that the utilities' claims for breach of their contracts with DOE did not arise under the NWPA because the statute itself did not require performance of the obligation to begin disposing of SNF by January 31, 1998. *WEPCO*, 211 F.3d at 648. As the court explained, "a contract 'breach by the DOE does not violate a statutory duty.' The Court of Federal Claims, not this court, is the proper forum for adjudicating contract disputes." *Id.* (citation omitted).

The D.C. Circuit did not reach this conclusion sua sponte. It did so in response to DOE's motion to dismiss, in which DOE contended that Section 119 of the NWPA did not provide jurisdiction to the court of appeals to consider contract claims and contract remedies. *See* Respondents' Motion to Dismiss at 7-10, 13, 14, *Wisconsin Elec. Power Co. v. DOE*, 211 F.3d 646 (D.C. Cir. 2000) (No. 99-1342), A9-A14 ("Respondents' Motion to Dismiss, *WEPCO*"). As DOE there stated:

> Section 302(a)(5)(B), 42 U.S.C. 10222(a)(5)(B), only requires DOE to undertake such an obligation [to dispose of SNF] in its contracts with the utilities, and DOE has fully satisfied that statutory directive. Because Section 302(a)(5)(B) does not further require performance, Section 119(a)(1)(B) does not authorize actions to enforce that deadline.
>
> . . . . Section 119 . . . does not provide jurisdiction to enforce rights under the [Standard] contract. That provision does not waive the sovereign immunity of the United States.

*Id.* at 14 (citations omitted), A14.

Having successfully argued that NWPA Section 119 does not provide subject-matter jurisdiction in the courts of appeals over claims arising out of the Standard Contract, DOE is judicially estopped from taking a contrary position here. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Accordingly, although the Court itself is not bound by DOE's position, Plaintiffs expect that in its response to the OSC, DOE will join Plaintiffs in contending that jurisdiction over these cases lies in this Court under the Tucker Act, not in the courts of appeals under Section 119.

Both the *WEPCO* decision and DOE's motion in that case were based on an earlier decision of the D.C. Circuit. In a post-judgment ruling to *Northern States I*, the D.C. Circuit clarified its earlier decision by explaining that DOE's obligation to begin disposing of SNF by January 31, 1998, was a <u>contractual</u> obligation imposed by the Standard Contract, not a <u>statutory</u> obligation imposed directly by the NWPA. *Northern States Power Co. v. DOE*, 1998 U.S. App. LEXIS 12919, Nos. 97-1064 et al. (D.C. Cir. May 5, 1998) ("*Northern States II*"). The court explained that its initial decision "describes the nature of the DOE's obligation, which was created by the NWPA and undertaken by the DOE under the Standard Contract. <u>It does not place the question of contract remedies in this court, nor set up this court as a source of contract remedies outside the Standard Contract</u>." *Id.* at *4 (emphasis added). According to the D.C. Circuit, "While the [NWPA] requires the DOE to include an unconditional obligation in the Standard Contract, it does not itself require performance. Breach by the DOE does not violate a statutory duty; thus, our jurisdiction to hear allegations of failure to take an action required under

the NWPA, *see* 42 U.S.C. § 10139(a)(1)(B), does not provide a basis for a move-fuel order." *Id.* at *5.[2]

Pursuant to that unequivocal ruling, Plaintiffs and other utilities filed their breach of contract claims in this Court. In *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1341-42 (Fed. Cir. 2000) and the companion decision in *Northern States Power Co. v. United States*¸ 224 F.3d 1361 (Fed. Cir. 2000) ("*Northern States III*"), the Federal Circuit rejected DOE's assertion that the utilities were required to exhaust their administrative remedies under the Disputes Clause of the Standard Contract and held that the utilities could pursue their breach of contract claims in the Court of Federal Claims. The Federal Circuit also affirmed the lower court's entry of summary judgment, finding that DOE had in fact breached its unconditional contractual obligation to begin disposing of SNF by January 31, 1998, and was liable in damages for that breach. *Maine Yankee*, 225 F.3d at 1343. In light of the DC. Circuit's prior rulings in *Northern States I* and *II*, the Federal Circuit's determination that the utilities could pursue breach-of-contract claims against DOE directly in the Court of Federal Claims contradicts the OSC's view that it lacks jurisdiction to hear those claims.

The distinction between jurisdiction over statutory challenges and jurisdiction over contract claims also makes eminent sense in terms of the structure and capabilities of the respective courts in which such claims are brought. The OSC quotes from the decision in *Wisconsin Elec. Power Co. v. Hodel*, 626 F. Supp. 424, 426-27 (D.D.C. 1984), *aff'd*, 778 F.2d 1

---

2 Conversely, however, the D.C. Circuit rejected DOE's contention that because the Tucker Act gives the Court of Federal Claims exclusive jurisdiction over contract claims against the government, the D.C. Circuit could not force DOE to treat its contractual duty to begin disposing of SNF by January 31, 1998, as unconditional. The court pointed out that "[t]he statutory duty to include an unconditional obligation in the contract is independent of any rights under the contract." *Id.*

(D.C. Cir. 1985) to support its conclusion that Section 119 provides jurisdiction for appeals arising from Section 302 of the NWPA. OSC at 31. The very considerations outlined in *Hodel*, however, demonstrate why Section 119 cannot be read to provide jurisdiction over claims arising under the Standard Contract. In appeals involving agency action or interpretations of the NWPA, there is "little or no fact collecting or fact finding for a trial court." *Hodel*, 626 F. Supp. at 426-27. *See also General Elec. Uranium Management Corp. v. DOE*, 764 F.2d 896, 903 (D.C. Cir. 1985) (policy favoring court of appeals review under Sec. 119 because "there is no need for an evidentiary hearing.") Rather, the appellate court reviews DOE's action (or inaction) under the NWPA based on the agency record. The situation with contract claims is exactly the opposite. Plaintiffs' damage claims against DOE for breach of their contracts with DOE involve a great deal of "fact collecting [and] fact finding for a trial court." The courts of appeals, by contrast, are not designed to consider or resolve the kind of factual issues that must be determined in these cases.

Thus, *WEPCO* is fully consistent with the language of Section 119 as well as all of the other judicial interpretations of that provision of the NWPA. Once it is recognized that Section 119 deals with review of statutory claims, not contract claims, the concerns expressed in the OSC about the "bifurcation of review between a trial and appellate court" disappear. OSC at 10. There is no "bifurcated review" of agency action or inaction under the NWPA. Section 119 places judicial review of DOE's interpretation of that statute exclusively in the appellate courts. Pursuant to that provision, the utilities challenged DOE's interpretation of NWPA § 302(a)(5)(B) in the D.C. Circuit. As a result of that challenge, it has been established that Section 302(a)(5)(B) required DOE to include in the Standard Contract an unconditional obligation to begin disposing of SNF no later than January 31, 1998. It has also been established that DOE

failed to perform that unconditional contractual obligation. The Tucker Act gives this Court exclusive jurisdiction over Plaintiffs' claims for money damages for DOE's breach of that contractual obligation.[3]

Finally, while the OSC regards the *WEPCO* decision as an exception to the jurisprudence interpreting Section 119, it is worth remembering that the same three judges who decided *WEPCO* also decided *Indiana Michigan*, *Northern States I*, and *Northern States II.* It is highly unlikely that these jurists would have deliberately or inadvertently reached a decision in *WEPCO* that was inconsistent with the three earlier decisions, each of which is explicitly cited therein.

