IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PSEG NUCLEAR L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 01-551C |
| v. | ) | (Judge Sypolt) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to this Court's order dated October 14, 2004, defendant, the United States, respectfully submits this response to plaintiff's response to the Court's October 14, 2004 order to show cause.

DISCUSSION

I. WITH ALL DUE RESPECT, WE HAVE BEEN UNABLE TO IDENTIFY A BASIS UPON WHICH TO QUESTION THE SOLICITOR GENERAL'S PAST ANALYSIS REGARDING THE APPROPRIATE FORUM FOR CONTRACT-BASED CLAIMS ARISING UNDER THE STANDARD CONTRACT

In its October 14, 2004 order, this Court requested that the plaintiffs in this and three other spent nuclear fuel ("SNF") cases show cause as to "why their claims based on defendant's alleged breach of a contract to begin to dispose of SNF before the date set out at Section 302(a)(5)(B) of the" Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. 10101-10270, "should not be dismissed for lack of jurisdiction or transferred to a federal circuit court of appeals with original and exclusive jurisdiction to hear challenges to the Department of Energy's ("DOE") purported actions or failures to act in conformity with the statute." Order, at 36 (Oct. 14, 2004). The basis of the Court's order for the plaintiffs to show cause was its preliminary analysis that, "although the Act clearly contemplates a 'contract,' it just as clearly did not provide for review of that contract in the usual forum, the Court of Federal Claims." Order, at 10. The Court indicated

its preliminary view that the judicial review provisions of the NWPA, which are set forth at 42 U.S.C. 10139, provide for original and exclusive jurisdiction in the Federal circuit courts of appeals of any challenge to the Secretary of Energy's action or failure to take an action required by the NWPA and that this exclusive jurisdiction includes actions under the contract mandated by 42 U.S.C. 10222(a)(5). Id.

In response to the Court's October 14, 2004 order, the plaintiffs have made various arguments objecting to the Court's show cause order that lack merit. The plaintiffs argue that, because the United States Court of Appeals for the District of Columbia Circuit has already determined that this Court possesses jurisdiction to entertain damages suits arising from the contracts mandated by the NWPA, this Court has jurisdiction to entertain such actions. Pl. Resp. 19. Yet, this Court is not bound by decisions of the D.C. Circuit, precluding the plaintiffs' argument.

The plaintiffs also argue that, because each of them joined in the petition for review that was submitted to the D.C. Circuit in Northern States Power Co. v. Department of Energy, 128 F.3d 754 (D.C. Cir. 1997), and two of them joined in the petition in Alabama Power Co. v. United States Department of Energy, 307 F.3d 1300 (11th Cir. 2002), this Court is barred from revisiting the issue of jurisdiction. Pl. Resp. 19. However, neither the D.C. Circuit in Northern States nor the 11th Circuit in Alabama Power decided that jurisdiction was proper in this Court, precluding the res judicata argument that the plaintiffs attempt to raise. Further, even if the appellate courts had made such a decision in Northern States or Alabama Power, those courts can decide whether they possess jurisdiction to entertain a claim, but they cannot conclusively decide that this Court possesses such jurisdiction. See Order, at 23 (Oct. 14, 2004) (citing United States

v. Cook County, 170 F.3d 1084, 1091-92 (Fed. Cir. 1999); see also Christianson v. Colt Industries, 486 U.S. 800, 815-818 (1988); Amen v. City of Dearborn, 718 F.2d 789, 793-94 (6th Cir. 1983), *cert. denied*, 465 U.S. 1101 (1984). Accordingly, the plaintiffs' assertions that the Court is barred by res judicata from considering its own jurisdiction is incorrect.

Nevertheless, after evaluating the Court's show cause order and the positions that the Solicitor General has taken in past litigation under the NWPA, and with all due respect, we cannot identify a basis upon which to modify the Federal Government's past positions regarding the proper forum for review of contractual claims arising under the Standard Contract. We understand the basis upon which the Court, in its show cause order, has preliminarily determined that jurisdiction to review claims arising under the contract mandated by 42 U.S.C. 10222(a)(5) "arise under" the NWPA. We agree that, because section 302(a)(5) of the NWPA mandates that the Secretary enter into contracts with the owners and generators of SNF and mandates that certain terms be included in those contracts, challenges to the terms of the contracts themselves (and challenges to the absence of specific terms that nuclear utilities might have wanted to include in the contracts) had to be presented to a Federal circuit court of appeals within 180 days of the promulgation of those terms. Further, we agree that current challenges to actual terms of the Standard Contract – and nuclear utility plaintiffs' attempts to add terms to the Standard Contract long after the contract's promulgation – are wholly untimely and inappropriate. However, we have no basis for departing from the Solicitor General's prior analyses -- presented in his opposition to a petition for certiorari in Consolidated Edison Co. of New York v. Department of Energy, No. 98-1358 (D.C. Cir. Apr. 16, 1999) *respondent's opposition to petition for cert. filed,* 2000 WL 34005420 (U.S. Feb. 2000), *cert. denied* 529 U.S. 1003 (U.S. Mar. 6,

