No. 98-384

# In the Supreme Court of the United States

OCTOBER TERM, 1997

UNITED STATES OF AMERICA, ET AL., PETITIONERS

*v.*

NORTHERN STATES POWER COMPANY, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT*

**PETITION FOR A WRIT OF CERTIORARI**

SETH P. WAXMAN
*Solicitor General*
*Counsel of Record*

LOIS J. SCHIFFER
*Assistant Attorney General*

LAWRENCE G. WALLACE
*Deputy Solicitor General*

MALCOLM L. STEWART
*Assistant to the Solicitor General*

JOHN A. BRYSON
*Attorney*

*Department of Justice*
*Washington, D.C. 20530-0001*
*(202) 514-2217*

January 31, 1998," and it specifically "preclude[d] DOE from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim." *Id.* at 13a.[6]

6. DOE filed a petition for rehearing, arguing that the court of appeals lacked jurisdiction to determine the applicability of the "unavoidable delays" provision of the Standard Contract to disputes between DOE and the utilities. App., *infra,* 18a-19a. DOE's rehearing petition explained that questions concerning the construction and administration of the Standard Contract are entrusted to the Court of Federal Claims, which exercises exclusive jurisdiction under the Tucker Act, 28 U.S.C. 1491 (1994 & Supp. II 1996), over any damage action founded on a contract with the United States. One of the utilities, Yankee Atomic Company (Yankee), also filed a rehearing petition; the remaining utilities and the States that were parties to the case filed motions to enforce or expand the mandate.[7] App., *infra,* 15a-19a.

---

[6] The court further stated: "This necessarily means, of course, that DOE not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of 'acts of Government in either its sovereign or contractual capacity'." Pet. App. 13a (quoting Article IX.A of the Standard Contract, 10 C.F.R. 961.11). It held on that basis that "this provision in the Standard Contract, insofar as it is applied to DOE's failure to perform by 1998, is inconsistent with DOE's statutory obligation to assume an unconditional duty." *Id.* at 14a.

[7] Yankee argued that the remedy of adjustment of fees under the "[a]voidable delays" provision was inadequate as applied to Yankee because that utility had ceased nuclear power generation and was no longer paying the fee. Yankee requested the court to order DOE to begin moving Yankee's spent fuel off its site. The States and remaining utilities contended that the equitable

> not; we merely prohibited the DOE from implementing an interpretation that would place it in violation of its duty under the NWPA to assume an unconditional obligation to begin disposal by January 31, 1998. The statutory duty to include an unconditional obligation in the contract is independent of any rights under the contract. The Tucker Act does not prevent us from exercising jurisdiction over an action to enforce compliance with the NWPA.

App., *infra*, 18a-19a.

To date, only one party to the Standard Contract (the Wisconsin Electric Power Company) has filed with DOE a request for equitable adjustment of the fees under the avoidable delays provision. Eleven utilities have filed suits in the Court of Federal Claims, seeking damages ranging from $70 million to $1.5 billion. Other utilities have again sought relief in the D.C. Circuit. In addition, the States and state regulatory commissions that are parties to this case have filed a petition for a writ of certiorari from the judgment and orders below. See *State of Michigan* v. *Dep't of Energy*, No. 98-225.

## REASONS FOR GRANTING THE PETITION

The court of appeals has issued a writ of mandamus prohibiting the DOE from treating its delay in accepting SNF as "[u]navoidable" within the meaning of the *force majeure* clause of the Standard Contract (10 C.F.R. 961.11) between the Department of Energy and utilities that own and generate such fuel. The court's decision intrudes upon the jurisdiction of the Court of Federal Claims—the tribunal vested with exclusive authority to adjudicate contract claims against the United States. Moreover, in dictating the appropriate resolution of an issue that is reserved for administra-

tive processes prescribed by the contract, and that is ultimately entrusted to another court, the court of appeals has pretermitted the orderly disposition of a contractual dispute that has potentially great consequences both for the liability of the United States and for the continued economic viability of nuclear generating facilities. Review by this Court is warranted both to restore the proper division of jurisdiction in contract cases between the regional courts of appeals and the Court of Federal Claims, and to prevent disruption of an important national program.

