# In the United States Court of Federal Claims

**No. 01-551C**

**(Filed April 22, 2005)**

* * * * * * * * * * * * * * * * * * * * * * * *

**PSEG NUCLEAR, L.L.C.** and **PUBLIC SERVICE ELECTRIC AND GAS COMPANY,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

* * * * * * * * * * * * * * * * * * * * * * * *

***Alexander D. Tomaszczuk***, McLean, VA, attorney of record for plaintiff, with ***Jay E. Silberg, Daniel S. Herzfeld,*** and ***Jack Y. Chu***, of counsel.

***Heide Lynn Herrmann***, Department of Justice, Washington, D.C., with whom was ***Assistant Attorney General Peter D. Keisler***, for defendant. ***David M. Cohen***, Director, ***Harold D. Lester, Jr.,*** Assistant Director, ***Martha S. Crosland*** and ***Jane K. Taylor***, of counsel.

**OPINION & ORDER**

***Futey,* Judge.**

This case is before the court on plaintiff's motion to reconsider the court's January 31, 2005 Opinion and Order ("01/31 Opinion"), which dismissed on jurisdictional grounds plaintiff's claims for breach of contract against the United States. Defendant concurs with plaintiff's argument that the court's opinion on jurisdiction was erroneous.

Plaintiff PSEG Nuclear, L.L.C. ("PSEG") is one of sixty-five civilian title-owners or generators of nuclear waste ("utilities") and other interested parties that have sued defendant, the U.S. Department of Energy ("DOE"), alleging that DOE breached an agreement to begin disposing of their nuclear waste in a permanent

deep geologic repository. Plaintiff filed its complaint on September 26, 2001, alleging that, since the January 31, 1998 disposal deadline, it has paid and continues to pay fees into the Nuclear Waste Fund, in return for DOE's obligation to remove and dispose of spent nuclear fuel ("SNF"). PSEG further alleges that DOE has failed to comply with the disposal deadline, resulting in storage costs to PSEG, the amount of which will be determined at trial. Plaintiff has also asserted a Fifth Amendment takings claim. This case was consolidated with similar cases filed by Florida Power & Light Co. ("Florida Power"), Duke Power, and Nebraska Public Power District ("Nebraska Power").

The parties filed cross-motions for partial summary judgment on the intended rate of SNF acceptance. Defendant moved for partial summary judgment regarding "greater than class C" ("GTCC") waste and moved to dismiss plaintiffs' takings claims.

On October 14, 2004, the court, *sua sponte*, questioned its jurisdiction and issued an Order to Show Cause ("OSC") why the complaint should not be dismissed for lack of subject matter jurisdiction or transferred to the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"). In reply, plaintiffs and defendant asserted that the court did have subject matter jurisdiction, but the court disagreed and, in the 01/31 Opinion, transferred the breach of contract claims of plaintiffs Florida Power and Duke Power to the D.C. Circuit. ***Fla. Power & Light Co. v. United States***, 64 Fed. Cl. 37, 44 (2005). The court dismissed the breach of contract claims of plaintiffs PSEG and Nebraska Power since they would not have been timely filed in the D.C. Circuit, the proper forum. ***Id.*** Additionally, the court certified its opinion so that the parties could bring an interlocutory appeal to the United States Court of Appeals for the Federal Circuit ("Federal Circuit"). ***Id.*** The court stayed the other issues pending resolution on appeal of jurisdiction. ***Id.*** Lastly, on January 31, 2005, the judge who issued the 01/31 Opinion retired, with the cases of each of the four consolidated plaintiffs being separated and assigned to different judges, and with plaintiff PSEG coming before this court.

On February 10, 2005, plaintiff filed a motion for reconsideration under Rule 59(a) of the Rules of the United States Court of Federal Claims ("**RCFC**"), asserting that the court, in holding that it lacked subject matter jurisdiction, committed "a clear error of law" that would "lead to manifest injustice." On the same date, plaintiff and the other previously consolidated plaintiffs also filed with the Federal Circuit a Joint Petition for Permission to Appeal.

On March 3, 2005, another judge of the court granted plaintiff Duke Power's motion for reconsideration. ***Duke Power v. United States***, No. 98-485C, slip op. (Fed. Cl. Mar. 3, 2005).

This court held a status conference on March 7, 2005 to discuss issues of jurisdiction and ordered defendant to file its response to plaintiff's motion for reconsideration, which defendant did on March 23, 2005.

Shortly thereafter, a second judge of the court granted the motion for reconsideration of plaintiff Nebraska Power. ***Neb. Pub. Power Dist. v. United States***, No. 01-116C, slip op. (Fed. Cl. Mar. 30, 2005).

