(Judge Futey)
No. 01-551C

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

PSEG NUCLEAR L.L.C. and PUBLIC SERVICE ELECTRIC AND GAS COMPANY,

Plaintiff,

v.

UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION TO CONSOLIDATE OR, IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

ANDREW P. AVERBACH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 353-0527
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

STEPHEN FINN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

January 5, 2007

TABLE OF CONTENTS

BACKGROUND . . . . . . . . . . 2

DISCUSSION . . . . . . . . . . 5

I. CONSOLIDATION IS APPROPRIATE UNDER THE CIRCUMSTANCES BECAUSE THESE CASES INVOLVE MULTIPLE COMMON FACTUAL AND LEGAL ISSUES, AND, IN THE ABSENCE OF CONSOLIDATION, THERE IS A SUBSTANTIAL RISK OF INCONSISTENT JUDGMENTS BETWEEN THE CASES . . . . . . . . . . 5

A. Standards For Consolidation . . . . . . . . . . 5

B. Delmarva And PSEG Nuclear's Cases Satisfy The Criteria For Consolidation . . . . . . . . . . 6

1. Delmarva And PSEG Nuclear's Cases Share Common Issues Of Fact And Law . . . . . . . . . . 6

2. Neither Delmarva Nor PSEG Nuclear Would Be Prejudiced By Consolidation . . . . . . . . . . 13

3. The Government Will Be Heavily Prejudiced If The Two Cases Are Not Consolidated . . . . . . . . . . 14

II. IF THE COURT DECLINES TO CONSOLIDATE THESE CASES, THE COURT SHOULD ISSUE A SUMMONS TO JOIN PSEG NUCLEAR AS A THIRD-PARTY DEFENDANT IN DELMARVA'S CASE AND, FURTHER, SHOULD ISSUE RCFC 14(b) NOTICES TO PSEG NUCLEAR AND DELMARVA_. . . . . . . . . . 15

III. PROPOSED SCHEDULE OF FURTHER PROCEEDINGS CONCERNING LIABILITY IN THIS CASE . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . 20

## TABLE OF AUTHORITIES

### CASES


Allfirst Bank v. Progress Rail Serv. Corp.,
178 F. Supp. 2d 513 (D. Md. 2001) .......... 6

Atlantic City Electric Co. v. United States,
No. 04-0036 (Fed. Cl.) .......... 1

Bank of Montreal v. Eagle Assocs.,
117 F.R.D. 530 (S.D.N.Y. 1987) .......... 5

Boston Edison Co. v. United States,
67 Fed. Cl. 63 (2005) .......... 6, 8

Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica,
669 F. Supp. 577 (S.D.N.Y. 1987) .......... 5

Cosmo constr. Co. v. United States,
196 Ct. Cl. 463 (1971) .......... 17

Delmarva Power & Light Co. v. United States,
No. 04-0034C (Fed. Cl.) .......... passim

Del-Rio Drilling Programs, Inc. v. United States, 17 Cl. Ct. 844, 849 (1989) .......... 16

Entergy Nuclear Indian Point 2, LLC v. United States,
62 Fed. Cl. 798 (2004) .......... 6

Exelon Generation Company, LLC v. United States,
No. 04-103C (Fed. Cl.) .......... 4

Farrell v. American Flyers Airline Corp.,
42 F.R.D. 341 (S.D.N.Y. 1967) .......... 8

Harris v. L&L Wings, Inc.,
132 F.3d 978 (4th Cir. 1997) .......... 6

Karuk Tribe of California v. United States,
27 Fed. Cl. 429 (1993) .......... 5, 6, 9

Mylan Pharmaceuticals Inc. v. Henney,
94 F. Supp. 2d 36 (D.D.C. 2000), rev'd on other grounds sub nom. Pharmachemie B.V. v. Barr Laboratories, Inc., 276 F.3d 627 (D.C. Cir. 2002) .......... 8

Nebraska Public Power District v. United States,
No. 01-116C (Fed. Cl.) .......... 13, 18-19

Northern States Power Co. v. Dept. Of Energy,
128 F.3d 754 (D.C. Cir. 1997) .......... 13, 18

Pacific Gas & Electric Co. V. United States,
73 Fed. Cl. 333 (2006) .......... 10

Philadelphia Suburban Corp. v. United States,
211 Ct. Cl. 354, 355 (1976) .......... 16

PSEG Nuclear L.L.C. v. United States, 465 F. 3d 1343 (Fed. Cir. 2006) .......... 17

PSEG Nuclear L.L.C. and Public Service Electric and Gas Company v. United States,
No. 01-551C (Fed. Cl.) .......... passim

Puritan Assocs. v. United States,
215 Ct. Cl. 976 (1997) .......... 17

Sacramento Municipal Util. Dist. v. United StatesEntergy,
70 Fed. Cl. 332 (2006) .......... 6