The OSC reaches a different conclusion, at least in part, because it finds that the Standard Contract is not in fact a contract, and that DOE's obligation, set forth in the Standard Contract, to begin disposing of SNF by January 31, 1998, is not an unconditional contractual obligation. As Plaintiffs demonstrate below, neither finding is supportable, and both are foreclosed by prior decisions of the D.C. and Federal Circuits.

## II. THE STANDARD CONTRACT IS A CONTRACT, NOT A REGULATION

One premise of this Court's conclusion that it lacks jurisdiction is that the Standard Contract is in reality a regulation, not a contract. OSC at 11. To reach this conclusion, the Court

---

[3] The OSC's analysis implies partial repeal of the Tucker Act by the NWPA. In analyzing the Tucker Act, however, the courts have repeatedly stated that "'repeals by implication are disfavored.'" *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017 (1984) (quoting *Regional Rail Reorg. Act Cases*, 419 U.S 102, 133 (1974)); *see also California v. United States*, 271 F.3d 1377, 1382 (Fed. Cir. 2001) ("It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored.") (quotations omitted). Where two statutes "are 'capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to reward each as effective.'" *Regional Rail Reorg. Act Cases*, 419 U.S. at 133-34 (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). The Tucker Act and the NWPA are capable of co-existence and should each be given effect.

relies on the purported absence of any of the elements of a government contract, including Congress's contractual intent, and the D.C. Circuit's decision in *Commonwealth Edison Co. v. DOE*, 877 F.2d 1042 (D.C. Cir. 1989). The Court's conclusion in this regard, however, ignores the plain language of the NWPA as well as the holdings of decisions of the D.C. and Federal Circuits that are binding on the parties and this Court.

**A. The NWPA Directs DOE To Enter Into "Contracts"**

As the OSC explains, "In the NWPA, Congress directed DOE to enter into contracts with the utilities 'for the acceptance of title, subsequent transportation, and disposal' of SNF." OSC at 5. Specifically, NWPA § 302(a), entitled "Contracts," authorizes DOE to enter into contracts with owners and generators of SNF, which contracts are required to contain certain basic terms. 42 U.S.C. § 10222(a). For purposes of these cases, the most significant of those terms, set forth in Section 302(a)(5)(B), is that "in return for the payment of fees established by this section, [DOE], beginning not later than January 31, 1998, will dispose of the [SNF] as provided in this subchapter." *Id.* § 10222(a)(5)(B).

It would be difficult to imagine a clearer statement of Congressional intent that DOE enter into contracts, not impose a regulation. Section 302(a)(5)(B) could have been written to require DOE to adopt a regulation that would impose obligations on both DOE and utilities directly. For example, Congress could have written the NWPA to require the utilities to pay fees established in accordance with regulations adopted by DOE, and DOE could have been instructed directly in the statute to begin disposing of SNF in January 31, 1998. But Congress did not do so. *See Alabama Power Co. v. DOE*, 307 F.3d 1300, 1314 (11th Cir. 2002) (commenting that Congress directed DOE "to negotiate *contracts* rather than imposing top-down regulations") (emphasis in original). Section 302(a)(5)(B) does not directly impose such

obligations, nor does it authorize or instruct DOE to promulgate regulations imposing such obligations. Rather, Section 302(a)(5)(B) expressly contemplates a contract between DOE and utilities that contains mutual, reciprocal obligations – in return for the payment of fees by the utilities, DOE must begin to dispose of SNF by January 31, 1998. The contract that each Plaintiff signed with DOE carries out that Congressional contractual intent. The Federal Circuit has pointed out that Congress found DOE's obligation to begin to dispose of SNF by January 31, 1998 "so important that when it promulgated the [NWPA] it took the unusual action of specifying that all the contracts must contain this explicit requirement." *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1342 (Fed. Cir. 2000) (emphasis added).

This understanding of Section 302(a) is bolstered by Section 302(b), which prohibits the Nuclear Regulatory Commission from issuing or renewing a license for any nuclear facility and prohibits the disposal of any SNF in a repository constructed under the NWPA unless the owner and operator has entered into a contract with DOE in accordance with Section 302(a). 42 U.S.C. § 10222(b). Such a provision would have been unnecessary if Congress had intended a "top-down" regulation requiring owners and generators of SNF to pay fees into the Nuclear Waste Fund and requiring DOE to dispose of the SNF.[4]

In short, the NWPA specified a contract, not a regulation, to govern the disposal of SNF. DOE agrees. In its petition for writ of certiorari in *Northern States I*, DOE stated:

> In enacting the NWPA, Congress chose not to impose upon DOE a freestanding statutory obligation to accept SNF by a particular

---

4 The NWPA established a similar contractual scheme for Federal interim storage of SNF. *See* 42 U.S.C. § 10157(a). Thus, when Congress intended DOE to carry out its responsibilities under the NWPA by contract, rather than by regulation, it said so explicitly.

> date. Rather, Congress directed DOE to enter into contracts containing specified provisions, see 42 U.S.C. 10222(a)(5), and expressly authorized DOE to establish additional contractual terms, 42 U.S.C. 10222(a)(6). In choosing that means of achieving the statutory objectives, Congress must be presumed to have intended that disputes regarding the precise nature of the parties' obligations, and the remedies for any breach thereof, would be resolved in the manner (and in the court) appropriate for contract claims.

*See* Petition for a Writ of Certiorari at 24-25 (emphasis added), *DOE v. Northern States Power Co.*, 525 U.S. 1016 (1998) (No. 98-384), *available at* http://www.usdoj.gov/osg/briefs/1997/2pet/7pet/98-0384.pet.aa.pdf ("DOE Petition for a Writ of Certiorari, *Northern States*"). As DOE made clear, that court is the Court of Federal Claims. *Id.* at 18-19 ("adjudication of claims arising under the Standard Contract is solely entrusted to the Court of Federal Claims").

### B. The Standard Contract Between The Parties Includes The Four Essential Elements Of A Government Contract

Contrary to the OSC's conclusion, the Standard Contract does contain the essential elements of a government contract. Generally, a federal government contract must include the following four elements: "(1) mutuality of intent to contract; (2) consideration; (3) lack of ambiguity in offer and acceptance; and (4) actual authority in the government representative to bind the government." *Barrett Refining Corp. v. United States*, 242 F.3d 1055, 1060 (Fed. Cir. 2002). All four elements are present here.

First, there is mutuality of intent to contract. Each Plaintiff's contract with DOE, for example, was signed by both its representative and DOE's contracting officer. *See* Contracts Between DOE and PSEG at 34, A16, A18. The signed contracts (like the Standard Contract

published in the Code of Federal Regulations, 10 C.F.R. Part 961, subpart B) explicitly recites the mutuality of intent to contract:

> THIS CONTRACT, entered into this 13th day of June 1983, by and between the UNITED STATES OF AMERICA (hereinafter referred to as the "Government"), represented by the UNITED STATES DEPARTMENT OF ENERGY (hereinafter referred to as "DOE") and Public Service Electric and Gas Company (hereinafter referred to as the "Purchaser"), a corporation organized and existing under the laws of the State of New Jersey, acting on its own behalf as managing utility for Hope Creek Generating Station, No. 1 Unit and on behalf of the joint owner Atlantic City Electric Company.

A15; *see also* A17.[5] Even the omission of a contract's price, usually a contract's most essential term, "does not vitiate contract formation if the parties otherwise manifested their mutual assent to the agreement and the terms of that agreement are sufficiently definite." *Atacs Corp. v. Trans World Communications, Inc.*, 155 F.3d 659, 667 (3d Cir. 1998). Although the acceptance rate term is missing from the Contract, the most critical obligations – Plaintiffs' obligations to pay money into the Nuclear Waste Fund in return for DOE's corresponding obligation to begin disposing of SNF as of January 31, 1998 – are clearly set forth in the Standard Contract and are sufficiently definite to make the contract enforceable.