2000) (No.99-766), and in his petition for certiorari in United States v. Northern States Power Company. 128 F.3d 754 (D.C. Cir. 1997), *petition for cert. filed*, (U.S. Sept. 1998), *cert. denied* 525 U.S. 1016 (U.S. Nov. 30, 1998) (No. 98-384)[1] -- in which he determined that challenges to the Secretary's failure to act in accordance with the express terms of the promulgated and executed contracts were not reviewable under the NWPA but, instead, were properly presented to this Court under the Tucker Act. In light of the Solicitor General's position presented to the Supreme Court, and with all due respect, we cannot support the Court's preliminary view that jurisdiction to entertain challenges to DOE's actions under the Standard Contract belong in the Federal circuit courts of appeal, rather than this Court.

## II. THIS COURT SHOULD DETERMINE WHETHER DOE MAY INVOKE THE "UNAVOIDABLE DELAYS" PROVISION OF THE STANDARD CONTRACT

We believe that this Court properly possesses jurisdiction to revisit an issue that the plaintiffs believe was conclusively resolved in Northern States Power Co. v. Department of Energy, 128 F.3d 754 (D.C. Cir. 1997). As mentioned above, the Government consistently has taken the position that the Court of Federal Claims has the exclusive jurisdiction to resolve issues concerning the construction and administration of the Standard Contract. Indeed, it is for this very reason that this Court can, and should, notwithstanding the D.C. Circuit's decision in Northern States Power, resolve the issue of whether DOE may properly invoke the "unavoidable delay" provision of the Standard Contract.

After the D.C. Circuit's decision in Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272 (D.C. Cir. 1996), DOE determined, in response to comments received by

[1]The relevant portions of these pleadings are attached to this filing.

contract holders regarding the anticipated delay in building a permanent geological repository or interim storage facility, that pursuant to Article IX of the Standard Contract, DOE was "not obligated to provide a financial remedy for the delay" because the delay was unavoidable. Northern States at 757.

In Northern States, various utilities and state agencies sought a writ of mandamus from the D.C. Circuit requiring DOE to comply with the Court's previous decision in Indiana Michigan, and begin disposal of spent nuclear fuel by the January 31, 1998 statutory deadline contained in the NWPA. 42 U.S.C. 10222(a)(5)(B).

The D.C. Circuit denied the writ in part, concluding that the Standard Contract provides a "potentially adequate remedy if DOE fails to fulfill its obligations" by January 31, 1998. Id. at 756. However, the D.C. Circuit granted petitioners' writ in part, precluding DOE from relying upon the "unavoidable delays" provision of the Standard Contract to excuse its delay on the grounds that DOE had not yet built a federal repository or interim storage facility. Id.

DOE filed a petition for rehearing, contending that the D.C. Circuit lacked jurisdiction to determine the applicability of the "unavoidable delays" provision of the Standard Contract. DOE explained in the rehearing petition that questions concerning the construction and administration of the Standard Contract are entrusted to the Court of Federal Claims. The D.C. Circuit denied DOE's motion for rehearing, concluding that:

> The DOE . . . suggest[s] that this Court has erroneously designated itself as the proper forum for adjudication of disputes arising under the Standard Contract. As the above should make clear, we did not; we merely prohibited the DOE from implementing an interpretation that would place it in violation of its duty under the NWPA to assume an unconditional obligation to begin disposal by January 31, 1998. The statutory duty to include an unconditional

> obligation in the contract is independent of any rights under the contract. The Tucker Act does not prevent us from exercising jurisdiction over an action to enforce compliance with the NWPA.

Northern States Power Co. v. United States Dep't of Energy, No. 97-1064, 98-1069, 98-1070, 97-1065, 97-1370, 97-1398, 1998 WL 276581 (D.C. Cir. May 5, 1998).

DOE filed a petition for certiorari to the United States Supreme Court, contending that the D.C. Circuit's decision intruded upon the exclusive jurisdiction of the Court of Federal Claims, and that by determining that DOE could not invoke the "unavoidable delays" provision of the Standard Contract, had pretermitted the orderly disposition of a contract dispute that could have potentially great consequences both the for the liability of the United States and for the continued economic viability of nuclear generating facilities.[2] The Supreme Court denied DOE's certiorari petition. Department of Energy v. Northern States Power Co., 525 U.S. 1016 (1998).

To the extent that the D.C. Circuit lacked jurisdiction to determine the applicability of the "unavoidable delays" clause of the Standard Contract, the D.C. Circuit's decision does not have preclusive effect and, consequently, this Court may determine the applicability of this contractual provision in the first instance. Christopher Village v. United States, 360 F.3d 1319 (Fed. Cir. 2004). In Christopher Village, owners of federally subsidized low-income housing sought a writ of mandamus and injunctive and declaratory relief under the Administrative Procedures Act ("APA") in the United States District Court for the Southern District of Texas, contending that the Department of Housing and Urban Development ("HUD") had illegally demanded $2 million in escrow and illegally refused to consider its request for a rent increase. Id. at 1323. The

[2]Many of the anomalies described by this Court in its show cause order would be resolved if this Court determined the DOE could invoke the "unavoidable delays" provision.

plaintiffs also sought a declaratory judgment that their obligation to maintain the property was contingent upon receiving adequate rent revenue. Id. The district court granted summary judgment in HUD's favor, and plaintiffs appealed. Id.