1. It is well established that "[t]he sole remedy for an alleged breach of contract by the federal government is a claim for money damages, either in the United States Claims Court under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1982), or, if damages of no more than $10,000 are sought, in district court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (1982)." *Sharp* v. *Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986) (Scalia, J.). Accord, *e.g.*, *Transohio Savings Bank* v. *Director, OTS*, 967 F.2d 598, 609-610 (D.C. Cir. 1992); *Megapulse, Inc.* v. *Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982). The court of appeals' authority to review "any final decision or action of the Secretary" of Energy *under the NWPA*, 42 U.S.C. 10139(a)(1)(A), does not extend to a contracting party's claim that the Secretary has violated its rights *under the contract*.[8]

---

[8] Section 119(a), 5 U.S.C. 10139(a), is a grant of subject matter jurisdiction, and litigants invoking that provision must also identify an appropriate waiver of sovereign immunity. See *General Elec. Uranium Management Corp.* v. *U.S. Dep't of Energy*, 764 F.2d 896, 900-904 (D.C. Cir. 1985) (characterizing Section 119 as addressing subject matter jurisdiction); *Wisconsin Elec. Power Co. v. Department of Energy*, 778 F.2d 1, 2-3 (D.C. Cir. 1985) (applying *General Electric Uranium*). The only waiver of sovereign

The court of appeals purported to accept that restriction on its authority, stating (in its order on denial of rehearing) that its grant of mandamus relief in *Northern States* "does not place the question of contract remedies in this court." App., *infra,* 18a. Its decision in this case, however, cannot be reconciled with that jurisdictional limit. The court expressly "preclude[d] DOE from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim." App., *infra,* 13a. The words "avoidable" and "unavoidable," however, do not appear in the NWPA itself, but only in the Standard Contract. The court of appeals' determination that DOE's delay must be treated as "avoidable" thus goes directly, and exclusively, to the manner in which the Standard Contract is construed and its remedial provisions implemented. Indeed, the writ of mandamus issued by the court in *Northern States* is on its face a directive to DOE regarding the interpretation and administration of the

---

immunity potentially applicable here is that found in the Administrative Procedure Act (APA), 5 U.S.C. 702. However, parties may not obtain judicial review under the APA "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. 702. The Tucker Act, 28 U.S.C. 1491 (1994 & Supp. II 1996), provides a damages remedy for actions founded on a contract with the United States and impliedly forbids any other type of relief on the contract in any other court. See *Sharp*, 798 F.2d at 1523 ("The waiver of sovereign immunity in the Administrative Procedure Act does not run to actions seeking declaratory relief or specific performance in contract cases, because that waiver is by its terms inapplicable if 'any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought,' 5 U.S.C. § 702, and the Tucker Act and Little Tucker Act impliedly forbid such relief."); *Transohio*, 967 F.2d at 609.

Standard Contract. See, *e.g.*, App., *infra,* 11a ("DOE's current approach toward contractual remedies violates our directives in *Indiana Michigan*"). The court of appeals erred in resolving an issue of contract interpretation that is reserved, following administrative consideration of the claims by DOE, for the exclusive jurisdiction of the Court of Federal Claims.

2. The court of appeals concluded that mandamus relief was appropriate "because DOE has not abided by our prior conclusion that the NWPA imposes an unconditional obligation on the Department to begin disposal of the SNF by January 31, 1998." App., *infra,* 14a; see also *id.* at 19a (order on denial of rehearing) (characterizing prior opinion as "prohibit[ing] the DOE from implementing an interpretation that would place it in violation of its duty under the NWPA to assume an unconditional obligation to begin disposal by January 31, 1998."). The court thus treated the writ of mandamus as a means of "compel[ling] DOE to comply with our prior mandate in *Indiana Michigan.*" *Id.* at 11a. That conclusion is flawed in two distinct respects.[9]

[9] The analysis that follows assumes that the court of appeals in *Indiana Michigan* properly exercised jurisdiction, pursuant to 42 U.S.C. 10139, when it held that DOE's obligation to accept SNF in January 1998 was not contingent on the existence of a suitable disposal facility. In light of the court of appeals' subsequent opinions, however, that premise is open to substantial doubt. The court in *Indiana Michigan* held that "section 302(a)(5)(B) [42 U.S.C. 10222(a)(5)(B)] creates an obligation in DOE, reciprocal to the utilities' obligation to pay, to start disposing of the SNF no later than January 31, 1998." App., *infra,* 38a. The court has since recognized, however, that its initial formulation was not accurate. In its order on denial of rehearing, the court acknowledged that "[w]hile the [NWPA] requires the DOE to include an unconditional obligation in the Standard Contract, it does not itself require performance. Breach by the DOE does not violate a statutory duty." *Id.* at