The case of plaintiff Florida Power remains before the court on that plaintiff's motion for reconsideration.

On March 31, 2005, plaintiff PSEG filed a notice of the March 25, 2005 order of the Federal Circuit that the petition for permission to appeal would be held in abeyance pending the resolution of all the motions for reconsideration.

Factual Background[1]

When the first nuclear power plants began to operate in the late 1950's, re-processing was expected both to eliminate storage and disposal problems and to offset any associated expense. See SEN. REP. NO. 96-548 ("Report on S. 2189") at 13 (1980). By the mid-1970s, however, it become clear that re-processing would not be a viable industry in the United States. H.R. REP. NO. 97-491 ("Report on H.R. 3809"), pt. 1, at 2 (1982), reprinted in 1982 U.S.C.C.A.N. 3792. Nuclear utilities began to complain that their plants would run out of storage space. In the wake of incidents such as the allegedly nearly-disastrous errors at Three-Mile Island, the public, too, expressed qualms about long-term storage. See Report on S. 2189, at 10.

Concerned that increasingly negative public opinion might imperil the very survival of the nuclear industry, Congress in the late 1970's began to consider legislation to deal with nuclear waste disposal, and the result was the Nuclear Waste Policy Act of 1982 ("NWPA"), Pub. L. No. 97-425, 96 Stat. 2201 (1983), codified at 42 U.S.C. §§ 10101, *et seq*.

The principal purposes of the NWPA were to obtain approval for and to build two long-term waste repositories, to develop a short-term, on-site interim waste storage program, to enter into contracts with utilities providing that DOE would take title to SNF "following commencement of operation of a repository" and begin to dispose of the SNF "in return for" fees charged to the utilities. NWPA § 302(a), 42 U.S.C. § 10222(a).

[1] The facts are taken from the 01/31 Opinion.

Congress mandated the January 31, 1998 disposal deadline in § 302(a)(5)(B) of the NWPA. Article II of the "Standard Contract," 10 C.F.R. § 961.11, which DOE signed with each utility pursuant to the NWPA, reiterated the deadline.

As a result of delays and rising costs, Congress amended the Act in 1987 to permit only one permanent repository at Yucca Mountain, Nevada. See 42 U.S.C. § 10133(c)(3). In 1994, DOE issued a Notice of Inquiry on Waste Acceptance Issues, which: (1) revealed that DOE would be unable to begin accepting SNF before the January 31, 1998 deadline; (2) requested comments on the adequacy of reactor site storage after the deadline; and (3) disclosed a legal opinion that it lacked authority to remove SNF from reactor sites until there was an operational facility or repository ready for the emplacement of SNF. See Notice of Inquiry, 59 Fed. Reg. 27,007 (May 25, 1994). DOE is unlikely to open a repository until at least 2010. ***Id.*** at 27,008.

## Discussion

*1. Standard of Review*

The threshold question facing the court, in light of the fact that the judge who issued the 01/31 Opinion has now retired, is the scope of discretion a successor judge has to reconsider that opinion.

As a general rule, a successor judge "steps into the shoes of his or her predecessor, and is thus bound by the same rulings and given the same freedom as the first judge" had to change those rulings. ***Exxon Corp. v. United States***, 931 F.2d 874, 878 (Fed. Cir. 1991). Since the first judge always has the power to change a ruling after further reflection, so too does a successor judge. ***Id.*** (citing ***Jamesbury Corp. v. Litton Indus. Prod., Inc.***, 839 F.2d 1544, 1551 (Fed. Cir. 1988)); see also ***U.S. Gypsum Co. v. Schiavo Bros., Inc.***, 668 F.2d 172, 176 (3d Cir. 1981) (where successor judge is asked to reconsider legal conclusions of unavailable predecessor, he or she may reconsider those issues to the same extent that the predecessor could have); see also ***Abshire v. Seacoast Prods., Inc.***, 668 F.2d 832, 837-38 (5th Cir. 1982) (while successor judge should generally not overrule the earlier order or judgment of a predecessor, the successor judge has discretion to do so in the interest of furthering the administration of justice).