St. Bernard Gen. Hosp., Inc. v. iHospital Serv. Assoc.,
712 F.2d 978 (5th Cir. 1983) .......... 6

Uram v. United States, 216 Ct. Cl 418, 420 (1978) .......... 16

**STATUTES**

31 U.S.C. §3727 .......... 9

41 U.S.C. § 15 .......... 9

41 U.S.C. § 114(b) .......... 2, 15-16

42 U.S.C. §§ 10101-10270 .......... 9

42 U.S.C. § 10222(b)(3) .......... 9

# INDEX TO THE APPENDIX


Document Page

Department of Energy Contract DE-CR01-83NE44480, between Public Service Electric and Gas Company and the Department of Energy (June 13, 1983) ..................... 1

Department of Energy Contract DE-CR01-83NE44411, between Public Service Electric and Gas Company and the Department of Energy (June 13, 1983) ................... 12

Purchase Agreement, between Delmarva Power & Light Company and PSEG Power LLC (September 27, 1999) ........................................................................... 22

Delmarva Power and Light Co., v. United States, 04-34C, Transcript excerpts (April 7, 2005) ............................................................................................................ 56

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PSEG NUCLEAR L.L.C. and PUBLIC SERVICE ELECTRIC AND GAS COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 01-551C (Judge Futey) |
| THE UNITED STATES, | ) | |
| Defendant, | ) | |

DEFENDANT'S MOTION TO CONSOLIDATE OR,
IN THE ALTERNATIVE, FOR ISSUANCE OF A SUMMONS
PURSUANT TO RCFC 14(a) AND NOTICE PURSUANT TO RCFC 14(b)

Pursuant to Rules 42 and 42.1 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court consolidate two previously consolidated cases-Delmarva Power & Light Co. v. United States, No. 04-0034C (Fed. Cl.), which was consolidated with Atlantic City Electric Co. v. United States, No. 04-0036 (Fed. Cl.)[1] by order entered on January 21, 2005-with PSEG Nuclear L.L.C. and Public Service Electric and Gas Company v. United States, No. 01-551C (Fed. Cl.), either in total or for the limited purposes of ensuring that any diminished value damages and any actual costs for storage of the spent nuclear fuel awarded Delmarva are accounted for, and will not be re-litigated in PSEG. These cases are currently pending before the Court and involve the same contracts with the Department of Energy ("DOE"). Consolidation will promote the efficient administration of justice and prevent the potential for inconsistent rulings and potentially duplicative liabilities in

---

1/ The consolidated Delmarva and Atlantic City cases will be referred to as "Delmarva." In addition, plaintiffs Delmarva and Atlantic City will be referred to collectively as "Delmarva."

these cases.[2] If the Court declines to consolidate the Delmarva and PSEG Nuclear cases, we respectfully request that the Court: (1) issue a summons pursuant to RCFC 14(a) to join PSEG Nuclear as a third-party defendant upon a contingent claim in Delmarva; and (2) issue binding notice pursuant to RCFC 14(b) and the Contract Settlement Act, 41 U.S.C. § 114(b), to PSEG Nuclear in Delmarva.

BACKGROUND

Delmarva Power & Light Company ("Delmarva") was a minority interest owner of the Salem Nuclear Generation Station Units 1 and 2 ("Salem") from the 1970s through December 29, 2000. Delmarva First Amend. Compl. ¶ 2. Atlantic City Electric Company ("Atlantic City") was also a minority interest owner of Salem as well as the Hope Creek Nuclear Generating Station ("Hope Creek") from the 1970's through October 18, 2001. Atlantic First Amend. Compl. ¶ 2. PSEG Nuclear, and its predecessor in interest Public Service Electric and Gas Company ("PSEG"), has been the owner and operator of Salem and Hope Creek from the 1970's through the present. PSEG Nuclear First Amend. Compl. ¶ 2.

On or about June 13, 1983, PSEG Power LLC executed a Standard Contract with DOE for Salem in which PSEG indicated it acted "on its own behalf as managing utility for Salem . . . and on behalf of the joint owners, Philadelphia Electric Company, Atlantic City Electric Company, and Delmarva Power and Light Company." A. 1, 9-10;[3] see Delmarva First Amend.

---

2/ The Government is filing this motion in both the Delmarva and PSEG Nuclear cases. However, pursuant to the Court's December 14, 2006 Order in PSEG Nuclear, the version of this motion filed in PSEG Nuclear includes a proposed schedule for further proceedings regarding the determination of liability.

3/ "A. ___" is a reference to the attached appendix.

Compl. ¶ 39; Atlantic First Amend. Compl. ¶ 39; PSEG Nuclear First Amend. Compl. ¶ 9.[4] Similarly, on or about June 13, 1983, PSEG executed a second Standard Contract with DOE for Hope Creek in which it indicated it acted "on its own behalf as managing utility for Hope Creek . . . and on behalf of the joint owner Atlantic City Electric Company. A. 12, 20; see Atlantic First Amend. Compl. ¶ 39; PSEG Nuclear First Amend. Compl. ¶ 9.