Second, the Standard Contract is supported by consideration. Pursuant to Article II of the Standard Contract, each Plaintiff promised to pay DOE the specified fees, and, in return, DOE promised to begin acceptance of SNF on January 31, 1998 and to continue acceptance, transportation, and disposal of all SNF listed in Appendix A of the Standard Contract. These are the mutual, reciprocal obligations described in NWPA § 302(a)(5)(B). *See Indiana Michigan*, 88

[5] Because the OSC limits appendices to this response to 20 pages, Plaintiffs include only the first and signature pages of their contracts with DOE. Absent this limitation, Plaintiffs would have submitted, inter alia, the full contracts in support of this response.

F.3d at 1277. That quid pro quo arrangement is the essence of contractual consideration. The utilities together have paid over $10.5 billion to DOE for its services. *Alabama Power Co.*, 307 F.3d at 1303.

Third, there is no ambiguity regarding the offer and acceptance. The Standard Contract states the terms under which the parties will transact. DOE offered to accept, transport, and dispose of Plaintiffs' SNF, and Plaintiffs accepted the offer by entering the contract and paying the contractually-required fees.

Fourth, DOE had authority to enter into the Standard Contracts. Section 302(a)(1) of the NWPA states that "the Secretary [of Energy] is authorized to enter into contracts with any person who generates or holds title to high-level radioactive waste, or spent nuclear fuel, of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel." 42 U.S.C. § 10222(a)(1) (emphasis added). Thus, DOE had actual authority from the NWPA to enter the Standard Contracts.

The Standard Contract resembles a government contract in other ways as well. For example, the Standard Contract includes a Disputes Clause that is "substantially the same as the standard disputes clause used in government contracts prior to the Contracts Disputes Act of 1978." *Maine Yankee*, 225 F.3d at 1340. A disputes clause providing for administrative contractual remedies would make no sense in a regulation.

The fact that the terms of the Standard Contract were developed through formal rule-making rather than arms'-length negotiations also does not convert it into a government regulation. No government contract is the result of true arms'-length bargaining. *See United States v. Seckinger*, 397 U.S. 203, 216 (1970)(noting "the government's vast economic resources

and stronger bargaining position in contract negotiations"). Even in the private sphere, contracts of adhesion are no less contracts even though they are not negotiated but rather contain terms written and imposed unilaterally on the weaker party by the party with dominant bargaining power. *See generally Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449-450 (D.C. Cir. 1965).

**C. The D.C., Eleventh, And Federal Circuits Have Treated The Standard Contract As A Contract**

In view of the clear Congressional contractual directive contained in Section 302(a)(5) and the terms and structure of the Standard Contract itself, it is hardly surprising that all three of the Circuits that have addressed the issue have treated the Standard Contract as a contract, not a regulation, for purposes of determining DOE's obligation to meet the January 31, 1998 deadline to begin disposing of SNF. In *Northern States I*, the D.C. Circuit reaffirmed its decision in *Indiana Michigan* that DOE's obligation was unconditional. The Court also held that this obligation was contractual in nature and that utilities, including Plaintiffs here, were entitled "to enforce the terms of the [Standard] contract in a meaningful way." *Northern States I*, 128 F.3d at 759. *See also Northern States II*, 1998 U.S. App. LEXIS 12919 at *5 (holding that DOE's failure to perform its unconditional obligation to begin disposing of SNF by January 31, 1998, was a contract issue, not a violation of the NWPA).

The Federal Circuit also treated the Standard Contract as a contract, not a regulation, in *Maine Yankee* and *Northern States III*. A federal agency like DOE can violate a regulation (which violation can then be rectified through judicial review), but it cannot "breach" a regulation in a manner that exposes the government to liability for damages, as the Federal Circuit has found to be the case here. *Maine Yankee*, 225 F.3d at 1343.

In *Roedler v. DOE*, 255 F.3d 1347 (Fed. Cir. 2001), the Federal Circuit again recognized the Standard Contract as a contract, subject to contract claims. *Roedler* involved a putative class action on behalf of rate paying customers of Northern States Power Company. The plaintiffs argued that they were third-party beneficiaries of the Standard Contract between DOE and Northern States, and in that capacity they were entitled to seek damages for DOE's breach of the contract resulting from its failure to meet the January 31, 1998 deadline. They also asserted an implied-in-fact contract claim. *Roedler*, 255 F.3d at 1350-51. The district court dismissed the complaint, and the Federal Circuit affirmed.

In doing so, the court of appeals first determined that both it and the district court had subject-matter jurisdiction over the case pursuant to the "Little Tucker Act," 28 U.S.C. § 1346(a)(2). *Roedler*, 255 F.3d at 1351. Obviously, that jurisdictional finding required the conclusion that the *Roedler* plaintiffs' claim, based on the Standard Contract, was a contract claim, not a challenge to a regulatory action. Furthermore, in upholding dismissal of the implied-in-fact contract claim, the Federal Circuit agreed with the district court that "the existence of an <u>express contract</u> between the United States and Northern States Power establishing their <u>mutual obligations</u> with respect to the fees at issue, negates the existence of an implied-in-fact contract between the United States and the utility's customers on the same subject matter." *Id.* at 1353-54 (emphasis added). Again, the rejection of the implied-in-fact contract claim necessarily required a finding that the Standard Contract is a contract, not a regulation. *See also id.* at 1351 ("Applying the federal common law that governs the contracts of the United States, and taking note that a contract with the United States is to be construed and the rights and duties of the parties determined by application of the same principles of law as if the

contract were between private individuals, we apply the principles of third party beneficiary law as developed in the common law and explained by precedent . . . .") (citations omitted).

The Eleventh Circuit also recognized the Standard Contract as a contract in *Alabama Power Co. v. DOE*, 307 F.3d 1300 (11th Cir. 2002). The petitioners in that case, which included FPL and Duke, successfully challenged DOE's attempt to settle contract claims arising out of DOE's failure to meet the January 1998 deadline by allowing utilities to offset their increased costs of onsite storage of SNF against their payments into the Nuclear Waste Fund ("NWF"). The Eleventh Circuit agreed with the petitioners that to allow the government to use the NWF in that fashion would essentially force the utilities to pay for their own damages resulting from DOE's breach of its obligation. *Id.* at 1312-15. In reaching that conclusion, the court found that DOE's obligation was contractual rather than the result of "top-down regulations" imposed by Congress:

> Our conclusion is further reinforced by common sense and a practical understanding of the regulatory scheme Congress envisioned [in the NWPA]. If [DOE] could pay for its breach out of a fund paid for by the utilities, the government would never be liable. Instead, [DOE] would keep adding these liabilities as "costs" that would justify future fee increases, indirectly forcing the utilities to bear the costs of [DOE's] breach. <u>This is certainly not what Congress had in mind when it decided to empower [DOE] to negotiate contracts rather than imposing top-down regulations. . . . By establishing a contract and a quid pro quo arrangement, the regulatory scheme contemplates that the ultimate burden of the government's breach to fall on the government, not other utilities</u>.

*Id.* at 1314 (emphasis added).

The Eleventh Circuit also read the Federal Circuit's decisions in *Maine Yankee* and *Northern States III* as establishing the utilities' right to seek money damages for DOE's breach of the Standard Contract. *Id.* at 1315. The court pointed out that in those cases, the Federal

Circuit had rejected DOE's argument that the administrative remedies set forth in the Standard Contract were adequate and held instead that the utilities could pursue their breach-of-contract actions directly in this Court. *Id.* As the Eleventh Circuit recognized, the Federal Circuit's decisions are wholly inconsistent with the notion espoused in the OSC that the January 1998 deadline is purely regulatory, not contractual.