While the case was pending in the United States Court of Appeals for the Fifth Circuit, HUD sold the property in a foreclosure sale, mooting the basis for the APA action. Id. The Fifth Circuit held that although the foreclosure sale mooted the request for an injunction and mandamus relief, the request for a declaratory judgment was a live dispute because the plaintiffs "could use the declaration as a predicate for a damages action against HUD in the Court of Federal Claims." Id. at 1324. On the merits, the Fifth Circuit reversed the district court's grant of summary judgment and held that the Government had breached its obligations to the plaintiffs. Id.

The plaintiffs subsequently filed a breach of contract action in the Court of Federal Claims, contending that they were entitled to a finding of liability against HUD as a matter of law because the Fifth Circuit's ruling barred the Government from relitigating the issue of breach of contract. Id. However, while the breach of contract action was pending in the Court of Federal Claims, collateral criminal litigation involving one of the plaintiffs was settled in the United States District Court of the Northern District of California. Id. at 1325. The result of the settlement was that it established that plaintiffs had breached their obligation to HUD. Id. The Court of Federal Claims rejected plaintiffs' contention that it was bound by the Fifth Circuit's decision, explaining that the Fifth Circuit lacked jurisdiction to determine contract liability, and further because the criminal plea had not been before the Fifth Circuit, the issue of prior material breach had not been decided by the Fifth Circuit. Id. at 1326. Consequently, the Court of Federal

Claims granted the Government's motion for summary judgment, concluding that the plea agreement evidenced a prior material breach by plaintiffs, thereby excusing HUD of any liability for a later breach that HUD may have committed. Id.

On appeal to the Federal Circuit, the plaintiffs contended that the Fifth Circuit's determination that HUD had breached its obligations was res judicata and collateral estoppel. Id. The Federal Circuit rejected this argument and concluded that the Fifth Circuit's decision should not be given preclusive effect, because the Fifth Circuit lacked jurisdiction when it rendered its decision. Id. at 1328. The Federal Circuit acknowledged that the district court properly had jurisdiction to adjudicate the APA challenge, but, once HUD had sold the subject property, the sole remaining claim was in essence one for monetary damages. Id. at 1327. Therefore, the Fifth Circuit lacked jurisdiction to award relief and the appeal should have been dismissed. The Federal Circuit explained:

> [T]he fact that a court did not have jurisdiction over a suit in which it issued a decision does not automatically strip that decision of preclusive effect. In most circumstances a judgment may not be collaterally attacked on the ground that the original tribunal lacked subject matter jurisdiction, even if the issue of subject matter jurisdiction has not been litigated in the first action . . . The Restatement similarly notes that a court's "judgment precludes the parties from litigating the question of the court's subject matter jurisdiction" on collateral review. The Restatement, however, also recognizes exceptions to this rule, including when "[a]llowing the judgment to stand would substantially infringe the authority of another tribunal or agency of the government."

Id. at 1329-30 (citations omitted) (emphasis added).

The Federal Circuit concluded that the Fifth Circuit's ruling "did not merely exceed the court's jurisdiction, it 'directly implicat[ed] issues of sovereign immunity' and is therefore void."

Id. at 1333. Consequently, the Federal Circuit held that the Fifth Circuit's decision was not entitled to preclusive effect. Id.

Similarly, should this Court conclude that it properly possesses jurisdiction to resolve issues concerning the administration and construction of the Standard Contract, we respectfully request that the Court consider whether the "unavoidable delays" provision has applicability under these circumstances. As in Christopher Village, in which the Fifth Circuit's decision was not afforded preclusive effect because it lacked jurisdiction, the D.C. Circuit in Northern States lacked jurisdiction when it held that DOE could not invoke the "unavoidable delays" provision of the Standard Contract. Indeed, the D.C. Circuit's ruling directly implicates the issue of sovereign immunity, as the Court of Federal Claims has the exclusive jurisdiction to resolve claims of money damages against the Government. Accordingly, the D.C. Circuit's decision need not be given preclusive effect, and this Court properly may determine whether DOE may invoke the "unavoidable delays" provision of the Standard Contact.

## CONCLUSION

For the foregoing reasons, we respectfully believe that the Court can resolve the jurisdictional issues in this case including properly determining those issues related to the contractual claims arising under the Standard Contract.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Heide L. Herrmann
HEIDE L. HERRMAN
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 514-4325
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

January 4, 2005

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January 2005, a copy of foregoing response to the Court's October 14, 2004 Order, was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Stephen Finn