A. Except in extraordinary circumstances not applicable here, mandamus is unavailable "as a mode of review where a statutory method of appeal has been prescribed." *Roche* v. *Evaporated Milk Ass'n*, 319 U.S. 21, 27-28 (1943); see also *In re Sindram*, 498 U.S. 177, 179 (1991) (per curiam); *In re Ojeda Rios*, 863 F.2d 202 (2d Cir. 1988). Moreover, a mandamus order is appropriately issued under the All Writs Act, 28 U.S.C. 1651(a), only when the case that it affects is "one that may lie within the prospective future jurisdiction of the court of appeals, or that has in fact come within its jurisdiction in the past." 16 C. Wright et al., *Federal Practice and Procedure* § 3932, at 471 (1996); see also *id.* at 477 ("a court of appeals could not issue a writ to a district court sitting in another circuit, nor to any other tribunal properly reviewable only in another circuit"); *Ojeda Rios*, 863 F.2d at 204-205; *Telecommunications Research and Action Ctr.* v. *FCC*, 750 F.2d 70, 77-78 (D.C. Cir. 1984).

As we explain above, following administrative consideration by DOE, adjudication of claims arising under

---

18a. Because DOE's obligation to accept SNF by January 31, 1998, is contractual rather than statutory, the nature (conditional or unconditional) of that obligation is at bottom a question of contract interpretation—a matter that lies outside the jurisdiction of the court of appeals.

If the court of appeals had not previously issued its decision in *Indiana Michigan*, it is altogether clear that the Contracting Officer's preliminary determination regarding the "unavoidable" character of DOE's delay in performance would not have been subject to review under 42 U.S.C. 10139. That is so not only because the Contracting Officer's determination was one of contract construction, but also because her preliminary determination was subject to further review within the agency and therefore was not a "final decision or action of the Secretary." 42 U.S.C. 10139(a)(1)(A).

the Standard Contract is solely entrusted to the Court of Federal Claims, and thus is subject to appellate review in the Federal Circuit. See 28 U.S.C. 1295(a)(3) (Federal Circuit has exclusive jurisdiction over "an appeal from a final decision of the United States Court of Federal Claims"). There is consequently no prospect that the D.C. Circuit will be called upon to resolve any future dispute that may arise concerning the proper interpretation of the Delays Clause (Art. IX, 10 C.F.R. 961.11) of the Standard Contract. Because any suit arising under the Standard Contract will be "properly reviewable only in another circuit," Wright, *supra*, at 477, the court of appeals exceeded its authority in directing DOE not to treat the delay as "unavoidable" in implementing the contract's remedial provisions.[10]

---

[10] The government's petition for a writ of certiorari in *FCC* v. *Iowa Utilities Board, et al.*, No. 97-1519, raises a similar issue. In that case, the court of appeals for the Eighth Circuit issued a writ of mandamus declaring invalid a Federal Communications Commission (FCC) order. The Eighth Circuit acknowledged that direct review of the FCC order in question fell within the exclusive jurisdiction of the D.C. Circuit, but concluded that mandamus relief was justified as a means of enforcing its mandate entered in a prior review proceeding concerning a separate agency order. The government's petition for certiorari argues, *inter alia*, that the Eighth Circuit exceeded its authority by issuing a writ of mandamus, and that the mandamus order subverts Congress's decision to consolidate judicial review of a defined class of FCC actions in the D.C. Circuit. See 97-1519 Pet. 24-27; 97-1519 Reply Br. 7-9. The government's petition in No. 97-1519 is currently pending before this Court.

The fact that the D.C. Circuit exceeded its authority in issuing a writ of mandamus does not mean that its decision in *Indiana Michigan* would be without force in appropriate litigation under the contract in the Court of Federal Claims. In any such litigation, the utilities would be free to argue that the D.C. Circuit's decision in *Indiana Michigan* (1) is entitled to preclusive effect and (2)

B. There is, in any event, no merit to the court of appeals' conclusion that DOE's reliance on the "[u]navoidable delays" provision of Article IX is logically irreconcilable with the *Indiana Michigan* holding. Observing that treatment of the agency's delay as "unavoidable" would "let DOE off the hook for monetary damages," the court concluded that "DOE cannot now render its obligation contingent, and free itself of the costs caused by its delay." App., *infra,* 12a, 13a. The court of appeals' apparent premise was that DOE's failure to fulfill a contractual obligation *necessarily* requires the payment of damages for any losses incurred as a result of the breach—*i.e.*, that a denial of monetary relief should be regarded as the practical and legal equivalent of a determination that no contractual obligation exists.