On the other hand, litigants also have the right to expect that, when judges are "changed in midstream," the change "will not mean going back to square one." ***Williams v. Comm'r of Internal Revenue***, 1 F.3d 502, 503 (7th Cir. 1993). "The second judge may alter previous rulings if new information convinces him that they are incorrect, but he is not free to do so . . . merely because he has a different view of the law or facts from the first judge." ***Id.***

Against these background principles, the court must consider plaintiff's motion in light of the specific boundaries set out by the Rules of the Court of Federal Claims, which state, in relevant part, "[R]econsideration may be granted . . . for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." **RCFC** 59(a). Reconsideration is not a matter of right, but is granted at the discretion of the trial court. ***Yuba Natural Res., Inc. v. United States***, 904 F.2d 1577, 1583 (Fed. Cir. 1990). Motions for reconsideration under **RCFC** 59 must be considered with exceptional care so as not to give the losing party an unnecessary chance to re-litigate issues already decided. See ***Fru-Con Constr. Corp. v. United States***, 44 Fed. Cl. 298, 300 (1999) (citations omitted), *aff'd*, 250 F.3d 762 (Fed. Cir. 2000) (table). The moving party must show that extraordinary circumstances justify relief, such as an intervening change in the controlling law, that previously unavailable evidence is now available, or that the motion is necessary to prevent manifest injustice. See ***id.*** at 300-01 (citations omitted); see also ***Stelco Holding Co. v. United States***, 45 Fed. Cl. 541 (2000). Thus, a court is precluded from granting a motion for reconsideration when the movant merely reasserts previous arguments that the court has already carefully considered. See ***Stelco Holding Co.***, 45 Fed. Cl. at 542; see also ***Caisse Nationale de Credit Agricole v. CBI Indus., Inc.***, 90 F.3d 1264, 1270 (7th Cir. 1996) (motion for reconsideration "is not an appropriate forum for rehashing previously rejected arguments"); see also ***Backlund v. Barnhart***, 778 F.2d 1386, 1388 (9th Cir. 1985) (court properly denied motion for reconsideration that presented no new arguments).

The facts were not at issue in the court's 01/31 Opinion, but the interpretations of existing case law were, and no new case precedent has developed in the intervening period. In addition, the court did consider the same cases in its 01/31 Opinion that plaintiff argued in its response to the OSC -- and that plaintiff now reiterates in its motion for reconsideration -- but the court drew different conclusions from those advanced by plaintiff.

*2. Court's 01/31 Opinion*

In its 01/31 Opinion, the court concluded that plaintiffs' claims for damages caused by DOE's alleged failure to comply with the SNF disposal deadline in the Standard Contract, as specified in NWPA § 302(a)(5)(B), could only be brought in federal courts of appeals, in accordance with NWPA § 119, 42 U.S.C. § 10139, since the courts of appeals had original and exclusive jurisdiction to entertain challenges to the DOE Secretary's action or failure to take an action required under the NWPA. ***Fla. Power***, 64 Fed. Cl. at 38. The court ascribed any jurisdictional confusion resulting from other SNF cases to drafting errors resulting from the chaos of the legislative process. See ***id.*** at 57-58, 59. Additionally, the court concluded that the Standard Contract, its name notwithstanding, was really a regulation, not a contract,

which also made the courts of appeals the correct fora to adjudicate disputes. See ***id.*** at 39-40 (citing ***City of Burbank, Calif. v. United States***, 273 F.3d 1370 (Fed. Cir. 2001) ("***City of Burbank II***")). This latter holding, however, was a comparatively minor point in the opinion.

The court relied in large measure on the legislative history to parse the meaning of the two key provisions of the NWPA, §§ 119 and 302.

Section 119(a) states, in pertinent part:

> (1) .... [T]he United States courts of appeals shall have original and exclusive jurisdiction over any civil action --
>
> * * *
>
> > (A) for review of any final decision or action of the Secretary, the President, or the Commission under this subtitle;
> >
> > (B) alleging the failure of the Secretary, the President, or the Commission to make any decision, or take any action, required under this subtitle;
>
> * * *
>
> (2) The venue of any proceeding under this section shall be in the judicial circuit in which the petitioner involved resides or has its principal office or in the United States Court of Appeals for the District of Columbia.

Section 302(a)(5) states:

> Contracts entered into under this section shall provide that -
>
> (A) following commencement of operation of a repository, the Secretary shall take title to the high-level radioactive waste or spent nuclear fuel involved as expeditiously as practicable upon the request of the generator or owner of such waste or spent fuel; and

> (B) in return for the payment of fees established by this section, the Secretary, beginning not later than January 31, 1998, will dispose of the high-level radioactive waste or spent nuclear fuel involved as provided in this subtitle.