The Standard Contract required DOE to begin services under the Standard Contract "not later than January 31, 1998." 10 C.F.R. Part 961, Art. II. Although the Standard Contract provided that the Government would begin its program of accepting spent nuclear fuel ("SNF") from the commercial industry by January 31, 1998, 10 C.F.R. § 961.11, Art. II, the Standard Contract did not specify any mandatory minimum "rate" at which DOE would be required to accept the industry's SNF. Rather, the Standard Contract contained a contractual mechanism by which DOE would develop a queue for SNF acceptance that would determine the particular time DOE would accept SNF from each Standard Contract holder.[5]

Delmarva sold its interests in Salem on December 29, 2000, to PSEG. Delmarva First Amend. Compl. ¶ 2. Atlantic City sold its interests in Salem and Hope Creek on October 18, 2001 to PSEG. Atlantic City First Amend. Compl. ¶ 2. In their purchase agreements with PSEG, Delmarva transferred all of their claims related to the Standard Contract to PSEG. A. 45-48, 53-55; see Delmarva First Amend. Compl. ¶ 60; Atlantic City First Amend. Compl. ¶ 60.

---

4/ PSEG Nuclear's First Amended Complaint states that "PSE&G executed Standard Contracts with DOE on June 16, 1983." PSEG Nuclear First Amended Compl. ¶ 9. However, both of PSEG Nuclear's Standard Contracts are dated and signed June 13, 1983. A. 1, 9, 12, 20.

5/ All commercial nuclear power reactor owners entered into a Standard Contract with DOE, and the basic terms of each Standard Contract are virtually identical. 10 C.F.R. § 961.11 (1983).

On December 23, 2003, PSEG Nuclear filed a three-count complaint in the Court of Federal Claims. PSEG Nuclear claimed that DOE breached the Standard Contract and sought to recover as damages the "substantial additional costs to provide for extended on-site storage of [] SNF" at Salem and Hope Creek. PSEG Nuclear First Amend. Compl. ¶ 21-25. Based upon DOE's alleged breach of the Standard Contract, PSEG Nuclear also claimed a breach of the implied covenant of good faith and fair dealing and a taking without just compensation. Id. at ¶¶ 26-34.

On December 2, 2004, Delmarva's First Amended Complaint was filed by leave of the Court, replacing its original complaint filed on January 13, 2004. In its three-count complaint, Delmarva asserted that DOE breached the same Standard Contract at issue in PSEG.[6] Delmarva sought damages allegedly based upon breach of contract. Delmarva's alleged damages as a result of the breach included the costs associated with the interim storage of SNF, to include "additional capital expenses and related capital and maintenance expenses," as well as the diminished value of the purchase price of the nuclear facilities and the Standard Contract. Delmarva First Amend. Compl. ¶¶ 7, 76-79; Atlantic City First Amend. Compl. ¶¶ 7, 76-79. Delmarva also asserted breaches of the implied covenant of good faith and fair dealing and an uncompensated taking. Delmarva First Amend. Compl. ¶¶ 80-91; Atlantic City First Amend. Compl. ¶¶ 80-91.

---

[6/] The Delmarva complaint also seeks damages based upon a contract that was at issue in another case Exelon Generation Company, LLC v. United States, No. 04-103C (Fed. Cl.), which was previously amicably resolved.

## DISCUSSION

### I. CONSOLIDATION IS APPROPRIATE UNDER THE CIRCUMSTANCES BECAUSE THESE CASES INVOLVE MULTIPLE COMMON FACTUAL AND LEGAL ISSUES, AND, IN THE ABSENCE OF CONSOLIDATION, THERE IS A SUBSTANTIAL RISK OF INCONSISTENT JUDGMENTS BETWEEN THE CASES

#### A. Standards For Consolidation

Motions to consolidate are governed by RCFC 42, which provides as follows:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all matters in issue in the actions; it may order all the actions consolidated; and it may make any such orders concerning proceedings therein as may tend to avoid unnecessary costs or delays.

RCFC 42(a).

In determining whether consolidation is appropriate, the Court must weigh the interest of judicial economy against the potential for delay, confusion, and prejudice that may result from consolidation. See Karuk Tribe of California v. United States, 27 Fed. Cl. 429, 433 (1993). Indeed, "[o]ne of the primary objectives of consolidation is to prevent separate actions from producing conflicting results, which can occur when both cases require judicial determinations of the same facts." Id. (quoting Bank of Montreal v. Eagle Assocs., 117 F.R.D. 530, 532 (S.D.N.Y. 1987); see Cable Belt Conveyors, Inc. v. Alumina Partners of Jamaica, 669 F. Supp. 577, 581 (S.D.N.Y. 1987) (consolidation was appropriate where different factual findings between the two cases could result in inconsistent damages awards).