**D. The Parties And This Court Are Bound By The Prior Decisions**

The D.C. Circuit's decisions in *Northern States I* and *II* and the Eleventh Circuit's decision in *Alabama Power* are binding in these proceedings. *Northern States I* and *II* are res judicata because all of the Plaintiffs in these cases, as well as DOE, were parties to those appeals. *See* Brief in Opposition for the Utility Respondents at ii, iii, v, *DOE v. Northern States Power Co.*, 525 U.S. 1016 (1998) (No. 98-384) ("Brief in Opposition, *Northern States*"), A3-A6. *Alabama Power* also is res judicata, at least insofar as FPL and Duke are concerned. *See* Joint Petition for Review, *Alabama Power Co. v. United States*, 307 F.3d 1300 (11th Cir. 2002) (No. 00-16138), A7. Thus, the parties are foreclosed from relitigating the determination in those cases that the Standard Contract is a contract, providing contractual remedies, including seeking money damages for breach of the contract. *See United States v. Stauffer Chemical Co.*, 464 U.S. 165, 169 (1984).[6] Res judicata principles are binding even where the prior ruling involved questions of subject-matter jurisdiction and implicated questions of sovereign immunity. *Int'l Air Response v. United States*, 324 F.3d 1376, 1380 (Fed. Cir. 2003); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982). Furthermore, res judicata bars a court from questioning a prior court's decision on a contested issue, including

6 In its successful motion to dismiss *WEPCO*, DOE recognized that the decision in *Northern States* is binding on the parties in subsequent litigation. *See* Respondents' Motion to Dismiss at 14, *WEPCO*, A14.

the extent of the prior court's jurisdiction. *See Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938) ("After a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact.").

The Federal Circuit's decisions in *Maine Yankee*, *Northern States III*, and *Roedler* also are binding on this Court. Thus, the Federal Circuit's decisions in *Maine Yankee* and *Northern States III* that DOE has breached an unconditional contractual obligation, subjecting DOE to damage claims, forecloses this Court's contrary conclusion that the Standard Contract is a regulation rather than a contract. Similarly, the Federal Circuit's determination in *Roedler* that the Standard Contract is an express contract and that the Little Tucker Act gave it subject-matter jurisdiction over a claim involving that contract forecloses this Court's contrary conclusion that it has no subject-matter jurisdiction over the present claims asserting DOE's breach of the Standard Contract.

The OSC ignores these binding decisions in favor of *Commonwealth Edison*, which is binding on neither the parties nor this Court. None of the Plaintiffs was a party in that case. To the extent *Commonwealth Edison* can be read as holding that the Standard Contract is a regulation rather than a contract, that decision is an outlier. It is not even mentioned by the D.C. Circuit in its more recent and relevant decisions in *Indiana Michigan*, *Northern States I*, and *Northern States II*, by the Federal Circuit in *Maine Yankee*, *Northern States III*, and *Roedler*, or by the Eleventh Circuit in *Alabama Power*. Indeed, the Government itself believes that *Commonwealth Edison* was wrongly decided. In its petition for a writ of certiorari to the Supreme Court in *Northern States I*, the Government told the Supreme Court that the jurisdictional result in *Commonwealth Edison* was "erroneous" because the D.C. Circuit in that

case "failed to recognize the fundamental distinction between a challenge to the *validity* of some provision of the Standard Contract – a challenge that we agree arises under the NWPA and is properly brought in the D.C. Circuit [pursuant to Section 119] and a challenge to DOE's *interpretation* of existing contractual provisions," which DOE contended was subject to the Tucker Act jurisdiction of this court. *See* DOE Petition for a Writ of Certiorari at 23 n.13, *Northern States* (emphasis in original).

Moreover, despite some broad language, the actual issue before the D.C. Circuit in *Commonwealth Edison* was quite narrow: whether the phrase "Treasury bill rate" in Article VIII.B.2 of the Standard Contract should be interpreted in accordance with the rules of contract interpretation or the rules applicable to interpretation of statutes and regulations. *Commonwealth Edison*, 877 F.2d 1045-46. The *Commonwealth Edison* court chose the latter. The fact that the court did so, however, does not in any way suggest that it intended to treat the Standard Contract as a regulation for all purposes, including enforcement of its substantive terms. On the contrary, the more recent decisions of the D.C. and Federal Circuits that gave rise to the present cases confirm that even if *Commonwealth Edison* remains good law in the D.C. Circuit, whatever rules of interpretation might be applied to Article II of the Standard Contract, it is a contract that can be enforced, like any other government contract, in this Court pursuant to its Tucker Act jurisdiction.

In sum, the Standard Contract is a contract by clear Congressional mandate, by form, by substance, and by the manner in which it has been applied and enforced by the D.C., Eleventh, and Federal Circuits. Accordingly, this Court must, as a matter of law, adhere to those binding decisions and recognize the Standard Contract as a contract, not a regulation.

## III. THE STANDARD CONTRACT IMPOSES AN UNCONDITIONAL OBLIGATION ON DOE TO BEGIN DISPOSING OF SNF NO LATER THAN JANUARY 31, 1998

Another premise of the OSC is that the January 31, 1998 deadline for DOE to begin disposing of SNF is conditioned on the existence of an operating repository for SNF, contrary to the holdings of both the D.C. and Federal Circuits. OSC at 11-13. The OSC therefore concludes that Congress and DOE could not have intended or foreseen that DOE would be liable in damages for missing the deadline in the absence of a repository. *Id.* at 11. The OSC acknowledges that this conclusion is contrary to the D.C. Circuit's holding in *Indiana Michigan*, but states that "the D.C. Circuit's interpretation of Section 302(a)(5) is not res judicata because the parties in this case were not involved in that one." *Id.* at 13.

The OSC is incorrect. Both FPL and PSEG were party-intervenors in *Indiana Michigan*. *See* Order, *Indiana Michigan Power Co. v. DOE*, slip order (D.C. Cir. Filed July 24, 1995) (No. 95-1279), A1.[7] In addition, as noted earlier, all four Plaintiffs were parties to *Northern States I* and *II*, in which the D.C. Circuit reaffirmed and enforced its holding in *Indiana Michigan* by precluding DOE from taking any position inconsistent with its unconditional contractual obligation to begin disposing of SNF by January 31, 1998. *See* Brief in Opposition at ii, iii, v, *Northern States*, A4-A6. Thus, both *Indiana Michigan* and *Northern States* are res judicata in this case, and bar the parties (and hence this Court) from relitigating the question answered dispositively by the D.C. Circuit in those cases.

---

[7] As shown in the July 24, 1995 Order, FPL was one of the original intervenors in the lead case, No. 95-1279. A1. PSEG filed its own action against DOE, No. 95-1463, which was consolidated with the main case. *See* Docketing of Petition for Review, *Pub. Serv. Elec. & Gas Co. v. DOE* (D.C. Cir. Filed Sept. 8, 1995) (No. 95-1463), A2.