That premise has no basis in the law of contracts and would, if pursued to its logical conclusion, render the doctrine of *force majeure* a nullity. The Standard Contract's "[u]navoidable delays" provision presupposes a "failure" by one of the contracting parties "to perform its obligations" under the contract. Art. IX.A, 10 C.F.R. 961.11. The provision is included in the Standard Contract precisely to ensure that a failure of performance will *not* give rise to monetary liability "if such

---

logically forecloses DOE from treating its delay in performance as "unavoidable" within the meaning of Article IX. It is therefore possible that the D.C. Circuit's decision in *Indiana Michigan* could ultimately affect the outcome of litigation regarding claims under the Standard Contract. The Court of Federal Claims, however, is fully capable of resolving any preclusion issues that may arise in suits falling within its jurisdiction. The D.C. Circuit's authority to enforce its mandate in *Indiana Michigan* does not extend to defining the scope of that decision's preclusive effect in suits coming within the exclusive jurisdiction of another federal court.

failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform." *Ibid.*[11] Article IX.A thus reflects an unambiguous determination (and agreement) that a contracting party's failure to perform its obligations in a timely manner does not logically compel the provision of a monetary remedy.[12]

Moreover, quite apart from the court of appeals' failure to distinguish between contractual rights and remedies, the court erred in equating DOE's argument (in *Indiana Michigan*) that its obligation to accept SNF

[11] A *force majeure* clause excusing failures of performance caused by events beyond the control of the contracting party is a standard feature of government procurement contracts. Compare 48 C.F.R. 52.249-8(c); 48 C.F.R. 52.249-14.

[12] The court of appeals did not squarely hold that the "[u]navoidable delays" provision was contrary in its entirety to the holding in *Indiana Michigan*. The court did not, for example, expressly foreclose application of that provision to delays caused by "fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes and unusually severe weather." Art. IX.A, 10 C.F.R. 961.11. Rather, the court "preclude[d] DOE from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim," and it stated that "DOE [may] not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of 'acts of Government in either its sovereign or contractual capacity.'" App., *infra*, 13a (quoting Art. IX.A, 10 C.F.R. 961.11). The court's decision to grant mandamus relief, however, was based on (1) its conclusion, drawn from the *Indiana Michigan* opinion, that DOE's obligation to accept SNF is "[u]nconditional," *id.* at 11a; and (2) its apparent belief that the existence of an "unconditional" contract obligation necessarily implies a duty to pay money damages if any breach occurs. The logic of the court's analysis would therefore appear to extend to delays caused by natural disasters or other occurrences wholly outside the control of any arm of the federal government.

was contingent on the existence of a suitable facility with its subsequent preliminary determination that its delay in performance was "unavoidable." See App., *infra*, 12a (stating that in characterizing its delay in performance as "unavoidable," "DOE is simply recycling the arguments rejected by this court in *Indiana Michigan*."). In reaching her preliminary determination that DOE's delay in accepting SNF was "unavoidable" within the meaning of Article IX, the Contracting Officer did not rely solely on the fact that no repository or other facility was available. Instead, she examined the reasons for that state of affairs. For example, she analyzed at length the many technical difficulties that had been encountered in the course of an unprecedented scientific and engineering project—a project that has as its goal the safe isolation of highly radioactive waste from the human environment "for at least 10,000 years." Resp. Exh. 6 (Contracting Officer's Preliminary Determination), *supra* note 5, at 4. She also considered the numerous regulatory hurdles that have impeded the project, the legislative actions that have constrained alternative approaches, and the effects of third-party legal challenges to and oversight of project activities. *Id.* at 6-16. Her preliminary determination regarding the proper application of the Delays Clause was based not simply on the fact that no repository or other suitable facility existed, but on her finding that the absence of such a facility was the result of factors beyond DOE's control.

For the foregoing reasons, the court of appeals lacked authority to direct DOE in its construction and implementation of the existing Standard Contract, since questions of contract interpretation are reserved for the Court of Federal Claims.