Section 119 appears in Title I, Subtitle A of the NWPA. Section 302 appears in Title III, a portion of the NWPA that lacks any subtitles. The court concluded that § 119 governed all NWPA disputes, meaning that the Court of Federal Claims would have no jurisdiction on any NWPA cases, despite that fact that the plain language of § 119 refers only to suits arising under *that subtitle*. The court's premise was that, during the drafting of the NWPA, in an effort to reconcile three different bills, legislators moved the language that eventually became § 302 from its original location in Title I, Subtitle A. See ***Fla. Power***, 64 Fed. Cl. at 59. The court also believed that Congress intended to designate the courts of appeals as the fora for judicial review since Congress sought to establish "expedited judicial review of court challenges to the program as it is implemented," and a bifurcated trial system would lead to the very delays that Congress wished to preclude. ***Id.*** The court similarly concluded that Congress had not intended to subject the United States to payment of money damages for breach of contract under the NWPA since § 111 emphasizes that SNF disposal costs are the responsibility of the utilities. ***Id.*** at 60.

Therefore, the court held that the legislative history strongly suggested that the NWPA's failure to specify that review of DOE actions (or failures to act) under § 302 was only available pursuant to § 119, i.e., in the courts of appeals, was caused by an unintentional drafting error or oversight that resulted in "the words used by the Congress . . . not captur[ing] the Congressional intent" and the literal reading of which would produce "a result so unlikely that Congress could not have intended it." ***Fla. Power***, 64 Fed. Cl. at 60 (quoting ***VE Holding Corp. v. Johnson Gas Appliance Co.***, 917 F.2d 1574, 1579-80 (Fed. Cir. 1990)). The court deduced that the absurdity of such a result explained why the courts of appeals, with limited exceptions, consistently have asserted original and exclusive jurisdiction over disputes regarding NWPA § 302. ***Id.*** at 60, 63.

Regarding claims by the parties that the doctrines of collateral estoppel, *res judicata*, or *stare decisis* compelled it to follow contradictory holdings, the court held that the cases cited by plaintiff did not address the specific issue of jurisdiction and, even if they had, they would not have preclusive effect since no court outside this circuit may decide the boundaries of the jurisdiction of this court. See ***Fla. Power***, 64 Fed. Cl. at 43.

*3. Motion for Reconsideration*

In opposition to the court's 01/31 Opinion, both parties are substantially in agreement in asserting that the Court of Federal Claims, and not the D.C. Circuit, is the proper forum to review the contractual claims arising under the DOE's Standard Contract. They otherwise agree on little else.

Plaintiff relies on three cases to argue that Federal Circuit precedent requires a different outcome on reconsideration: ***Maine Yankee Atomic Power Co. v. United States***, 225 F.3d 1336 (Fed. Cir. 2000); ***Northern States Power Co. v. United States***, 224 F.3d 1361 (Fed. Cir. 2000) ("***Northern States III***"); and ***Roedler v. Dep't of Energy***, 255 F.3d 1347 (Fed. Cir. 2001).

Plaintiff asserts that both ***Maine Yankee*** and ***Northern States III*** held explicitly that the utilities could pursue their breach of contract claims in the Court of Federal Claims and that the DOE had breached its unconditional contractual obligation under the Standard Contract to begin disposing of SNF by January 31, 1998. Because of those holdings, plaintiff argues that the court is precluded from concluding that the DOE's breach of the Standard Contract presents a statutory claim subject to judicial review in the federal appellate courts pursuant to NWPA § 119, rather than contract claims subject to Tucker Act jurisdiction.

In addition, plaintiff contends that the Federal Circuit in ***Roedler*** definitively settled the jurisdictional issue that the Federal Circuit had reached only implicitly in ***Maine Yankee*** and ***Northern States III***, i.e., that the Court of Federal Claims has Tucker Act jurisdiction over a claim that the Government is liable in damages for the DOE's breach of its contractual obligation to begin disposing of SNF by January 31, 1998. Plaintiff insists that, since ***Roedler*** is on-point regarding the jurisdictional argument, the court committed clear error by ignoring this holding in its 01/31 Opinion.

Plaintiff also argues that the decisions of the D.C. Circuit in ***Northern States Power Co. v. Dep't of Energy***, 128 F.3d 754 (D.C. Cir. 1997) ("***Northern States I***"), and ***Northern States Power Co. v. Dep't of Energy***, 1998 WL 276581 (D.C. Cir. 1997) (*per curiam*) ("***Northern States II***") are binding on this court as *res judicata*. Additionally, plaintiff considers ***City of Burbank II*** to be irrelevant and views ***Roedler***, 255 F.3d 1347 (Fed Cir. 2001) as on-point and controlling.

In its Motion for Reconsideration, plaintiff cites in large measure almost exactly the same cases and makes almost exactly the same arguments that it did in its reply to the OSC. While plaintiff did not discuss ***City of Burbank II*** in its reply to the OSC since the court had not raised that case in the OSC, plaintiff did discuss the salient issue of whether the Standard Contract was a contract or regulation. The

only hardship that plaintiff cites to justify reconsideration is the "significant time and resources" the parties have expended on litigation to date.