Courts have held that, where two plaintiffs have sued the same defendant, alleging the same misconduct, and answered with the same defenses, the two cases share "common issues of

law and fact," justifying consolidation. Harris v. L&L Wings, Inc., 132 F.3d 978, 981 n.2 (4th Cir. 1997); see Allfirst Bank v. Progress Rail Serv. Corp., 178 F. Supp. 2d 513, 520 (D. Md. 2001) (where the parties are the same, the claims and defenses are identical, and the same contract must be construed in each case, that consolidation is appropriate).

The decision whether to consolidate two cases is within the discretion of the Court. Karuk Tribe, 27 Fed. Cl. at 433; see Entergy Nuclear Indian Point 2, LLC v. United States, 62 Fed. Cl. 798, 802 (2004). Moreover, the Court may order consolidation despite the opposition of the parties. See St. Bernard Gen. Hosp., Inc. v. Hospital Serv. Assoc., 712 F.2d 978, 989 (5th Cir. 1983); see Entergy Nuclear Indian, 62 Fed. Cl. at 802. "The court should take the positions of the parties into account in its analysis but need not accord the parties' views dispositive weight." Boston Edison Co. v. United States, 67 Fed. Cl. 63, 66 (2005) (citing Entergy Nuclear Indian, 62 Fed. Cl. at 802).

### B. Delmarva And PSEG Nuclear's Cases Satisfy The Criteria For Consolidation

#### 1. Delmarva And PSEG Nuclear's Cases Share Common Issues Of Fact And Law

It is beyond dispute that Delmarva and PSEG Nuclear's cases share common issues of fact and law. Indeed, these two cases involve the same contract, the same nuclear power facilities, and the same alleged breach of contracts. As noted above, Delmarva was originally a minority owner for Salem and Hope Creek. As owner and operator of Salem and Hope Creek, PSEG was the purchaser under the respective Standard Contracts at issue in these cases. Delmarva transferred its claims under the Standard Contract to PSEG Nuclear when it entered into its Purchase and Sales Agreements with PSEG on September 27, 1999. Delmarva First

Amend. Compl. ¶ 60; Atlantic City First Amend. Compl. ¶ 60. Now, both Delmarva and PSEG Nuclear are suing the Government for damages allegedly resulting from the partial breach of the Salem and Hope Creek Standard Contracts and seek to recover as damages the "substantial additional costs to provide for extended on-site storage" of the SNF at the facilities. Delmarva First Amend. Compl. ¶ 79; Atlantic City First Amend. Compl. ¶ 79; PSEG Nuclear First Amend. Compl. ¶ 25.

Delmarva and PSEG Nuclear may claim that their individual damages theories are different and distinct and that, therefore, the Court should not consolidate the two cases. Any such assertion would be false. In its complaint, Delmarva asserts that "DOEs failure to commence acceptance and disposal of SNF on January 31, 1998 significantly diminished the values of the Nuclear Stations and the Standard Contract." Delmarva First Amend. Compl. ¶70; Atlantic City First Amend Compl. ¶ 70. Delmarva then asserts that it should recover the diminished value that it received upon its sale of the nuclear stations as damages in this case notwithstanding the fact that it has also purported to transfer its claims under the Standard Contracts to PSEG Nuclear.

Conversely, PSEG Nuclear is seeking to recover as damages in its litigation all of the costs that it allegedly incurred and will incur in storing SNF as a result of DOE's delays. That is, even though (according to Delmarva) PSEG Nuclear has received compensation from Delmarva – in the form of a reduced purchase price – for DOE's delay in beginning SNF acceptance and was allegedly able to compensate itself, at least in part, for continuing additional SNF storage costs through that reduced purchase price, PSEG Nuclear is seeking to recover all of those same costs from DOE in its litigation. As a result, Delmarva and PSEG Nuclear are both claiming

extensive damages from the United States based upon overlapping and duplicative theories of recovery. If the Court granted both plaintiffs' claims, the United States would pay damages twice for the same partial breach of contract under the same Standard Contracts, based upon duplicative theories of recovery. That type of double liability would be inappropriate, and the possibility of that result is eliminated if the Court consolidates these cases. Indeed, as this Court recently recognized in partially granting the Government's motion for consolidation under identical circumstances in Boston Edison Co., 67 Fed. Cl. at 66, "[t]he possibility of an overlapping recovery deserves serious consideration."