Even if those D.C. Circuit decisions were not res judicata, the controlling decisions of the Federal Circuit in *Maine Yankee* and *Northern States III* would have the same effect. The Federal Circuit adopted the D.C. Circuit's conclusion that the NWPA required DOE to undertake an unconditional obligation in the Standard Contract to begin disposing of SNF on January 31, 1998. *See Maine Yankee*, 225 F.3d at 1341-43. The Federal Circuit could not have upheld a finding that DOE breached its contractual obligation if the obligation were conditioned on the existence of a repository. In fact, the Federal Circuit emphasized that Congress considered the January 31, 1998 deadline to be "so important" that it required DOE to include that explicit requirement in all of the Standard Contracts. *Id.* at 1342. The Federal Circuit went on to note that DOE's breach of that contractual obligation "involved all the utilities that had signed the contract – the entire nuclear electric industry." *Id.* That holding is flatly inconsistent with an interpretation of the January 31, 1998 deadline as merely conditional.[8]

Thus, although it is apparent that this Court, writing on a clean slate, would have interpreted NWPA § 302(a)(5)(B) differently than the D.C. Circuit and Federal Circuit, it cannot now do so in light of the prior, binding decisions of those courts.

---

[8] The Federal Circuit's emphasis on the importance of the January 1998 deadline also refutes the OSC's suggestion that Congress was not really serious when it specified that deadline in Section 302(a)(5)(B). *See* OSC at 11, 18-20. The OSC's conclusion that this provision does not really mean what it says about an unconditional deadline is not supported by any judicial canon of statutory construction. On the contrary, as the OSC itself recognizes, it has been a core principle of statutory construction since the earliest days of the Republic that when a statute is plain and unambiguous, the legislature must be assumed to have meant what it said. OSC at 26-27.

## IV. IF THE COURT CONCLUDES THAT IT LACKS SUBJECT-MATTER JURISDICTION, IT SHOULD STAY ALL FURTHER PROCEEDINGS PENDING APPEAL

For the reasons explained in Parts I-III above, Plaintiffs submit that the Court should vacate the OSC and proceed to decide the pending motions on the merits. If the Court nonetheless maintains the position set forth in the OSC, the Court should proceed with the plan stated in the OSC to transfer the breach of contract claims in the FPL and Duke cases to the D.C. Circuit pursuant to 28 U.S.C. § 1631 and dismiss the breach of contract claims in the NPPD and PSEG cases for lack of jurisdiction. The transfer order would not be a final order that could be appealed as a matter of right. *See, e.g.*, *FDIC v. Maco Bancorp, Inc.*, 125 F.3d 1446, 1447 (Fed. Cir. 1997). In addition, because takings claims remain pending in each case, transfer and dismissal of less than all of the claims would not constitute a final judgment in the case. Accordingly, Plaintiffs submit that the Court should certify the partial transfer and dismissal orders for interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(2).

Certainly, a transfer or dismissal of the contract claims based on lack of subject-matter jurisdiction would satisfy the three criteria for interlocutory review under Section 1292(d)(2). First, the question of subject-matter jurisdiction, is a controlling question of law, which determines whether the cases can proceed in this Court. Second, there is obviously a substantial ground for difference of opinion on that question. The D.C. Circuit's holding in *WEPCO* is diametrically opposed to the OSC, and as described above, the OSC also is contrary to several other decisions of the D.C. Circuit and Federal Circuit. Finally, an appeal will materially advance the ultimate termination of the litigation, as it would determine once and for all the appropriate forum for resolution of Plaintiffs' claims. As noted above, the *Indiana Michigan* case is now on appeal to the Federal Circuit after a trial on the merits. The jurisdictional issues

raised in the OSC should be presented to the Federal Circuit expeditiously, to ensure that the resources of the parties and Court are not squandered.

The Court should stay the effect of the transfer order pending such interlocutory appeal. It would serve no purpose for the parties to attempt to proceed in the D.C. Circuit after the transfer, because that court has already held that it has no jurisdiction over these breach of contract claims and that the parties should be in this Court. The Court also should defer further consideration of the takings claims in these cases pending appeal, as it would be a waste of time and effort for both the parties and the Court to litigate those claims further before knowing whether the contract claims are also properly before this Court.

**CONCLUSION**

For all of the reasons stated above, Plaintiffs respectfully request that the Court vacate its OSC, find that it has subject-matter jurisdiction, and proceed to decide the pending motions on the merits. If the Court concludes that it lacks subject-matter jurisdiction, Plaintiffs respectfully request that the Court: (a) transfer the contract claims in the FPL and Duke cases to the D.C. Circuit pursuant to 28 U.S.C. § 1631; (b) dismiss the contract claims in the NPPD and PSEG cases; (c) certify the partial transfer and partial dismissal orders for interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(2); and (d) stay the effect of the transfer order and the takings claims pending disposition of the appeal.

Dated: November 12, 2004

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102
(703) 770-7940
(703) 770-7901 (fax)

Counsel of Record for Plaintiffs
PSEG Nuclear, L.L.C. and
Public Service Electric and Gas Company

Of Counsel:

Jay E. Silberg
David J. Cynamon
Devon E. Hewitt
Michael G. Lepre
Daniel S. Herzfeld
Jack Y. Chu
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)

Jeffrie Keenan
PSEG Nuclear, L.L.C.
Nuclear Dept. MS N-20
P.O. Box 236, End of Buttonwood Road
Hancocks Bridge, NJ 08038
(856) 339-5429

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Electronically Filed on November 12, 2004)

| | |
|---|---|
| **PSEG NUCLEAR, L.L.C.** and **PUBLIC SERVICE ELECTRIC AND GAS COMPANY**, Plaintiffs, v. **THE UNITED STATES**, Defendant. | No. 01-551C (Judge Sypolt) |

**APPENDIX TO PLAINTIFFS' RESPONSE TO THE COURT'S OCTOBER 14, 2004 ORDER TO SHOW CAUSE**


Alex D. Tomaszczuk
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102
(703) 770-7940
(703) 770-7901 (fax)
Counsel of Record for Plaintiffs
PSEG Nuclear, L.L.C. and
Public Service Electric and Gas Company

Of Counsel:

Jay E. Silberg
David J. Cynamon
Devon E. Hewitt
Michael G. Lepre
Daniel S. Herzfeld
Jack Y. Chu
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8000
(202) 663-8007 (fax)


November 12, 2004

# INDEX TO APPENDIX

Description Page

Order Granting Motion For Leave To Intervene In Indiana Michigan Power Co. v. DOE, No. 95-1279 (D.C. Cir., filed on July 24, 1995) .......... 1

Docketing Of Petition For Review In Pub. Serv. Elec. & Gas Co. v. DOE, No. 95-1463 (D.C. Cir., docketed on September 7, 1995) .......... 2

Excerpt From Brief In Opposition For The Utility Respondents' to Petition For A Writ Of *Certiorari* in DOE v. Northern States Power Co., No. 98-384 .......... 3

Cover Page From Joint Petition For Review In Alabama Power Co. v. DOE, No. 00-16138 (11th Cir., filed on November 22, 2000) .......... 7

Excerpts From Respondent's Motion To Dismiss In Wisconsin Elec. Power Co. v. DOE, No. 99-1342 (D.C. Cir., filed on October 12, 1999) .......... 8

Excerpt Of Signature Page From Contract No. DE-CR01-83NE44411 Executed Between PSEG and DOE (June 13, 1983) .......... 15

Excerpt Of Signature Page From Contract No. DE-CR01-83NE44480 Executed Between PSEG and DOE (June 13, 1983) .......... 17

Document #: 1305471 v.1

UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT

No. 95-1279

September Term, 1994

Indiana Michigan Power Company, Petitioner
v.
Department of Energy, et al., Respondents

United States Court of Appeals
For the District of Columbia Circuit
FILED JUL 24 1995

O R D E R

On consideration of the motion(s) for leave to intervene filed by the following parties:

Kansas Electric Power Cooperative, Inc.
-
Pacific Gas and Electric Company
,
Illinois Power Company
,
Northern States Power Company (Minnesota)
,
Boston Edison Company
,
Centerior Energy Corporation
,
Florida Power & Light Company
,
Kansas City Power & Light Company
,
Commonwealth Edison Company
,
Consolidated Edison Company of New York, Inc.
,
Florida Power Corporation
,
Kansas Gas and Electric Company
,
Wolf Creek Nuclear Operating Corporation
,
Portland General Electric Company

It is ORDERED that the aforesaid motion(s) is/are granted.