For its part, defendant disagrees with all of plaintiff's reasoning, but not with plaintiff's conclusion that this court has jurisdiction. Defendant's main point is that it finds no basis on which to alter the past litigation positions of the Government, as argued by the Office of the Solicitor General, in previous NWPA litigation regarding the proper forum for review of contractual claims arising under the Standard Contract. Like plaintiff, defendant raises no arguments in its Response to Plaintiff's Motion for Reconsideration that it had not already discussed in its response to the court's OSC.

*4. Preliminary Issues*

Part of plaintiff's argument for reconsideration depends on the acceptance of the premise that the court is bound by litigation in other fora under the doctrines of *res judicata* and *stare decisis*. Therefore, an examination of those principles is in order before discussing the allegedly binding cases themselves.

**a. Collateral Estoppel and *Res Judicata***

*Res judicata* is a term that refers broadly to two distinct ideas: issue preclusion, also known as collateral estoppel, and claim preclusion. ***Hallco Mfg. Co., Inc. v. Foster***, 256 F.3d 1290, 1294 (Fed. Cir. 2001). The notion behind claim preclusion is that when a court renders final judgment on the merits, the same parties cannot litigate another action on the same "claim," and "defenses that were raised or could have been raised in that action are extinguished." ***Id.*** To prevail on claim preclusion, the party arguing for its existence must prove that (1) "the parties are identical or in privity;" (2) "the first suit proceeded to a final judgment on the merits;" and (3) "the second claim is based on the same set of transactional facts as the first." ***Ammex, Inc. v. United States***, 334 F.3d 1052, 1055 (Fed. Cir. 2003) (quoting ***Parklane Hosiery Co. v. Shore***, 439 U.S. 322, 326 n.5 (1979)). Two cases have the "same set of transactional facts" if the core of operative facts results in the same causes of action. See ***id.*** at 1056.

Issue preclusion, on the other hand, has four distinct elements: "(1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action." ***Masco Corp. v. United States***, 303 F.3d 1316, 1329 (Fed. Cir. 2002) (quoting ***In re Freeman***, 30 F.3d 1459, 1465 (Fed. Cir. 1994)).

The case currently before the court deals with an alleged breach of contract and uncompensated taking. As will be readily apparent, *infra*, none of the cases cited by plaintiff dealt with those particular issues or causes of action, so neither claim preclusion nor issue preclusion apply to this court's determination of jurisdiction.

**b. *Stare Decisis***

*Stare decisis* is simply "a doctrine that binds courts to follow their own earlier decisions or the decisions of a superior tribunal." ***Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs***, 260 F.3d 1365, 1373 (Fed. Cir. 2001). When a court, however, does not address the question of jurisdiction, the court's decision is not binding on the jurisdictional issue. ***Fla. Power & Light Co. v. United States***, 307 F.3d 1364, 1371 (Fed. Cir. 2002). Here, contrary to plaintiff's assertions, discussed *supra*, neither the Federal Circuit nor the United States Supreme Court ("Supreme Court") has addressed squarely the issues of jurisdiction that the court raised in its 01/31 Opinion. Thus, the court is not bound to a particular prior decision.

*5. SNF Jurisprudence*

The 01/31 Opinion provides a detailed examination of SNF case law that is not necessary to repeat here. Therefore, this analysis will only briefly review the relevant cases.

Several cases tend to support the court's reasoning in its 01/31 Opinion: ***General Electric Uranium Mgmt. Corp. v. United States***, 764 F.2d 896, 897 (D.C. Cir. 1985); ***Wisconsin Electric Power Co. v. Dep't of Energy***, 778 F.2d 1, 2 (D.C. Cir. 1985) ("***Wisconsin I***"); ***Commonwealth Edison, Co. v. U.S. Dep't of Energy***, 877 F.2d 1042, 1045 (D.C. Cir. 1989); and ***Alabama Power Co. v. U.S. Dep't of Energy***, 307 F.3d 1300, 1302 (11th Cir. 2002).