Even if Delmarva or PSEG Nuclear could validly assert that their cases are somehow not seeking inconsistent and duplicative damages recoveries, the fact that the plaintiffs assert different legal theories based upon the same facts does not justify the denial of a motion to consolidate. See Boston Edison, 67 Fed. Cl. at 67; Farrell v. American Flyers Airline Corp., 42 F.R.D. 341, 342 (S.D.N.Y. 1967). In Mylan Pharmaceuticals Inc. v. Henney, 94 F. Supp. 2d 36 (D.D.C. 2000), rev'd on other grounds sub nom. Pharmachemie B.V. v. Barr Laboratories, Inc., 276 F.3d 627 (D.C. Cir. 2002), two generic drug manufacturers brought separate lawsuits challenging the exclusivity determination by the Food and Drug Administration ("FDA") in favor of another generic drug manufacturer. One manufacturer sought to enjoin the FDA from imposing an "indefinite delay" on the effective date of a particular drug, while the other manufacturer, in addition to seeking to enjoin the FDA, also sought entitlement to an exclusivity incentive for marketing its drug. The FDA sought to consolidate the two drug manufacturers' cases into a single lawsuit, and the manufacturers opposed the consolidation motion upon the grounds that they demanded different forms of relief. The court rejected this argument,

concluding that consolidation was appropriate and noting that "plaintiffs' request for different forms of relief does not vitiate the propriety of consolidation, but rather, consolidation is proper to any or all matters in issue which are common." Id. at 44 (emphasis in original).[7]

Here, not only do these two cases share the exact same factual basis, they share many of the same issues of law. For example, the Court may have to review the scope and validity of Delmarva's transfer of its claims under the Standard Contract to PSEG Nuclear in the purchase and sales agreements for the nuclear facilities. Contractors typically are prohibited by statute from assigning contracts or claims against the Government to a third party. See 31 U.S.C. § 3727 & 41 U.S.C. § 15 (2004). However, the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. §§ 10101-10270, contains a specific assignment provision providing that "[t]he rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved." 42 U.S.C. § 10222(b)(3). This Court will have to determine the scope and validity of the transfer in this case and, specifically, will have to determine which claims, if any, belong to Delmarva and which claims, if any, belong to PSEG Nuclear.[8] Because Delmarva and PSEG will take conflicting positions regarding the effectiveness of the assignment, a substantial risk of inconsistent determinations and duplicative liabilities exists if all of these plaintiffs are not bound by the same decision. Moreover, by

---

7/ Similarly, in Karuk Tribe an Indian tribe and individual members of another Indian tribe each sued the Government, alleging a taking of a particular Indian reservation. The Court granted the Government's motion for consolidation, explaining that, because common issues of fact and law predominate, and because there would be no undue delay or prejudice, consolidation was appropriate. Karuk Tribe, 27 Fed. Cl. at 433.

8/ The Government has not found any record or notice that demonstrates Delmarva assigned its rights and duties to PSEG pursuant to Article XIV of the Standard Contract.

addressing the scope of Delmarva's transfer of claims, the Court will be able to ensure that the plaintiffs' damages claims do not overlap; that no duplicative damages recovery occurs; that the plaintiffs do not prevail (to the Government's prejudice) upon conflicting interpretations of the Government's obligations under the contracts at issue here; and that any "diminution in value" award to Delmarva, which Delmarva seeks in its complaint, is somehow accounted for and offset against any award to PSEG Nuclear, which, if it received its own damages award, would be the ultimate beneficiary of that temporary "diminution in value."

Moreover, many of the legal defenses raised by the Government apply with equal force to both Delmarva and PSEG Nuclear. For example, as noted above, both Delmarva and PSEG Nuclear are claiming damages for the costs associated with storing SNF. However, whether either of the plaintiffs have incurred damages associated with the cost of storing SNF turns in part upon the determination of the rate and schedule of SNF acceptance. Absent consolidation, there is the potential that the Court could apply different rates of SNF acceptance to the damages award calculation, even though the same contract is at issue in both cases, leading to inconsistent judgments in the two cases.

Similarly, it is anticipated that the Government will assert as a defense that the Standard Contract does not cover the disposal of GTCC, see Pacific Gas & Electric Co. v. United States, 73 Fed. Cl. 333, 401-04 (2006): Sacramento Municipal Util. Dist. v. United States, 70 Fed. Cl. 332, 374 (2006), and, consequently, that many costs associated with SNF storage would have been incurred anyway. Similarly, because DOE is not necessarily obligated to accept failed fuel under the same schedule as standard SNF, see 10 C.F.R. § 961.11, Art. VI.A.2(b), the plaintiffs cannot recover as damages costs that they would have incurred for storing failed fuel regardless

of DOE's breach. Another likely defense that the Government will raise involves the canistering of the SNF. Canisters are not covered by the Standard Contract, and, so long as a utility places its SNF into such canisters, DOE will not accept that utility's SNF absent a contract modification and appropriate compensation. See 10 C.F.R. § 961.11, Art. VI.A.2(b) & App. E; Sacramento Municipal, 70 Fed. Cl. at 373-74. Consequently, the Court's resolution of the status of canisters could affect the schedule upon which DOE was obligated to accept SNF from Delmarva or PSEG Nuclear. Again, different assumptions and findings would create a risk of inconsistent judgments. All of these issues directly affect both the SNF storage activities in which the contract holder would have to engage regardless of DOE's delay in beginning SNF acceptance. Accordingly, whether the claim is one for additional on-site storage costs or for the effect upon sales price resulting from the potential future need to incur additional on-site storage costs, the issues in these cases are highly duplicative and require a consistent resolution.