Circuit Rule 28(e) governs the filing of briefs by intervenors. A schedule for the filing of briefs will be established by a future order. That order will automatically provide briefing time only for intervenor(s) on the side of respondent. Any intervenor(s) on the side of petitioner(s) must so notify the Court, in writing, within ten days from the date of this order. Such notification must include a statement of issues to be raised by the intervenor. This notification will allow tailoring of the briefing schedule to provide time for a brief as intervenor on the side of petitioner(s). Failure to submit notification could result in such an intervenor being denied leave to file a brief.

Intervenors are reminded that they must file a joint brief or certify to the Court why a separate brief is necessary. Intervenors attention is particularly directed to that portion of the rule describing "unacceptable" grounds for filing separate briefs. See also, D.C. Cir. Handbook at 46 (1987). Failure to comply with this rule could result in the imposition of sanctions. See

FOR THE COURT:

By: Lisa Sanches

UNITED STATES COURT OF APPEALS
DISTRICT OF COLUMBIA CIRCUIT

No. 95-1463

September Term, 1995

Public Service Electric & Gas Company, et al., Petitioners
v.
Department of Energy, Respondent

United States Court of Appeals
For the District of Columbia Circuit
FILED SEP 08 1995

This case was filed and docketed on 9/7/95. The Department of Energy is hereby notified that the attached is a true copy of the [X] petition for review, [ ] application for enforcement, [ ] cross-application for enforcement filed in the United States Court of Appeals for the District of Columbia Circuit, at Washington, D.C. in the above-entitled case.

IN TESTIMONY WHEREOF, I hereunto subscribe my name and affix the seal of said United States Court of Appeals for the District of Columbia Circuit, at Washington, D.C., September 8, 1995.

FOR THE COURT:
Mark J. Langer, Clerk

BY: Stephen Contee
Stephen H. Contee, Deputy Clerk

Form 26 (June 1992)

No. 98-384

IN THE
# Supreme Court of the United States
OCTOBER TERM, 1998

UNITED STATES OF AMERICA, ET AL.,
*Petitioners*,
v.
NORTHERN STATES POWER COMPANY, ET AL.,
*Respondents*.

**On Petition for a Writ of Certiorari to the United States Court of Appeals for the District of Columbia Circuit**

## BRIEF IN OPPOSITION FOR THE UTILITY RESPONDENTS

JAY E. SILBERG
*Counsel of Record*
DAVID J. CYNAMON
SETH B. WAXMAN
SHAW PITTMAN POTTS & TROWBRIDGE
2300 N Street, N.W.
Washington, D.C. 20037
(202) 663-8063

*Of Counsel:*
JERRY STOUCK
ROBERT L. SHAPIRO
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W.
9th Floor
Washington, D.C. 20005

PETER BUSCEMI
MORGAN, LEWIS & BOCKIUS, LLP
1800 M Street, N.W.
Washington, D.C. 20036

TAMI LYN AZORSKY
MCKENNA & CUNEO, LLP
1900 K Street, N.W.
Washington, D.C. 20006

WILSON - EPES PRINTING CO., INC. - 789-0096 - WASHINGTON, D.C. 20001

## RULE 29.6 LISTING

Pursuant to Supreme Court Rule 29.6, respondents joining in this Brief in Opposition (hereafter "Utility Respondents") list their respective parent companies and nonwholly owned subsidiaries as follows:

1. Respondent Northern States Power Company has no parent or nonwholly owned subsidiaries.
2. The parent company of respondent Florida Power and Light Company ("FPL") is FPL Group, Inc. FPL has no nonwholly owned subsidiaries.
3. Respondent Duke Energy Corporation, formerly known as Duke Power Company has no parent and the following nonwholly owned subsidiaries: Flo Trend Systems, Inc. and TEPPCO Partners, L.P.
4. Respondent Vermont Yankee Nuclear Power Corporation has no parent or nonwholly owned subsidiaries.
5. Respondent Niagara Mohawk Power Corporation has no parent and one nonwholly owned subsidiary, Canadian Niagara Power Company, Ltd.
6. The parent company of respondents GPU Nuclear, Inc., Jersey Central Power & Light Company, Metropolitan Edison Company and Pennsylvania Electric Company is GPU, Inc. These respondents have no nonwholly owned subsidiaries.
7. The parent company of respondent Wisconsin Public Service Corporation is WPS Resources Corporation. Wisconsin Public Service Corporation has no nonwholly owned subsidiaries.

8. The parent company of respondent Union Electric Company, d/b/a AmerenUE, is Ameren Corporation. Union Electric Company has one nonwholly owned subsidiary, Electric Energy, Inc.

9. The parent company of respondent Detroit Edison Company is DTE Energy Company. Detroit Edison Company has no nonwholly owned subsidiaries.

10. The parent company of respondent Public Service Electric and Gas Company is Public Service Enterprise Group Incorporated. Public Service Electric and Gas Company has the following nonwholly owned subsidiaries: Enterprise Diversified Holdings Incorporated and PSE&G Fuel Corporation.

11. The parent company of respondent Florida Power Corporation is Florida Progress Corporation. Florida Power Corporation has one nonwholly owned subsidiary, Florida Capital Holdings, Inc.

12. The parent company of respondent Kansas Gas and Electric Company is Western Resources, Inc. Kansas Gas and Electric Company has no nonwholly owned subsidiaries.

13. Respondent Wolf Creek Nuclear Operating Corporation has no parent or nonwholly owned subsidiaries.

14. Respondent Kansas City Power & Light Company has no parent or nonwholly owned subsidiaries.

15. Respondent Kansas Electric Power Cooperative, Inc. has no parent or nonwholly owned subsidiaries.

Texas Utilities Electric Company has no nonwholly owned subsidiaries.

26. Respondent Carolina Power & Light Company has no parent or nonwholly owned subsidiaries.

27. The parent company of respondent Commonwealth Edison Company is Unicom Corporation. Commonwealth Edison Company has no nonwholly owned subsidiaries.

28. Respondent Boston Edison Company has no parent or nonwholly owned subsidiaries.

29. The parent company of respondent Southern Nuclear Operating Company is the Southern Company. Southern Nuclear Operating Company has no nonwholly owned subsidiaries.

30. The parent company of respondent Wisconsin Electric Power Company is Wisconsin Energy Corporation. Wisconsin Electric Power Company has no nonwholly owned subsidiaries.

31. Respondent Omaha Public Power District has no parent or nonwholly owned subsidiaries.

32. Respondent Nebraska Public Power District has no parent or nonwholly owned subsidiaries.

33. Respondent Washington Public Power Supply System has no parent or nonwholly owned subsidiaries.

34. The parent company of respondent South Carolina Electric & Gas Company is SCANA Corporation. South Carolina Electric & Gas Company has no nonwholly owned subsidiaries.

35. The parent company of respondent IES Utilities Inc. is Interstate Energy Corporation. IES Utilities Inc. has no nonwholly owned subsidiaries.