In ***General Electric***, a utility filed suit against the United States for judicial review of SNF disposal fee schedules the DOE had established under NWPA § 302(a)(3), 42 U.S.C. § 10222(a)(3).[2] ***Gen. Elec.***, 764 F.2d at 897. The D.C. Circuit first held that district courts lacked jurisdiction to hear SNF disposal fee cases. ***Id.*** at 898, 904. Then, the D.C. Circuit held that DOE's rule establishing the disputed fee was "well within the class of agency actions reviewable under [NWPA §] 119(a)(1)(A), and that the reference to 'under this part' [did] not remove th[e] case from the exclusive jurisdiction of the court of appeals." ***Id.*** at 901. The D.C. Circuit

[2] "For spent nuclear fuel . . . used to generate electricity in a civilian nuclear power reactor . . . the Secretary shall . . . establish a 1 time fee per kilogram of heavy metal in spent nuclear fuel, or in solidified high-level radioactive waste." NWPA § 302(a)(3).

based this conclusion on the discernible intent of Congress to give the courts of appeals original and exclusive jurisdiction in SNF cases. ***Id.***

Shortly after the ***General Electric*** decision, several utilities challenged a DOE SNF disposal fee scheme, imposed pursuant to NWPA § 302(a)(2).[3] ***Wisc. I***, 778 F.2d at 2. The D.C. Circuit once again, based on ***General Electric***, held that exclusive jurisdiction of matters arising under the subsections of NWPA § 302(a) resided with the appellate courts. See ***id.*** at 3-4, 8.

Four years later, the D.C. Circuit considered a NWPA case that involved a utility challenge of the DOE's procedure under NWPA § 302(a)(4), 42 U.S.C. § 10222(a)(4), for collecting interest on the one-time waste disposal fee and held that (1) the Standard Contract was a regulation, not a contract, and (2) the courts of appeals had jurisdiction over parties seeking review of final agency decisions or action. ***Commonwealth Edison***, 877 F.2d at 1044-45. In holding that the Standard Contract was a regulation, the D.C. Circuit was particularly swayed by the fact that nuclear waste disposal is very highly regulated, depriving utilities of any choice but to agree to the Government's terms. ***Id.*** at 1045. Since the court held that the DOE's regulation was reasonable, it denied the petition for review. ***Id.*** at 1047.

In a case in the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit"), a utility employed NWPA § 119 to challenge a DOE SNF fee settlement agreement with a rival, alleging that the proposal was indistinguishable from an illegal, direct payment of Nuclear Waste Fund monies. ***Ala. Power***, 307 F.3d at 1302. The rival utility intervened and argued that the existence of possible remedies under the Tucker Act precluded an administrative challenge to the DOE action. ***Id.*** at 1311. The court disagreed, holding that a subsequent Tucker Act suit would be "extremely difficult to maintain" because of an "insurmountable burden of proof" and would not provide an adequate remedy. See ***id.*** at 1309, 1311. Therefore, the court reasoned that it had jurisdiction and voided the fee scheme. ***Id.*** at 1316.

The common thread in these cases is that courts of appeals, after establishing that they had jurisdiction, considered SNF fees assessed under Title III of the NWPA, something the courts would have been unable to do if the language of NWPA § 119 permitted review of agency actions only under Title I, Subtitle A of the NWPA.

The following two cases do not indicate a jurisdictional preference, although plaintiff relies on them for support.

---

[3] "[T]he fee under [NWPA § 302(a)(1)] shall be equal to 1.0 mil per kilowatt-hour." NWPA § 302(a)(2).

In 1996, in ***Indiana Michigan***, utilities and state power commissions that paid fees under the NWPA sued the DOE in the D.C. Circuit to seek review of the DOE's Final Interpretation that the DOE had no obligation to begin disposing of nuclear waste by January 31, 1998. ***Indiana Michigan Power Co. v. Dep't of Energy***, 88 F.3d 1272, 1273 (D.C. Cir. 1996). The D.C. Circuit vacated the interpretation, holding that NWPA § 302(a)(5)(B) created an obligation in the DOE to dispose of the nuclear waste by the deadline, but refused to consider possible remedies at that time since the DOE had not yet breached its obligation. ***Id.*** at 1277.

In 2001, in ***Roedler***, the Federal Circuit heard a case by utility customers who claimed to be third-party beneficiaries of the Standard Contract and who sought recovery under the "Little Tucker Act," 28 U.S.C. § 1346(a)(2), of the increased power tariffs that were passed on to them by the utility to cover the SNF disposal fees. ***Roedler***, 255 F.3d at 1349-50. The district court dismissed the complaint for failure to state a claim, and the Federal Circuit, after concluding that it had jurisdiction simply because plaintiffs satisfied the $10,000 Little Tucker Act damages cap, affirmed, holding that plaintiffs had failed to show they had standing. ***Id.*** at 1351, 1353, 1356.

The following group of cases could arguably be read to support, at least implicitly, plaintiff's arguments: ***Northern States I***, ***Northern States II***, ***Wisconsin Electric Power Co. v. U.S. Dep't of Energy***, 211 F.3d 646, 647 (D.C. Cir. 2000) (*per curiam*) ("***Wisconsin II***"), ***Northern States III***, and ***Maine Yankee***.