The factual overlap between the cases is demonstrated in part by the fact that many of the witnesses in both cases will be the same. Presumably, the studies and decisions that Delmarva or PSEG Nuclear made regarding additional storage options will be at issue in both cases because both plaintiffs seek to recover the costs of that additional storage. Accordingly, former Delmarva and PSEG Nuclear employees who were involved in these decisions will be called as witnesses in both cases. Moreover, with respect to Delmarva's diminution in value claim, discovery has already been sought from PSEG Nuclear to determine whether the Government's breach played any role in the price that PSEG Nuclear ultimately paid for the utility. See Delmarva Order (January 27, 2006). If discovery and the trial record in the other SNF cases is any indication, it is probable that the Government witnesses will be the same in both cases. The Government's

witnesses will have no knowledge concerning Delmarva and PSEG Nuclear's specific damages. However, Government witnesses have been deposed in the other SNF cases upon issues such as the rate and schedule of SNF acceptance, including issues related to exchanges of approved delivery commitment schedules, as well as the status of GTCC radioactive waste, failed fuel, and SNF contained in canisters. Consequently, not only is there a factual overlap between the cases, we anticipate that many of the witnesses will be the same in both cases. Furthermore, the Court has previously recognized that the cases may merit consolidation. A. 60 (Delmarva hearing transcript, April 7, 2005, at 23).

Finally, the interests of judicial economy are served by consolidating these cases. First, the cases are in similar procedural posture. Discovery has begun in Delmarva, but discovery is not scheduled to close until November 12, 2007, leaving time for discovery in PSEG Nuclear. Although motions to dismiss PSEG Nuclear's takings claim and motions for summary judgment regarding liability, the rate of acceptance, and the acceptance of GTCC radioactive waste are currently pending on the Court's docket, these motions have not been ruled upon and may need to be updated given the passage of time.[9] Second, should the Court determine that resolution of the issue of liability is necessary in these cases, the Court's consideration of the parties' motions on liability will be aided by consolidation of the cases. With consolidation of the cases, the

---

9/ Although the Government has filed a motion for summary judgement in Delmarva, which the Court denied on July 7, 2005 without prejudice to renew, the Government has not filed all of these same motions in Delmarva. If the Court wishes to consider these motions, the Government can file the same motions in Delmarva because the motions have equal applicability in that case. However, consolidation of the cases would make those duplicative filings unnecessary.

Court need only issue one ruling on the motions, a ruling which should apply equally to all plaintiffs.[10]

### 2. Neither Delmarva Nor PSEG Nuclear Would Be Prejudiced By Consolidation

Not only would consolidation promote judicial efficiency under the circumstances, but neither Delmarva nor PSEG Nuclear would be prejudiced if the Court consolidates these cases. As discussed above, both cases are in similar pretrial posture, and there is little, if any, risk of delay in either case should they be consolidated. Although the parties had briefed a series of dispositive motions in Delmarva and PSEG, those motions have not been ruled upon or have been denied without prejudice to renew, and may benefit from further briefing (to address more recently issued decisions) before the Court considers them. Moreover, these motions should be filed in both cases because the same issues are present in both cases. However, if the Court were to consolidate these cases, the Court's ruling on these pending motions would be equally applicable to both plaintiffs.

Moreover, consolidation of these two cases would not result in any confusion. Indeed, consolidation would minimize potential confusion by allowing consideration of the entire factual background of these contracts in a single proceeding. As mentioned above, it is anticipated that many of the same witnesses would be utilized in both cases. In fact, most of the discovery

---

[10] On December 19, 2006, the Court in Nebraska Public Power District v. United States, No. 01-116C (Fed. Cl.), certified its October 31, 2006 Opinion and Order "finding the writ of mandamus issued by the court of Appeals for the Circuit of the District of Columbia in Northern States Power Co. v. Dept. Of Energy, 128 F.3d 754 (D.C. Cir. 1997) to be void for want of jurisdiction." Therefore, the issue of liability under the unavoidable delays clause of the Standard Contract may appropriately be the subject of motions in the future, subject to the proceedings and any decision of the United States Court of Appeals for the Federal Circuit.

relating to Delmarva's diminished value claim – that is, its claim that PSEG Nuclear paid less than it would have paid had DOE not breached the contract – will involve PSEG Nuclear, including records regarding PSEG Nuclear's belief as to whether it was paying a reduced price for Delmarva's facility as a result of DOE's breach. Therefore, there would be no prejudice to either Delmarva or PSEG Nuclear if consolidation is granted.