36. Respondent Central Iowa Power Cooperative has no parent or nonwholly owned subsidiaries.

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

U.S. COURT OF APPEALS
RECEIVED
CLERK
NOV 22 2000
ATLANTA, GA.

**ALABAMA POWER COMPANY**
**600 North 18th Street**
**Birmingham, Alabama 35291**

**CAROLINA POWER & LIGHT COMPANY**
**411 Fayetteville Street Mall**
**P.O. Box 1551**
**Raleigh, NC 27602**

**DUKE POWER, a Division of**
**DUKE ENERGY CORPORATION**
**422 South Church Street**
**Charlotte, NC 28242-0001**

**FLORIDA POWER AND LIGHT COMPANY**
**700 Universe Boulevard**
**Juno Beach, FL 33408-0420**

**GEORGIA POWER COMPANY**
**333 Piedmont Avenue, N.E.**
**Atlanta, Georgia 30308**

**NORTHERN STATES POWER COMPANY**
**414 Nicollet Mall**
**Minneapolis, MN 55401**

**SOUTHERN NUCLEAR OPERATING COMPANY**
**40 Inverness Center Parkway**
**Birmingham, Alabama 35242**

**TXU ELECTRIC COMPANY**
**1601 Bryan Street**
**Dallas, TX 75201-3411**

**Joint Petitioners,**

**v.**

**Case Number:** [illegible]

**UNITED STATES DEPARTMENT**
**OF ENERGY**
**1000 Independence Avenue, S.W.**
**Washington, D.C. 20585**

**and**

**THE UNITED STATES OF AMERICA**

**Respondents.**

## JOINT PETITION FOR REVIEW

ORIGINAL

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
OCT 12 1999
RECEIVED

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Copy

UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED OCT 12 1999
CLERK

---

No. 99-1342

---

WISCONSIN ELECTRIC POWER COMPANY,

Petitioner,

ORIGINAL

v.

UNITED STATES DEPARTMENT OF ENERGY, ET AL.,

Respondents.

---

RESPONDENTS' MOTION TO DISMISS

---

STATEMENT

Petitioner Wisconsin Electric Power Company ("WEPCO" or "petitioner") is a utility company that owns and operates the Point Beach nuclear power plant in Wisconsin. WEPCO is also a party to a spent fuel disposal contract based on the Department of Energy's (DOE's) Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (10 C.F.R. Part 961) ("Standard Contract"), entered into pursuant to Section 302 of the Nuclear Waste Policy Act

its spent fuel, explaining that the mandate could not extend to requiring DOE to perform under the Standard Contract because Section 302(a)(5)(B) itself did not require DOE to perform the obligation created thereby. Ibid. Rather, the statutory obligation was "to include an unconditional obligation in the Standard Contract" (ibid.).

## ARGUMENT

A. The petition for review should be dismissed because WEPCO has failed to exhaust its administrative remedies under the contract as directed by this Court in *Northern States*. – WEPCO's petition for review seeks relief under the contract. WEPCO is barred from pursuing such remedies, however, until it has exhausted the administrative process established by the contract for obtaining relief. In a ruling that is binding on WEPCO, this Court in Northern States held that holders of spent fuel disposal contracts have a potentially adequate remedy under the Delays Clause of Article IX.B of the contract. 128 F.3d at 759. The Court further declared that it had "remitted the utilities to their remedies under the Standard Contract" (Ex. 3, p. 2), holding that until DOE has made a determination on requests for administrative relief, issues on the appropriate relief under the contract are "not ripe for review" (ibid.).

The Standard Contract prescribes the manner in which contract holders must pursue administrative relief. The Delays Clause in Article IX states that in the case of avoidable delay, "the charges and schedules specified by this contract will be equitably adjusted to reflect any estimated additional costs incurred by the party not responsible for or contributing to the delay" (10 C.F.R. 961.11, Art. IX.B). This provision describes the type of relief that could be made available.

Article XVI, the Disputes Clause, prescribes the process by which requests for relief under the contract will be resolved. Under ¶ A, any factual dispute not disposed of by agreement will be resolved by the Contracting Officer, whose decision may be appealed to the Board of Contract Appeals (10 C.F.R. 961.11, Art. XVI.A). Under ¶ B, if the amount involved exceeds $50,000, the contract holder must provide a certification that the claim is made in good faith, that the supporting data are accurate and complete, and that the "amount requested accurately reflects the contract adjustment for which the [contract holder] believes the Government is liable" (10 C.F.R. 961.11, Art. XVI.B). And ¶ C prescribes time limits for processing claims depending on whether the amount requested exceeds $50,000 (10 C.F.R. 961.11, Art. XVI.C). As this Court noted in Northern States, these provisions of the Standard Contract "provide a scheme for dealing with delayed performance." 128 F.3d at 759.

WEPCO, however, has not pursued the process prescribed in the contract. Instead, petitioner has initiated an informal process, not yet concluded, for a negotiated resolution of its claim without further proceedings. WEPCO did so by submitting to the Contracting Officer its Proposed Bilateral Modification and Request for Equitable Adjustment on August 21, 1998. In that document, WEPCO requested from DOE various forms of nonmonetary and monetary relief due to the delay in performance of DOE's disposal obligation (Ex. 1).

The document states, however, that "[t]his proposal is submitted for negotiation purposes only" (Ex. 1, p. 23). Since submission of that request, WEPCO and DOE have met on several occasions to discuss the proposal. Those discussions remain active and have not concluded (Declaration of David K Zabransky, attached as Exhibit 4). In addition, WEPCO's request includes claims for reimbursement of its costs that are allegedly attributable to DOE's delay (Ex. 1, pp. vi, 22). The amount claimed, more than $26,000,000, by itself is well in excess of the contract's $50,000 threshold for the required certification of a claim for adjustment. See 10 C.F.R. 961.11, Art. XVI.C. WEPCO's submission, however, does not provide the required certification necessary to begin the formal contract process for finally resolving its request (Ex. 1).

It is plain, therefore, that WEPCO's attempt to obtain judicial relief at this juncture is an impermissible end run around the contract remedy process to which the Court has previously remitted WEPCO. Moreover, it is WEPCO's own failure to perfect its administrative claim with a certification that prevents an administrative determination under the contract of the claim. Under settled case law construing a contract disputes clause such as this one, the parties to the contract must first exhaust the administrative remedies provided under the disputes clause before seeking judicial relief.

> With respect to claims arising under the typical government contract, the contractor has agreed in effect to convert what otherwise might be claims for breach of contract into claims for equitable adjustment. * * * [W]hether and to what extent an adjustment is required are questions to be answered by the methods provided in the contract itself.
>
> * * * * *
>
> It is now crystal clear that the contractor must seek the relief provided for under the contract or be barred from any relief in the courts.