In 1997, in ***Northern States I***, utilities petitioned the D.C. Circuit for a writ of *mandamus* to require the DOE to comply with the holding of ***Indiana Michigan*** that the DOE had an unconditional obligation to begin disposing of nuclear waste by January 31, 1998. ***N. States I***, 128 F.3d at 755-56. The D.C. Circuit rejected a broad writ of *mandamus*, believing that the Standard Contract provided a potentially adequate remedy, ***id.*** at 758-59, but did direct plaintiffs to pursue Standard Contract remedies first, ***id.*** at 759. The D.C. Circuit, however, issued a writ of *mandamus* that the DOE proceed in a manner consistent with the court's holding in ***Indiana Michigan*** that it had an unconditional obligation to begin SNF disposal by the 1998 deadline. ***Id.*** at 760.

In an unpublished follow-up case, ***Northern States II***, a utility requested that the D.C. Circuit order the DOE to begin disposing of SNF. ***N. States II***, 1998 WL 276581, at *2. The D.C. Circuit denied the petition, holding that enforcement of the ***Northern States I*** mandate did not extend to requiring the DOE to perform under the Standard Contract. ***Id.*** The court also held that, despite the DOE's contractual obligation, the Tucker Act did not prevent the court from exercising jurisdiction over an action to enforce compliance with the NWPA. ***Id.***

In 2000, in ***Wisconsin II***, a utility filed petitions for review and for writ of *mandamus* seeking a declaration that the DOE had to provide both monetary and non-monetary relief for missing the SNF disposal deadline and had to comply with the ***Northern States I*** and ***II*** mandates. ***Wisc. II***, 211 F.3d at 647. The D.C. Circuit held that it lacked jurisdiction since the Court of Federal Claims was the proper forum for adjudicating contract disputes. ***Id.*** at 648.

Again in 2000, in companion cases ***Northern States III*** and ***Maine Yankee***, the Federal Circuit considered whether a utility could sue the United States for contract damages without first seeking an administrative remedy. ***N. States III***, 224 F.3d at 1363; ***Me. Yankee***, 225 F.3d at 1339. The Federal Circuit held that plaintiffs were not required to first seek administrative remedies. ***N. States III***, 224 F.3d at 1367; ***Me. Yankee***, 225 F.3d at 1342-43.

In issuing its 01/31 Opinion, the court considered all these cases.[4] In addition, the court also discussed ***City of Burbank***, that had not appeared in the OSC. The court used this case in passing to support the proposition that it lacked jurisdiction over the claims here because the Standard Contract terms were really regulations, not contracts. ***Fla. Power***, 64 Fed. Cl. at 39-40.

The City of Burbank and various utilities brought a breach of contract suit in this court against the Bonneville Power Administration ("BPA"), a U.S. Government agency, on a power tariff calculations dispute. ***City of Burbank, Calif. v. United States***, 47 Fed. Cl. 261, 264-65 (2000) ("***City of Burbank I***"). The court held that it lacked subject matter jurisdiction since the language of the Pacific Northwest Electric Power Planning and Conservation Act ("Regional Act"), 16 U.S.C. §§ 832-839h, gave exclusive jurisdiction to the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") in challenges to final actions of the BPA "taken pursuant to statutory authority." ***Id.*** at 266-67, 268. On appeal, the Federal Circuit disagreed, holding that the disputed tariffs at issue were contract terms that were freely negotiated in arms-length transactions, the facts of which negotiations were outside the administrative record and, thus, any contract claims against the Government had to be brought in the Court of Federal Claims. See ***City of Burbank II***, 273 F.3d at 1378, 1380.

The court in its 01/31 Opinion concluded that, besides lacking jurisdiction because of the language of the NWPA, it also lacked jurisdiction over the Standard Contract under ***City of Burbank II*** since the contract terms were mandated by statute and promulgated via notice-and-comment rule-making with a complete administrative record, resulting in a regulation that only an appeals court could

---

[4] Although the court did not analyze ***Roedler*** in its 01/31 Opinion, plaintiff had discussed it in its Response to the OSC.

review. ***Fla. Power***, 64 Fed. Cl. at 40. Although the court did not cite ***City of Burbank II*** in its OSC, it had arrived in the OSC at the preliminary conclusion that the Standard Contract was a regulation, not a contract, ***Fla. Power***, 64 Fed. Cl. at 49, and plaintiff spent nearly half of its brief in reply to the OSC arguing the opposite point of view.