3. The Government Will Be Severely Prejudiced If The Two Cases Are Not Consolidated

If the Court does not grant the Government's motion for consolidation or at the very least, find some way to bind all of these plaintiffs to the same findings of fact and law relating to the contract at issue, the Government would be severely prejudiced, as the Government would have to expend significant resources trying separately two substantially similar cases with identical facts and conflicting damages theories and to risk the possibility of inconsistent judgments based upon two cases that share the same factual predicate and the same legal issues. Absent consolidation, the Government would have to continue to attempt to take third-party discovery from PSEG Nuclear in Delmarva's case and from Delmarva in PSEG Nuclear's case. It would require the Government to attempt to account for Delmarva's diminished value arguments in presenting its evidence in PSEG Nuclear's case and PSEG Nuclear's apparent denial that it paid a reduced price for Delmarva's assets in Delmarva's case. It would require the Government to risk duplicative damages awards based upon the nature of Delmarva's purported assignment of claims and inconsistent arguments by the plaintiffs regarding the assignment's scope and validity. The Government should not have to risk the possibility of inconsistent and duplicative damages

awards or the costs of litigating those cases separately. Under these circumstances, consolidation of these two cases is appropriate.

## II. IF THE COURT DECLINES TO CONSOLIDATE THESE CASES, THE COURT SHOULD ISSUE A SUMMONS TO JOIN PSEG NUCLEAR AS A THIRD-PARTY DEFENDANT IN DELMARVA'S CASE AND, FURTHER, SHOULD ISSUE RCFC 14(b) NOTICES TO PSEG NUCLEAR AND DELMARVA

If the Court declines to consolidate Delmarva's and PSEG Nuclear's cases, defendant respectfully requests that, pursuant to RCFC 14(a), the Court issue a summons to join PSEG Nuclear as a third-party defendant in Delmarva. The summons is for the purpose of answering the contingent claim of the United States for the recovery of any monies that it may pay to Delmarva with respect to the transaction or matter which constitutes the subject matter of the pending suit against the United States. Specifically, to the extent that the United States is required to pay any money to Delmarva upon its claim that PSEG Nuclear, as a means of compensating itself for the additional on-site storage costs it might incur because of DOE's alleged breach, paid a diminished price for the nuclear power stations, the United States should recoup that money against any damages award that the United States is required to pay to PSEG Nuclear upon PSEG Nuclear's claims for the costs of additional on-site storage.[11]

In addition, defendant respectfully requests that the Court issue notice to PSEG Nuclear in Delmarva, and to Delmarva in PSEG Nuclear, pursuant to RCFC 14(b) and the Contract

11/ Because consideration of our request to join PSEG Nuclear as a third-party defendant in the Delmarva case will be unnecessary if the Court consolidates Delmarva's and PSEG Nuclear's cases, we respectfully request that the Court defer until 10 days after a decision upon this motion the Government's obligation pursuant to RCFC 14(a)(2) to provide "an appropriate pleading setting forth the claim or contingent claim which it is asserting against such third person." If the Court grants the Government's motion to consolidate, the work necessary to create such a pleading will be unnecessary.

Settlement Act, 41 U.S.C. § 114(b). Under 41 U.S.C. § 114(b), the Court may notify any party having a possible interest in any pending suit or proceeding to appear and assert or defend its interests. Should a notified party fail to appear, "any and all claims or interests in claims of any such person against the United States, in respect to the subject matter of such suit or proceeding, shall forever be barred." 41 U.S.C. § 114(b); see Del-Rio Drilling Programs, Inc. v. United States, 17 Cl. Ct. 844, 849 (1989) ("third parties who fail to appear may nonetheless be bound in a later suit in another court by certain determinations made in this court without the third party's presence"). Notice is appropriate where third parties "hav[e] possible interests [in] any suit or proceeding of any nature." 41 U.S.C. § 114(b). "The rationale behind the issuance of a notice is the prevention of numerous proceedings and determinations on an identical set of facts." Philadelphia Suburban Corp. v. United States, 211 Ct. Cl. 354, 355 (1976). "Thus it is in furtherance of the conservation of judicial time and effort that the [Court] determines that notice shall issue where interest is apparent." Id. "Should a noticed person decline to appear . . . he cannot be forced so to do, though he may nevertheless be bound, in a later suit in another court, by certain determinations of this court." Uram v. United States, 216 Ct. Cl 418, 420 (1978). Here, for the reasons previously explained, both Delmarva and PSEG Nuclear will involve numerous factual issues that are either identical or will substantially overlap. In the absence of consolidation, issuance of notice pursuant to RCFC 14(b) and the Contract Settlement Act will reduce the likelihood of the need for duplicative fact-finding proceedings and the possibility of conflicting factual findings.