Crown Coat Front Co., Inc. v. United States, 386 U.S. 503, 511-512 (1967) (emphasis supplied). See United States v. Anthony Grace & Sons, Inc., 384 U.S. 424, 428-433 (1966); United States v. Utah Construction & Mining Co., 384 U.S. 394, 401-412 (1966); Bethlehem Steel Corporation v. Grace Line, Inc., 416 F.2d 1096, 1105-1106 (D.C. Cir. 1969). This Court's mandate in Northern States

Because petitioner's claims seek a remedy for a failure of DOE to provide the relief WEPCO has requested, subsection (B) would provide the only basis for jurisdiction over Claim I of the petition.[3]

Count I first asserts a violation of DOE's statutory obligations under the NWPA, without identifying the specific provision of the statute alleged to have been violated (Pet at ¶¶ 31-37). Petitioner asserts only (¶ 32) that the "NWPA establishes an unconditional duty for DOE to begin disposing of Petitioner's [spent nuclear fuel] no later than January 31, 1998," which can only reasonably be construed as a reference to Section 302(a)(5)(B), 42 U.S.C. 10222(a)(5)(B), the provision construed in Indiana Michigan and Northern States. As noted above, however, this Court in its decision and orders in Northern States has ruled that Section 119(a)(1)(B) does not provide jurisdiction in this Court for a claim seeking to enforce DOE's obligation to begin spent fuel disposal (Order dated May 5, 1998, p. 3):

---

[3] If Section 119(a)(1)(A)'s provision for jurisdiction to review final decisions or actions of DOE were invoked, the petition for review would have to be dismissed for lack of finality. For the reasons stated previously, WEPCO has not taken the action necessary to have its claim determined by the Contracting Officer, and consequently there is no final action or decision on the claim that can be reviewed. See FTC v. Standard Oil Co., 449 U.S. 232, 242 (1980); DRG Funding Corp. v. Secretary of HUD, 76 F.3d 1212, 1214-1216 (D.C. Cir. 1996).

> Breach by the DOE does not violate a statutory duty, thus, our jurisdiction to hear allegations of failure to take an action required under the NWPA, see 42 U.S.C. § 10139(a)(1)(B), does not provide a basis for a move-fuel order.

Under the doctrine of issue preclusion, WEPCO, as a party to the judgment in Northern States, is bound by that ruling. See Yamaha Corp. of America v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992), cert. denied, 506 U.S. 1079 (1993); Securities Industries Ass'n v. Board of Governors, 900 F.2d 360, 363-364 (D.C. Cir. 1990); Restatement 2d, Judgments, §§ 17, 19, 27.

Even if the Court's prior ruling were open to reconsideration, that determination is manifestly correct. Section 302(a)(5)(B), 42 U.S.C. 10222(a)(5)(B), only requires DOE to undertake such an obligation in its contracts with the utilities, and DOE has fully satisfied that statutory directive. Because Section 302(a)(5)(B) does not further require performance, Section 119(a)(1)(B) does not authorize actions to enforce that deadline.

The remainder of Count I asserts that WEPCO and DOE have a contract for disposal of spent fuel and that under the contract WEPCO has a right to the relief it has requested from DOE. Section 119, however, does not provide jurisdiction to enforce rights under the contract. That provision does not waive the sovereign immunity of the United States. See General Electric Uranium, 764 F.2d 896, 900-

PSE&G CONTRACT NO. 83-6-ND-685
U. S. DEPARTMENT OF ENERGY CONTRACT NO. DE-CR01-83NE44411
HOPE CREEK GENERATING STATION
NO. 1 UNIT

CONTRACT FOR DISPOSAL OF SPENT NUCLEAR FUEL AND/OR HIGH-LEVEL

RADIOACTIVE WASTE

THIS CONTRACT, entered into this 13th day of June 1983, by and between the UNITED STATES OF AMERICA (hereinafter referred to as the "Government"), represented by the UNITED STATES DEPARTMENT OF ENERGY (hereafter referred to as "DOE") and PUBLIC SERVICE ELECTRIC AND GAS COMPANY, (hereinafter referred to as the "Purchaser"), a corporation organized and existing under the laws of the State of New Jersey, acting on its own behalf as managing utility for Hope Creek Generating Station, No. 1 Unit and on behalf of the joint owner Atlantic City Electric Company.

WITNESSETH THAT:

WHEREAS, the DOE has the responsibility for the disposal of spent nuclear fuel and high-level radioactive waste of domestic origin from civilian nuclear power reactors in order to protect the public health and safety, and the environment; and

WHEREAS, the DOE has the responsibility, following commencement of operation of a repository, to take title to the spent nuclear fuel or high-level radioactive waste involved as expeditiously as practicable upon the request of the generator or owner of such waste or spent nuclear fuel; and

WHEREAS, all costs associated with the preparation, transportation, and the disposal of spent nuclear fuel and high-level radioactive waste from civilian nuclear power reactors shall be borne by the owners and generators of such fuel and waste; and

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first above written.

UNITED STATES OF AMERICA

UNITED STATES DEPARTMENT OF ENERGY

BY: ______________________
(Contracting Officer)
Thomas S. Keefe

PUBLIC SERVICE ELECTRIC AND GAS COMPANY

BY: ______________________

TITLE: VICE PRESIDENT - CORPORATE SERVICES

DATE: JUN 13 1983

ATTEST:

______________________
(Assistant Secretary)

I, Marion Reynolds, certify that I am the Assistant Secretary of the corporation named as Purchser herein; that W. E. Mange, Jr. who signed this document on behalf of the Purchaser was then Vice President - Corporate Services of said corporation; that said document was duly signed for and on behalf of said corporation by authoirty of its governing body and is within the scope of its corporate powers.

IN WITNESS WHEREOF, I have hereunto affixed my hand and the seal of said corporation this 13th day of June, 1983.

______________________
(Assistant Secretary)

PSE&G CONTRACT NO. 83-6-ND-684
U. S. DEPARTMENT OF ENERGY CONTRACT NO. DE-CR01-83NE44480
SALEM GENERATING STATION
NOS. 1 AND 2 UNITS

CONTRACT FOR DISPOSAL OF SPENT NUCLEAR FUEL AND/OR HIGH-LEVEL

RADIOACTIVE WASTE.

THIS CONTRACT, entered into this 13th day of June 1983, by and between the UNITED STATES OF AMERICA (hereinafter referred to as the "Government"), represented by the UNITED STATES DEPARTMENT OF ENERGY (hereafter referred to as "DOE") and PUBLIC SERVICE ELECTRIC AND GAS COMPANY, (hereinafter referred to as the "Purchaser"), a corporation organized and existing under the laws of the State of New Jersey, acting on its own behalf as managing utility for Salem Generating Station, Nos. 1 and 2 Units and on behalf of the joint owners, Philadelphia Electric Company, Atlantic City Electric Company, and Delmarva Power and Light Company.

WITNESSETH THAT:

WHEREAS, the DOE has the responsibility for the disposal of spent nuclear fuel and high-level radioactive waste of domestic origin from civilian nuclear power reactors in order to protect the public health and safety, and the environment; and

WHEREAS, the DOE has the responsibility, following commencement of operation of a repository, to take title to the spent nuclear fuel or high-level radioactive waste involved as expeditiously as practicable upon the request of the generator or owner of such waste or spent nuclear fuel; and

WHEREAS, all costs associated with the preparation, transportation, and the disposal of spent nuclear fuel and high-level radioactive waste from civilian nuclear power reactors shall be borne by the owners and generators of such fuel and waste; and

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the day and year first above written.

UNITED STATES OF AMERICA

UNITED STATES DEPARTMENT OF ENERGY

BY: ______________________
(Contracting Officer)
Thomas S. Keefe

PUBLIC SERVICE ELECTRIC AND GAS COMPANY

ATTEST: ______________________
(Assistant Secretary)

BY: ______________________

TITLE: VICE PRESIDENT CORPORATE SERVICES

DATE: JUN 13 1983

I, Marion Reynolds, certify that I am the Assistant Secretary of the corporation named as Purchser herein; that W. E. Mange, Jr. who signed this document on behalf of the Purchaser was then Vice President - Corporate Services of said corporation; that said document was duly signed for and on behalf of said corporation by authoirty of its governing body and is within the scope of its corporate powers.

IN WITNESS WHEREOF, I have hereunto affixed my hand and the seal of said corporation this 13th day of June, 1983.

______________________
(Assistant Secretary)