Several judges of the Court of Federal Claims have considered recently the specific jurisdictional issues raised in the 01/31 Opinion and have concluded that the 01/31 Opinion was incorrectly decided.[5]

In ***Boston Edison***, decided shortly after the 01/31 Opinion was issued, the Court of Federal Claims considered the application of ***City of Burbank II*** to the issue of this court's jurisdiction. ***Boston Edison Co. v. United States***, 64 Fed. Cl. 167, 175 (2005). The court reasoned that the Regional Act at the heart of ***City of Burbank II*** was one of an extremely limited number of statutes divesting this court of Tucker Act jurisdiction over contract claims and that the statutory provisions granting exclusive jurisdiction to the Ninth Circuit applied only to actions arising under the Regional Act and, thus, not under the NWPA. ***Id.***

On the broader jurisdictional questions raised in the 01/31 Opinion, the ***Boston Edison*** court first postulated that the references in the NWPA to its specific portions were "crucially significant for jurisdictional purposes." ***Boston Edison***, 64 Fed. Cl. at 177. The court concluded that nothing in NWPA § 119 precluded bringing a Tucker Act case in the appropriate forum. ***Id.*** The ***Boston Edison*** court considered the 01/31 Opinion's analysis of the NWPA's legislative history to be "based upon pure supposition, using legislative silence and then speculation to superimpose an idiosyncratic view of congressional intent on explicit jurisdictional terms." ***Id.*** at 178. Therefore, the court held that the NWPA did not displace this court's subject matter jurisdiction under the Tucker Act over claims arising under the Standard Contract. ***Id.*** at 179.

In ***Duke Power***, decided nearly two months after the ***Boston Edison*** decision, another judge of the Court of Federal Claims granted plaintiff's motion for reconsideration of the 01/31 Opinion. ***Duke Power v. United States***, No. 98-485C, slip op. at 2, 5 (Fed. Cl. Mar. 3, 2005). In particular, the ***Duke Power*** court referred to NWPA § 136, which gave the DOE Secretary authority to enter into contracts for the interim storage of nuclear waste, and which appears in Subtitle B of Title I of the NWPA, and reasoned that it would be inconsistent to find Congress intended to have judicial review of permanent nuclear waste storage fee contracts but not of those for

---

[5] "The orders and opinions of a judge of coordinate jurisdiction constitute persuasive but not binding authority." ***RSH Constructors, Inc. v. United States***, 20 Cl. Ct. 1, 6 n.10 (1990).

interim storage. ***Id.*** at 4. The court held that the better reading of the NWPA was that issues relating to DOE's performance of any type of SNF storage contract are not within the jurisdictional provisions of § 119. ***Id.***

In the third Court of Federal Claims case, ***Nebraska Power***, the court granted plaintiff's motion for reconsideration of the 01/31 Opinion based on the reasoning in ***Boston Edison*** and ***Duke Power***. ***Neb. Pub. Power Co. v. United States***, No. 01-116C, slip op. at 2 (Fed. Cl. Mar. 30, 2005).

Conclusion

In light of the way that some trial courts have interpreted the NWPA, there is no question that the court's 01/31 Opinion was unorthodox. Nevertheless, as a survey of the SNF jurisprudence reveals, appellate courts have consistently asserted original and exclusive jurisdiction, pursuant to NWPA § 119, over agency decisions taken under NWPA § 302(a), a portion of the law that is most assuredly not in the same subtitle of the statute as § 119. Therefore, the state of the case law is not settled, and neither the D.C. Circuit nor the Federal Circuit has addressed squarely the issue of jurisdiction.

The standard for granting a motion for reconsideration under **RCFC** 59(a) is high, and plaintiff has not met it. Plaintiff has failed to demonstrate the existence of extraordinary circumstances that justify overturning a previous opinion of this court. Plaintiff has not shown that the law has changed since the filing of the 01/31 Opinion, nor has plaintiff suddenly discovered any new facts. Plaintiff merely desires to rehash previously rejected arguments and re-litigate issues already carefully considered and decided by the court, something which the exacting standard required by a motion for reconsideration under **RCFC** 59(a) is designed specifically to prevent. See ***Fru-Con Constr. Corp.***, 44 Fed. Cl. at 300 (citations omitted); see also ***Stelco Holding Co.***, 45 Fed. Cl. at 542; see also ***Caisse Nationale***, 90 F.3d at 1270; see also ***Backlund***, 778 F.2d at 1388.

For the above-stated reasons, plaintiff's Motion For Reconsideration of the court's dismissal of plaintiff's breach of contract claim is hereby DENIED.

The parties are directed to file a Joint Status Report concerning further proceedings in this case by Friday, May 20, 2005.

IT IS SO ORDERED.

s/Bohdan A. Futey
**BOHDAN A. FUTEY**
**Judge**