## III. PROPOSED SCHEDULE OF FURTHER PROCEEDINGS CONCERNING LIABILITY IN THIS CASE

In its order dated December 14, 2006, the Court requested that we provide a proposed "schedule of further proceedings concerning liability in this case." As the Court is aware, the plaintiff in this case filed a motion for summary judgment on liability on December 19, 2001. The Government responded to that motion on January 22, 2002, establishing that PSEG had never submitted any delivery commitment schedules ("DCSs") to the Department of Energy ("DOE"), which form the basis upon which the nuclear utility contract holder commits to providing and DOE commits to accepting particular amounts of SNF within particular period of time, and that PSEG had not established the prerequisites necessary for obtain commitments from DOE for accepting particular SNF at particular times. We further demonstrated that PSEG had failed, as part of its summary judgment motion regarding liability, to establish that it had incurred any damage from DOE's delay, precluding a finding of liability. See Puritan Assocs. v. United States, 215 Ct. Cl. 976, 978 (1977); Cosmo Constr. Co. v. United States, 196 Ct. Cl. 463, 469-70 & n.3, 451 F.2d 602, 605-06 & n.3 (1971). Having failed to establish that it had suffered at least some damage as a result of DOE's delay, PSEG has no basis for seeking summary judgment upon liability. Briefing was completed on PSEG's summary judgment motion on February 8, 2002. That motion was held in abeyance in light of Judge Sypolt's January 31, 2005 decision that the Court lacked jurisdiction to entertain the contract claims in this case, a decision that the United States Court of Appeals for the Federal Circuit reversed on September 29, 2006, in PSEG Nuclear L.L.C. v. United States, 465 F.3d 1343 (Fed. Cir. 2006).

We believe it appropriate for this Court to suspend further consideration of the liability issues in this case pending resolution of any interlocutory appeal of this Court's October 31, 2006 decision in Nebraska Public Power District v. United States, No. 01-116C (Fed. Cl.), which is reported at 73 Fed. Cl. 650 (Fed. Cl. Oct. 31, 2006), certified for interlocutory appeal, 2006 WL 3754809 (Fed. Cl. Dec. 19, 2006), because that could significantly affect any liability ruling in this case. As the Court may be aware, the contract at issue in this case contains a contract clause entitled "Unavoidable Delays," which provides that neither party "shall be liable under this contract for damages" caused by an inability to perform contractual obligations if performance was unavoidably delayed by "circumstances beyond the reasonable control of the purchaser or DOE — such as . . . acts of Government in either its sovereign or contractual capacity." 10 C.F.R. § 961.11, Art. IX.A. In 1997, the United States Court of Appeals for the District of Columbia Circuit in Northern States Power Co. v. United States Department of Energy, 128 F.3d 754 (D.C. Cir. 1997), issued a writ of mandamus in 1997 ordering DOE to

> proceed with contractual remedies in a manner consistent with the NWPA's command that it undertake an unconditional obligation to begin disposal of SNF by January 31, 1998. More specifically, . . . DOE [is precluded] from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim.
>
> This necessarily means, of course, that DOE not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of "acts of Government in either its sovereign or contractual capacity."

Northern States, 128 F.3d at 760. This Court in Nebraska Public Power held that the D.C. Circuit's writ of mandamus is void, having been issued by a court that lacked jurisdiction to

consider that issue and a lack of any waiver of sovereign immunity in that court. If the Government were permitted to rely upon the "Unavoidable Delays" clause, it could constitute an absolute defense to this action. On December 19, 2006, this Court certified its October 31, 2006 opinion for interlocutory appeal. Because of the potential effect of that decision upon this case and upon any liability ruling in this case, the Court should suspend consideration of PSEG's liability motion until resolution of any appeal of the Nebraska Public Power decision.

Assuming that the Court believes it appropriate to consider the merits of PSEG's liability motion during the pendency of any appellate review of the Court's decision in Nebraska Public Power, while preserving our right to raise an "Unavoidable Delays" defense at an appropriate time if circumstances permit, the briefing upon PSEG's liability motion is complete and may be resolved without further briefing by the parties. Nevertheless, the Court has issued decisions in several other cases relevant to the issues raised in the summary judgment briefing. To the extent that the Court would like for the parties to supplement the prior briefing to identify and discuss these other decisions, we proposed the following schedule: Plaintiff's supplemental briefing, to be filed on February 12, 2007; defendant's response to plaintiff's supplemental briefing, to be filed on March 8, 2007; and plaintiff's reply to that response, to be filed by March 26, 2007.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court grant the Government's motion to consolidate Delmarva and PSEG Nuclear. If the Court declines to consolidate these cases, we respectfully request that the Court in Delmarva issue a summons to PSEG Nuclear, that the Court in Delmarva issue notice pursuant to RCFC 14(b) and the Contract Settlement Act to ENVY, and that the Court in PSEG Nuclear issue notice pursuant to RCFC 14(b) and the Contract Settlement Act to Delmarva.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Andrew P. Averbach by Stephen Finn
ANDREW P. AVERBACH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 353-0527
Fax: (202) 307-2503

OF COUNSEL

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

STEPHEN FINN
Civil Division
Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530

January 5, 2007

Attorneys for Defendant