CLERK OF SUPERIOR COURT
SUPERIOR COURT OF N.J.
MERCER COUNTY
RECEIVED AND FILED

ATTACHMENT 1

ORDER PREPARED BY THE COURT DEC 19 2007

| | |
|---|---|
| PSE&G Power, LLC, and PSE&G Nuclear, LLC, Plaintiffs, | SUPERIOR COURT OF NEW JERSEY MERCER COUNTY CHANCERY DIVISION – GENERAL EQUITY DOCKET NO. C-59-07 |
| v. | CIVIL ACTION |
| Atlantic City Electric Co. and Delmarva Power and Light Co., Defendants. | ORDER |

This matter having been opened to the Court by way of an Order to Show Cause seeking to confirm the arbitration award entered by the arbitration panel on June 20, 2007 pursuant to N.J.S.A. 2A:23B-22 filed by Plaintiffs; and opposition having been filed by Defendants; and the Court having reviewed the submissions of the parties; and having heard oral argument on November 13, 2007; and for the reasons set forth in the Statement of Reasons attached; and for good cause having been shown;

IT IS ON THIS 19th DAY OF DECEMBER, 2007,

ORDERED that the Order to Show Cause filed by Plaintiffs seeking to confirm the arbitration award rendered on June 20, 2007 pursuant to N.J.S.A. 2A:23B-22 is GRANTED and JUDGMENT is entered accordingly in favor of Plaintiffs.

Neil H. Shuster, P.J., Ch.

PSEG POWER, LLC and
PSEG NUCLEAR, LLC

v.

ATLANTIC CITY ELECTRIC CO. and
DELMARVA POWER & LIGHT CO.

Docket No. C-59-07

PLAINTIFFS' REQUEST FOR THE ISSUANCE OF AN ORDER TO SHOW CAUSE SEEKING RELIEF BY WAY OF SUMMARY ACTION

This matter arises from a verified complaint and order to show cause to proceed summarily filed on June 25, 2007 by PSEG Power, LLC and PSEG Nuclear, LLC ("Plaintiffs") against Atlantic City Electric Company ("ACE") and Delmarva Power and Light Company ("Delmarva") (collectively "Defendants") seeking to confirm an arbitration award entered on June 20, 2007. On July 2, 2007, the Court signed Plaintiffs' order to show cause to proceed summarily to confirm the arbitration award. On July 11, 2007, Defendants filed a cross-motion to stay Plaintiffs' order to show cause pending the outcome of a motion by Defendants before the United States Court of Federal Claims ("Court of Federal Claims") to vacate the June 20, 2007 arbitration award. On July 24, 2007, Defendants filed an answer, counterclaim and affirmative defenses. On August 20, 2007, this Court denied Defendants' motion for the entry of a stay of all proceedings in

this matter. On August 30, 2007, the Court of Federal Claims denied Defendants' request to vacate the arbitration award, on the grounds that it lacked jurisdiction to entertain the issue. On September 18, 2007, this Court set oral argument on Plaintiffs' order to show cause for October 15, 2007, later rescheduled to November 13, 2007. On November 13, 2007, the Court of Federal Claims granted summary judgment for the United States against Defendants on the issue of whether Defendants had takings claims they could bring against the United States. Oral argument on Plaintiffs' application seeking to confirm the arbitration award took place on November 13, 2007; however, the decision by the Court of Federal Claims issued on November 13, 2007 was not known to this Court or to the parties at the time of oral argument.

The facts reveal that Plaintiffs are the operator and sole owner of the Hope Creek Nuclear Generating Station ("Hope Creek") and the operator and majority owner of the Salem Nuclear Generating Station ("Salem") (collectively the "Stations"). On or around September 27, 1999, Plaintiffs purchased the minority interests of Defendants in those stations pursuant to purchase agreements (the "Agreements"). According to Plaintiffs, the Agreements provide that Defendants were to sell Plaintiffs their entire

minority interests in the Stations[1] including all claims related to the assets being sold. Plaintiffs also assert that the Agreements give Plaintiffs the exclusive control over any litigation related to any of the assets being sold, as well as assigning to Plaintiffs the right of recovery associated with such litigation.

Specifically, Section 2.1 of the Agreements provides those assets to be transferred as a part of the sale of the Stations, and states, in pertinent part:

> Upon the terms and subject to the conditions set forth in this Agreement, at the Closing, Seller shall sell, assign, convey, transfer and deliver to Buyer, and Buyer shall purchase, assume and acquire from Seller . . . those assets listed below, each as in existence on the Closing Date (collectively the "Purchased Assets"):
>
> (l) All claims of Seller relating to or pertaining to the Department of Energy Standard Contract (including all claims for failure by the Department of Energy to take Spent Nuclear Fuel) accrued prior to, on or after the Closing Date, whether relating to periods prior to, on or after the Closing Date, and all other claims of Seller against the Department of Energy with respect to, arising out of or in connection with the Purchased Assets . . .
>
> (m) The rights of Seller in, to and under all causes of action against third parties with respect to, arising out of or in connection with Seller's rights, title and interests in and to the Purchased Assets or the Assumed Liabilities, or any portion thereof, whether accruing prior to, on or after the Closing Date, other than any such causes of action as constitute Excluded Assets or Excluded Liabilities.

[1] According to Plaintiffs, at the time of the sale, ACE owned 7.41% of Salem and 5% of Hope Creek, and Delmarva owned 7.41% of Salem.

Additionally, Section 2.5 of the Agreements covers the control of litigation and provides that Plaintiffs "shall be entitled exclusively to control, defend and settle any suit, action or proceeding and any investigation arising out of or related to any Purchased Assets or Assumed Liabilities . . ." See Cert. of Christopher J. McAuliffe, Exh. A.

The Agreements also contain an arbitration clause and a provision stating the proper forum to hear any disputes arising out of the subject matter of the Agreements. Specifically, Section 8.3 of the Agreements, entitled "Arbitration," provides, in pertinent part:

> (a) Notwithstanding any provision hereof to the contrary, in the event of any dispute between Seller and Buyer arising after the Closing . . . and relating to or arising out of any provision of this Agreement . . . the sole remedy available to either Party is the dispute resolution process set forth in this Section 8.3.
>
> (b) The chief executive officers . . . of each of the Parties shall meet at a mutually acceptable time and place to attempt to settle any dispute in good faith.
>
> (c) In the event that (i) a meeting has been held in accordance with Section 8.3(b) and (ii) any such dispute of the kind referred to in Section 8.3(a) shall have not been resolved at such meeting, then, upon the written request of any Party, the Parties shall submit such dispute to binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association. The decision, judgment and order of the arbitration tribunal shall be final, binding and conclusive as to the Parties involved in such dispute, and their respective Representatives, and may be entered in [a] court of competent jurisdiction.

Section 10.10 of the Agreements provides some guidance as to the "court of competent jurisdiction." Specifically, it provides, in pertinent part:

> This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey . . . as to all matters, including validity, construction, effect, performance and remedies. Venue in any and all suits, actions and proceedings related to the subject matter of this Agreement shall be in the state and federal courts located in and for the State of New Jersey (the "Courts") which shall have exclusive jurisdiction for such purpose, and the Parties hereby irrevocably submit to the exclusive jurisdiction of such Courts and irrevocably waive the defense of an inconvenient forum to the maintenance of any such suit, action or proceeding.

The current litigation arises out of separate actions filed by both Plaintiffs and Defendants against the Department of Energy ("DOE") in the Court of Federal Claims. In 1982, Congress passed the Nuclear Waste Policy Act which authorized the DOE to enter into contracts with utilities to accept title to, transport and dispose of spent nuclear fuel ("SNF"). The DOE subsequently created a standard contract that required it to commence acceptance of SNF no later than January 31, 1998 in exchange for a one-time fee for SNF generated prior to 1983 and an on-going fee assessed by the DOE for SNF generated thereafter. However, according to Plaintiffs, the DOE failed to meet its obligations to begin removing SNF and may not start this performance until the year 2017 at the earliest. Because of this delay, utilities that own and operate nuclear generating stations have been required

to incur substantial costs for being forced to continue to store SNF. In this case, Plaintiffs entered into contracts with the DOE for the removal of SNF from the Stations. The DOE has failed to do so, and in 2004, Plaintiffs filed suit against the United States for breach of contract in the Court of Federal Claims.

Defendants also filed claims against the United States in January 2004 seeking just compensation for the taking of private property by the federal government under the Takings Clause of the Fifth Amendment. The takings claims arose from the DOE's failure to remove SNF from the Stations which, at the time, were owned in part by Defendants. Defendants sought the losses they suffered prior to the sale of the Stations to Plaintiffs under the Agreements, which Defendants allege includes a substantially reduced sale price for the sold interests. The Court of Federal Claims initially denied the DOE's motion for summary judgment on Defendants' takings claim originally filed on April 28, 2005, and had granted another motion by Defendants seeking to subpoena documents from Plaintiffs. Plaintiffs have asked Defendants to dismiss their litigation because in Plaintiffs' suit against the DOE, the DOE stated that any recovery by Defendants in their litigation must directly offset any recovery by Plaintiffs in their litigation. The DOE also informed Plaintiffs that it will not settle its litigation with Plaintiffs

without also resolving the claims advanced in Defendants' litigation. Because Defendants refused to dismiss their litigation, Plaintiffs triggered the dispute resolution procedures in Section 8.3. However, these procedures failed to resolve the dispute between the parties.

As a result, Plaintiffs subsequently filed an arbitration demand on April 5, 2007, essentially seeking a declaration that, under the Agreements, Defendants assigned to Plaintiffs all rights in the Purchased Assets, including all claims related to the DOE's failure to remove SNF (including the takings claims), that Plaintiffs hold the right to control any litigation concerning the failure to remove SNF, and that Defendants are required to dismiss their litigation at Plaintiffs' request. In response, on April 16, 2007, Defendants filed their own separate arbitration demand. On April 23, 2007, Defendants filed an amended arbitration demand which sought to invalidate Plaintiffs' arbitration demand, a declaration that Plaintiffs' claims were not subject to arbitration, and a dismissal of Plaintiffs' arbitration claims.

On June 20, 2007, the arbitration panel in a 2-1 decision entered an award in favor of Plaintiffs. The majority opinion stated that the dispute was arbitrable, and held that the Agreements' comprehensive assignment language included the takings claims at issue; accordingly, Plaintiffs were assigned both the claims themselves and the right to control litigation over

them. Additionally, it found that Defendants' refusal to dismiss their litigation against the United States in the Court of Federal Claims violated the Agreements. The separate opinion of Arbitrator John D. Aldock stated that Plaintiffs forfeited their claim to arbitration through litigation conduct and under the doctrine of laches, but additionally, that the Court of Federal Claims was in a better position to address these arguments. See Verified Complaint, Exh. 4. Pursuant to Section 10.10 of the Agreements, Plaintiffs then filed their verified complaint and order to show cause seeking the confirmation of the June 20, 2007 arbitration award on June 25, 2007.

On July 2, 2007, the same day that the Court signed Plaintiffs' order to show cause to proceed summarily to confirm the arbitration award, Defendants filed a motion to vacate the arbitration ruling in the Court of Federal Claims. On July 11, 2007, Defendants filed a cross-motion in this Court to stay Plaintiffs' order to show cause pending the outcome of this motion to vacate the arbitration ruling. On July 24, 2007, Defendants filed an answer, counterclaim and affirmative defenses in response to Plaintiffs' verified complaint.

On August 20, 2007, this Court denied Defendants' motion for the entry of a stay of all proceedings in this matter. This Court denied the motion because it found that the Court of Federal Claims is not the

appropriate jurisdiction to entertain Defendants' motion to vacate. This Court stated that the Court of Federal Claims has the power to only hear claims against the United States for monetary relief. This Court found instead that Defendants' motion to vacate should be heard as part of this state court proceeding. On August 30, 2007, the Court of Federal Claims found that it lacked jurisdiction to vacate an arbitration award. However, the Court of Federal Claims requested supplemental briefing on several issues in light of the United States' acceptance of Defendants' assignment of claims to Plaintiffs. The United States had filed a notice on August 22, 2007 stating that the Government had:

> accepted the assignment of those claims that [Defendants] purported to make to PSEG Nuclear, to the extent that we have been made aware of those claims through [Defendants'] complaint in this action and through the assignment provisions in the purchase and sale agreements that have been included in the appendices to some of the briefing in this case.

On November 13, 2007, the Court of Federal Claims ruled on Defendants' motion to vacate the June 20, 2007 arbitration award and on the United States' renewed motion for summary judgment. It reiterated that it would deny Defendants' motion to vacate the arbitration award because it lacked jurisdiction over disputes between private parties. Furthermore, and perhaps more importantly, it granted the United States' summary judgment motion against Defendants. Specifically, the Court of Federal Claims found

that the United States had expressly consented to the assignment of claims from Defendants to Plaintiffs, and this acceptance vitiated the provisions of the Assignment of Claims Act that otherwise would have barred Defendants' assignment of claims against the United States to Plaintiffs. Therefore, because Defendants had assigned all of their claims against the United States related to the failure to remove SNF to Plaintiffs, the Court of Federal Claims granted summary judgment against Defendants in favor of the United States.

In the motion presently before the Court, Plaintiffs argue that the June 20, 2007 arbitration award should be confirmed because of New Jersey's strong public policy in support of arbitration as a method of resolving disputes. Additionally, Plaintiffs maintain that there is no evidence of any impropriety, wrongdoing, or significant mistakes in the arbitration process and order that would justify the correction, modification or vacation of the award. Defendants contend that the Court should not confirm the award because the award exceeded the arbitrators' powers, the arbitrators refused to consider pertinent evidence, and the arbitration concerned a question for which there was no agreement to arbitrate. Additionally, Defendants argue that the award exhibited a manifest disregard of relevant law and therefore must be vacated.

The issue before the Court is whether to confirm the June 20, 2007 arbitration award. The Court will first discuss whether it is appropriate for Plaintiffs to have brought this action as a summary proceeding. R. 4:67-1 governs summary actions and provides that a summary action may be brought where the court is permitted by rule or by statute to proceed in a summary manner. R. 4:67-2 provides that those litigants proceeding summarily shall proceed by filing a verified complaint with an order to show cause.

Plaintiffs seek to move summarily under N.J.S.A. 2A:23B-22, entitled "Confirmation of Award," which provides:

> After a party to an arbitration proceeding receives notice of an award, the party may file a summary action with the court for an order confirming the award, at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to section 20 or 24 of this act or is vacated pursuant to section 23 of this act.

Hence, it is clear that Plaintiffs may bring this action as an order to show cause seeking to proceed summarily.

Next the Court must determine whether it should analyze the validity of the arbitration award under federal or state law. There is a strong federal policy in favor of arbitration and arbitrators' decisions. Congress enacted the Federal Arbitration Act ("FAA"), also known as the United States Arbitration Act, in 1925 to abrogate the then-existing common law rule

disfavoring arbitration agreements "and to place arbitration agreements upon the same footing as other contracts." Martindale v. Sandvik, Inc., 173 N.J. 76, 83-84 (2002) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). Section 2 of the FAA provides that it applies to all contracts involving interstate commerce. See 9 U.S.C. 2. In enacting Section 2, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Martindale, supra, at 84 (quoting Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)).

Section 10 of the FAA provides the grounds upon which a court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made
>
> See 9 U.S.C. 10.

Additionally, under federal law, as a matter of last resort, an arbitration award may be vacated if it evidences a manifest disregard for law. St. John's Mercy Med. Ctr. v. Delfino, 414 F.3d 882, 884, 884 n.1 (8th Cir. 2005) (citing Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004)). It must be emphasized however that this doctrine is "extremely narrow," and should be reserved only for "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." Ibid. Put another way, a successful challenge to an arbitration award, apart from 9 U.S.C. 10, depends upon the challenger's ability to show that the award is "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Advest, Inc. v. McCarthy, 914 F.2d 6, 8-9 (1st Cir. 1990) (quoting Local 1445, United Food and Commercial Workers v. Stop & Shop Cos., 776 F.2d 19, 21 (1st Cir. 1985)).

New Jersey shares this strong public policy favoring arbitration as a means to resolve disputes. It is a well-accepted principle that New Jersey supports the settlement of disputes by arbitration. Singer v. Commodities Corp., 292 N.J. Super. 391, 400 (App. Div. 1996). See also Stigliano v.

Saint Rose High School, 198 N.J. Super. 520, 529 (App. Div. 1984) (stating that New Jersey courts have long favored the settlement of disputes by arbitration). Under the New Jersey Arbitration Act ("NJAA"), pursuant to N.J.S.A. 2A:23B-23(a), a court shall vacate an arbitration award under any of the following circumstances:

> (1) the award was procured by corruption, fraud, or other undue means;
>
> (2) the court finds evident partiality by an arbitrator; corruption by an arbitrator; or misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
>
> (3) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 15 of this act, so as to substantially prejudice the rights of a party to the arbitration proceeding;
>
> (4) an arbitrator exceeded the arbitrator's powers;
>
> (5) there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection pursuant to subsection c. of section 15 of this act not later than the beginning of the arbitration hearing; or
>
> (6) the arbitration was conducted without proper notice of the initiation of an arbitration as required in section 9 of this act so as to substantially prejudice the rights of a party to the arbitration proceeding

Usually, however, the FAA preempts state laws concerning arbitration agreements. It is firmly established that the FAA preempts state laws that

invalidate arbitration agreements. Martindale, supra, at 85. See also B & S Ltd., Inc. v. Elephant & Castle Int'l, Inc., 388 N.J. Super. 160, 172 (Ch. Div. 2006) (quoting Doctor's Assocs., Inc. v. Hamilton, 150 F.3d 157, 162 (2d Cir. 1998)) (stating that the "Supreme Court has declared that the FAA preempts all state laws that impermissibly burden arbitration agreements"). Nothing in the FAA indicates the broad principle of enforceability of arbitration agreements is subject to any additional limitations under state law. B & S Ltd., supra, at 172 (citing Southland Corp., supra, at 11).

However, the FAA's preemption does not completely encompass state laws. The FAA specifically permits states to regulate contracts, including contracts containing arbitration agreements under general contract principles; therefore, an arbitration clause may be invalidated upon such grounds as exist at law or in equity for the revocation of any contract. Martindale, supra, at 85. Nor does the FAA always preempt state laws. The FAA, while possessing some preemptive force, does not entirely displace state arbitration law, and will be found to be preemptive only when state law prevents parties from fully arbitrating their disputes. Del Piano v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 372 N.J. Super. 503, 508-09 (App. Div. 2004). See also ASW Allstate Painting & Constr. Co. v. Lexington Ins. Co., 188 F.3d 307, 310 (5th Cir. 1999) (stating that the FAA does not preempt

state arbitration rules as long as the state rules do not undermine the goals and policies of the FAA). The Del Piano court found that where New Jersey's conflict of interest statute was identical in its language to the conflict of interest provision of the FAA, New Jersey's statute could not be found to stand as an obstacle to the purposes of the FAA and thus be preempted by it. Del Piano, supra, at 509.

Similarly, the Court finds here that the language of Section 23 of the NJAA mirrors the language of Section 10 of the FAA. The first four grounds of vacation under the NJAA are nearly identical to those grounds listed under the FAA. The NJAA does list two additional grounds; however, the Court does not find that these last two grounds would "impermissibly burden arbitration agreements." Rather, the first of these two grounds simply states an arbitration award cannot be confirmed when no arbitration agreement existed in the first place, and the second of the two grounds speaks to giving proper notice of initiating an arbitration proceeding and does not concern the substance of the arbitration agreement or proceeding. Therefore, the Court finds that the NJAA does not prevent the parties here from fully arbitrating their disputes, nor does it undermine the policies of the FAA which strongly support the resolution of disputes by arbitration.

Furthermore, in Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468 (1989), the United States Supreme Court was presented with a dispute over an arbitration agreement entered into by the parties. The agreement contained a provision stating that all disputes "arising out of or relating to this contract or the breach thereof" were subject to arbitration. Id. at 470. The agreement also had a clause providing that "[t]he Contract shall be governed by the law of [California]." Ibid. At issue was whether application of the California Arbitration Act was preempted by the FAA in a case where the parties agreed that their arbitration agreement was governed by the laws of California.

The United States Supreme Court held that the California Arbitration Act was not preempted by the FAA in that matter. It found that the FAA does not prevent the enforcement of agreements to arbitrate under different rules than those set forth in the FAA itself where the parties agreed to abide by state rules of arbitration. Id. at 479. The Court declared that were this not the case, the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms would be frustrated. Ibid. Rather, arbitration under the FAA is a matter of consent, not coercion, and parties should be generally free to structure their arbitration agreements as they see fit. Ibid.

In this matter, Section 10.10 of the Agreements provides that they will be "governed by and construed in accordance with the laws of the State of New Jersey (without giving effect to conflicts of law principles) as to all matters, including validity, construction, effect, performance and remedies." Therefore, because the parties have agreed to resolve their disputes under New Jersey law, the Court shall apply the NJAA to the facts of this case in determining whether the June 20, 2007 arbitration award should be confirmed.

Finally, the Court must determine whether to confirm the June 20, 2007 arbitration award pursuant to the NJAA. Defendants' primary contentions raised in support of their position that the arbitration award must be vacated are that (1) the Assignment of Claims Act was not complied with, and (2) numerous cases stand for the proposition that a private party cannot assign or transfer a takings claim against the United States to another private party. The Assignment of Claims Act, 31 U.S.C. 3727 (formerly 31 U.S.C. 203), provides that an assignment of any part of a claim against the United States Government or of an interest in the claim may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. Defendants contend that these requirements have not been satisfied by the parties in this matter.

Defendants also state that case law is clear in holding that private parties cannot by mutual agreement assign takings claims against the United States. Defendants cite to Dow v. United States, 357 U.S. 17 (1958) which states that the Assignment of Claims Act prohibits the voluntary assignment of a compensation claim against the Government for the taking of property and that the owner of the property at the time of the taking, not the owner at an earlier or later date, receives the payment. Id. at 20-21. Additionally, the Government has an obligation to provide just compensation for takings. Id. at 24. Defendants cite to Argent v. United States, 124 F.3d 1277 (Fed. Cir. 1997) which states that absent a valid voluntary assignment of a compensation claim against the Government for the taking of property, the general rule is that the owner at the time of the taking is the party who has the claim and is to receive payment. Id. at 1287. Defendants additionally cite to Rochester Gas & Electric Corp. v. United States, 65 Fed. Cl. 431 (2005) as a case that is "on all fours with" the present matter. In Rochester Gas, the plaintiff sold its nuclear plant to a third party and executed a contract with the third party which assigned its takings claims, related to the DOE's failure to remove SNF, to the third party. The United States challenged this assignment under the Assignment of Claims Act. The Rochester Gas court held that the plaintiff could not assign its takings claims

to the third party. Id. at 441. It stated that a party must own the property at the time that the alleged taking occurred in order for it to be able to allege that its property right had been taken. Ibid. Defendants thus conclude that these cases affirm that, under the Assignment of Claims Act, the assignment of takings claims against the Government to a third party is absolutely null and void unless certain requirements, none of which were met here, are satisfied.

Based on these contentions, Defendants have made four arguments pursuant to state and federal arbitration law in asserting that the June 20, 2007 arbitration award must be vacated. First, Defendants contend that the arbitrators exceeded their powers by depriving Defendants of their fundamental constitutional right to just compensation. See N.J.S.A. 2A:23B-23(a)(4). Second, Defendants argue that the arbitrators failed to consider evidence which prejudiced the rights of Defendants. See N.J.S.A. 2A:23B-23(a)(3). Third, Defendants maintain that the arbitration clause of the Agreements is not applicable to Defendants' takings claims because the claims do not arise under the Agreements, but rather under the Fifth Amendment of the United States Constitution. See N.J.S.A. 2A:23B-23(a)(5). Finally, Defendants argue that the arbitrators acted in manifest disregard of the law by disregarding the above mentioned case law.

In addressing these arguments, the Court first discusses the general purview of the review of arbitration awards by New Jersey courts. Notwithstanding the apparently broad scope of a court's powers to alter an arbitrator's award as described in the statutory language, our courts have not traditionally interpreted the statutory language broadly. Kimm v. Blisset, LLC, 388 N.J. Super. 14, 29-30 (App. Div. 2006), cert. den., 189 N.J. 428 (2007) (citing Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 355 (1994)). Arbitration is a favored remedy in New Jersey, Faherty v. Faherty, 97 N.J. 99, 105 (1984), and a strong judicial presumption exists in favor of the validity of an arbitration award. Del Piano, supra, at 510. Thus, it is rather difficult for a party to successfully move a New Jersey court to amend or vacate an arbitration award. With this in mind, the Court now addresses each of Defendants' arguments in turn.

*1. Did the Arbitrators Exceed Their Powers?*

Defendants argue that the arbitrators exceeded their powers, pursuant to N.J.S.A. 2A:23B-23(a)(4) because the arbitrators decided a constitutional issue incorrectly. Defendants argue that the arbitration panel ignored three different rules: (1) that when the Government takes property, it must pay for it; (2) that only the owner of property at the time of the taking is entitled to recover from the Government; and (3) that if the assignment is to an

assignee who can't bring the claim against the United States, the claim reverts back to the assignor. Defendants assert that because the arbitration panel assigned Defendants' takings claims to Plaintiffs who, as the subsequent owners of the minority interests, are not entitled to bring those claims, the takings claims are in effect extinguished and the United States no longer is obligated to pay just compensation for these takings. Defendants also claim that this ruling has deprived them of their fundamental right to just compensation. Defendants conclude that because this is in contravention of the law that prohibits the forfeiture of takings claims, the arbitrators exceeded their powers, and therefore the arbitration award should be vacated.

Plaintiffs respond that the arbitration panel's authority is derived from the Agreements. Therefore, the arbitrators could have only exceeded their powers if they decided an issue that was outside the scope of the Agreements. Plaintiffs argue that the arbitrators did not decide a constitutional issue as Defendants allege, but rather decided a contractual issue based on the language of the Agreements. Plaintiffs maintain that because the Agreements establish that any dispute regarding the assignment of Defendants' takings claims is covered under the arbitration clause's broad

scope in Section 8.3(a), the arbitrators did not step outside the bounds of their authority and thus did not exceed their powers.

An arbitrator's authority to resolve a dispute is based upon the contract between the parties. High Voltage Eng'g Corp. v. Pride Solvents & Chemical Co. of New Jersey, Inc., 326 N.J. Super. 356, 361-62 (App. Div. 1999) (citing Communications Workers of America, Local 1087 v. Monmouth County Bd. of Soc. Servs., 96 N.J. 442, 448 (1984)). Thus, the jurisdiction and authority of the arbitrator are circumscribed by and limited to the powers delegated to him. Communications Workers, supra, at 448. If an arbitrator ignores the limited authority that the contract confers, the arbitrator has exceeded his powers and the court may not defer to the arbitrator's decision. Zervos v. Freedman Properties, 223 N.J. Super. 599, 603 (Ch. Div. 1987) (citing County College of Morris Staff Ass'n v. County College of Morris, 100 N.J. 383, 391 (1985)). Therefore, in determining whether the arbitration panel had the authority to resolve the dispute as to the transfer of the takings claims from Defendants to Plaintiffs, the Court must look to the language of the Agreements.

The Court finds that it is clear that the arbitration panel had the power and authority to rule on whether the takings claims had been assigned to Plaintiffs. Section 2.1(l) of the Agreements states that the Purchased Assets

include any of Defendants' claims relating to the failure of the DOE to remove SNF from the Stations. Section 2.1(m) provides that the Purchased Assets also include all of Defendants' rights under any cause of action against third parties related to their former interests in the Stations. Thus, the dispute here over whether Defendants' takings claims were assigned to Plaintiffs is based on the language of Section 2.1(l) and Section 2.1(m). Section 8.3 of the Agreements provides that any dispute related to any provision in the Agreements is subject to arbitration. Because this dispute is based on Sections 2.1(l) and (m), it is subject to arbitration under Section 8.3.

Moreover, the Court finds that Defendants' argument that the arbitration panel's ruling will relieve the United States from its obligation to pay just compensation for its taking is irrelevant towards determining the scope of the arbitration clause in the Agreements. The arbitration panel's function was not to determine the ultimate result from the assignment of Defendants' claims, but whether Defendants' takings claims were in fact transferred to Plaintiffs as part of the Purchased Assets under the Agreements. Nor did the arbitration panel decide what would become of Defendants' assigned takings claims; rather it simply found that the Agreements' assignment language included Defendants' takings claims and

that the Assignment of Claims Act did not act as an absolute prohibition of Defendants' assignment of their takings claims to Plaintiffs. Therefore, the Court finds that the arbitrators have not exceeded their powers here.

*2. Did the Arbitrators Fail to Consider Evidence?*

Defendants next argue, pursuant to N.J.S.A. 2A:23B-23(a)(3), that the arbitrators failed to consider evidence related to the potential value of their takings claims against the United States. The arbitration panel addressed the viability of Defendants' claims by stating:

> It is also uncertain whether the takings theory under which the claims are being brought will prove to be viable and to what extent ACE/Delmarva would be able to show any significant loss as a minority owner. Further assuming the sellers were able to proceed with the takings claims, it is unclear whether and to what extent any takings damages would remain for the sellers in these cases after the buyer's contract claims were resolved. See Boston Edison, 64 Fed. Cl. at 187. Thus, the idea that recognition of ACE/Delmarva's assignment to PSEG of the takings claims is against the public interest is speculative and may also be exaggerated.
>
> Arb. Opinion, pp. 23-24

Defendants contend that this assertion is entirely inappropriate and should not be a basis to justify the extinguishment of Defendants' takings claims. Defendants claim that these statements demonstrate that the arbitrators failed to consider the "undisputed evidence" indicating that Defendants' claims are viable and valuable, and thereby prejudiced Defendants and the New Jersey

customers on whose behalf Defendants' takings claims are being pursued. Defendants point to the evidence that there is a long-standing basis for takings claims of this nature, that Defendants' claims have already withstood a summary judgment motion by the United States,[2] and that substantially identical claims in a recent case withstood all motions to invalidate them. In Boston Edison Co. v. United States, 64 Fed. Cl. 167 (2005), the Court of Federal Claims denied the government's motion for summary judgment against the plaintiff, and according to Defendants, the trial has recently concluded with asserted damages of over $100 million. See Cert. of Nicholas Mattia, ¶ 10. Defendants have retained the same expert used in the Boston Edison Co. case, and this expert has proffered that Defendants' claims may be worth $70-80 million. See ibid. Therefore, by ignoring the evidence demonstrating that Defendants' takings claims have merit to them, Defendants argue that they have been substantially prejudiced by the arbitrators.

Defendants also argue that the arbitration panel failed to consider the aforementioned litany of cases that Defendants cited to in support of their position that the only party able to bring a takings claim against the Government is the owner of the property at the time of the taking, and any

[2] This point, however, is now mooted after the Court of Federal Claims granted the United States' most recent motion for summary judgment on November 13, 2007, as mentioned supra.

attempt to assign such a claim to a third party is invalid. Defendants state that the arbitrators made absolutely no reference to Dow, supra, or Argent, supra, and only referred to Rochester Gas, supra, as support for an unrelated proposition despite the fact that these were the cases that Defendants primarily relied on. Therefore, Defendants contend that the arbitration panel failed to consider the propositions that these cases stand for and were thereby prejudiced. Defendants argue that the arbitration panel should have distinguished these opinions in order to demonstrate that the panel considered this evidence.

Plaintiffs respond that just because a judge has allowed a takings claim in another case to make it to trial does not establish the validity of Defendants' takings claims in their case against the United States in the Court of Federal Claims. Plaintiffs contend that arbitration awards have only been vacated on this basis when the arbitrators haven't allowed evidence to be entered or presented, not when the arbitrators have found evidence to simply be not compelling. Moreover, Plaintiffs state that this evidence is not material to the underlying issue of whether Defendants assigned their takings claims to Plaintiffs when the parties executed the Agreements. Finally, Plaintiffs argue that the arbitration panel did not have to address this litany of cases because, contrary to Defendants' assertions, no

case exists which states that a takings claim cannot be assigned between private parties. Therefore, Plaintiffs argue that the arbitration panel did not fail to consider material evidence in making its decision.

The Court finds that this evidence that the arbitration panel allegedly failed to consider was not material to the controversy at issue, i.e., whether Defendants assigned their takings claims to Plaintiffs pursuant to the Agreements. The arbitration panel addressed the viability of Defendants' takings claims in support of its finding that Defendants felt they were getting a fair value for their minority interests in the Stations regardless of any takings claims. This finding contradicts Defendants' belief that Plaintiffs would be receiving a windfall if the arbitration panel found that the takings claims had been assigned, because (1) the viability of the takings claims is uncertain, and (2) the amount of liabilities assumed by Plaintiffs from Defendants remains uncertain. But the arbitration panel stated that "[w]hatever rhetorical force this argument may have, it does not give the Panel license to rewrite the [Agreements], which plainly state (multiple times) that all claims relating to SNF are assigned to PSEG." Arb. Opinion at 23. Therefore, the Court finds that the arbitration panel based its decision on the language of the Agreements, and not the issue of viability of the takings claims. Thus, the evidence that the arbitration panel purportedly

failed to consider was immaterial to its finding that pursuant to the Agreements, the takings claims were assigned.

Moreover, the Court finds that the arbitration panel need not have cited to the litany of cases presented to it by Defendants because the arbitration panel recognized that only the United States could invoke the Assignment of Claims Act as a defense, and that the United States had the authority to consent to an assignment of takings claims. Defendants allege that Dow, supra, Argent, supra, and Rochester Gas, supra, all affirm that under the Assignment of Claims Act, the assignment of takings claims against the Government to a third party is "absolutely null and void" unless certain specific requirements are met. However, the arbitration panel rejected this alleged proposition by stating that the Government could consent to an assignment of a claim that would otherwise violate the Assignment of Claims Act, see Vt. Yankee Nuclear Power Corp. v. United States, 73 Fed. Cl. 236, 240 (2006), and that only the United States could invoke the Assignment of Claims Act to void the assignment. See United States v. Certain Space in Property Known as Chimes Bldg., 320 F. Supp. 491, 496 (N.D.N.Y. 1969), aff'd, 435 F.2d 872 (2d Cir. 1970). Furthermore, the arbitration panel stated that Defendants' contention that they could not have assigned the takings claims at issue rang hollow, and that Defendants

failed to cite to any cases in which the Assignment of Claims Act has been used to invalidate an assignment as between private parties. The Court thereby finds that the arbitration panel did consider the cases cited by Defendants, but simply found that none of them prohibited the assignment of Defendants' takings claims at issue here. Therefore, the Court finds that Defendants' second argument that the arbitration panel failed to consider evidence must fail.

*3. Is the Arbitration Clause Applicable to Defendants' Takings Claims?*

Third, Defendants argue, pursuant to N.J.S.A. 2A:23B-23(a)(5), that the arbitration clause in the Agreements does not apply to Defendants' takings claims. Defendants state that Section 8.3 of the Agreements provides that any dispute relating to or arising out of any provision of this Agreement is subject to arbitration. However, Defendants argue that their takings claims do not arise out of the Agreements, but rather under the Fifth Amendment of the United States Constitution. Therefore, Defendants conclude that there was no agreement to arbitrate the assignment of their takings claims and thus the arbitration panel was without jurisdiction in making the arbitration award. Defendants additionally argue that because under the Assignment of Claims Act, the assignment of claims against the United States is rarely permitted in circumstances not relevant here, there

could be no agreement to arbitrate the assignment of Defendants' takings claims here.

Plaintiffs respond that this argument invokes the same issues that Defendants raised in their argument that the arbitrators exceeded their powers because the Court, in resolving the issue, must determine the scope of the arbitration clause. Plaintiffs again state that the language of the arbitration clause is clear in granting the arbitration panel jurisdiction over whether Defendants assigned their takings claims to Plaintiffs.

The Court finds that Defendants' arguments here are unpersuasive. The Court agrees that Defendants' takings claims against the United States do arise under the Fifth Amendment of the United States Constitution. However, the dispute between Defendants and Plaintiffs does not regard the merits of Defendants' takings claims against the United States. Rather, the dispute arises from whether, by executing the Agreements, Defendants assigned their takings claims to Plaintiffs as part of the Purchased Assets. This dispute thereby clearly arises from Section 2.1 of the Agreements which discusses which assets Plaintiffs are receiving. Therefore, the Court finds that there is an agreement to arbitrate whether Defendants' takings claims have been assigned to Plaintiffs.

Moreover, Defendants' argument under the Assignment of Claims Act does not change the fact that the arbitration clause in Section 8.3 applies to the dispute in this matter. The parties are both sophisticated, and were free to contract to any terms in the Agreements to their satisfaction. As the Court has already stated, the Assignment of Claims Act does not place an absolute prohibition on an assignment of takings claims against the United States from one party to another; the United States may choose to consent to such an assignment. Therefore, the Court finds that the arbitration clause in Section 8.3 is applicable to the assignment of Defendants' takings claims.

*4. Did the Arbitrators Act in Manifest Disregard of the Law?*

Finally, Defendants argue that the arbitrators acted in manifest disregard of the law. The Court first finds that it need not address this argument in light of its decision to apply the NJAA to this matter. It is clear to the Court that New Jersey law does not recognize "manifest disregard of the law" as a basis for vacation of an arbitration award. The Court first notes that the NJAA does not list "manifest disregard of the law" or other similar language as a reason under which an arbitration award can be vacated. See N.J.S.A. 2A:23B-23. Moreover, case law interpreting the former statute governing the vacation of an arbitration award, N.J.S.A. 2A:24-8 (nearly identical to the first four subsections of N.J.S.A. 2A:23B-

23(a)), has held that a mistake of law is not a ground for the vacation of an arbitration award. In Tretina v. Fitzpatrick & Assocs., 135 N.J. 349 (1994), the New Jersey Supreme Court discussed the previously existing standard under which a court could vacate an arbitration award whenever an arbitrator's award "embraced egregious mistakes of law." See Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 496 (1992). However, the Tretina court rejected this standard and adopted the standard articulated by Chief Justice Wilentz in his concurring opinion in Perini Corp., supra, which held that arbitration awards may be vacated only for fraud, corruption, or similar wrongdoing on the part of the arbitrators, and can be corrected or modified only for very specifically defined mistakes.[3] Tretina, supra, at 358. Thus, a mistake of law provides no basis for the vacation of an arbitration award. See Cap City Products, Co. v. Louriero, 332 N.J. Super. 499, 504 (App. Div. 2000). Therefore, the Court finds that Defendants are not entitled to seek vacation of the June 20, 2007 arbitration award on the alleged basis that the arbitrators acted in manifest disregard of the law.

Even were the Court to address Defendants' contention that the arbitrators acted in manifest disregard of the law, the Court would find that no support exists here for that position. Defendants argue that Rochester

[3] These mistakes are defined at N.J.S.A. 2A:24-9 as cited in Tretina, supra, and now pursuant to the NJAA at N.J.S.A. 2A:23-20 and are not applicable to the present matter.

Gas, supra, is "on all fours" with the situation at issue here. However, in Rochester Gas, supra, the United States was the party who challenged this assignment under the Assignment of Claims Act. Here the Defendants are attempting to invoke the Assignment of Claims Act in barring the assignment of their takings claims to Plaintiffs. As discussed, supra, only the United States may invoke the Act as a defense to an assignment of claims against it. See, e.g., United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 371 (1949); Martin v. National Sur. Co., 300 U.S. 588, 594 (1937). Moreover, the United States has expressly accepted the assignment of Defendants' takings claims to Plaintiffs, something it has the right to recognize. See Tuftco Corp. v. United States, 614 F.2d 740, 745 (Fed. Cl. 1980). Therefore, although the facts underlying the takings claims here may be similar to those facts in Rochester Gas, the fact that the United States has consented to the assignment here rather than attacked its validity distinguishes the situation here from that in Rochester Gas.

Moreover, the Court finds that the other cases cited by Defendants which are allegedly manifestly ignored by the arbitration panel do not support Defendants' position. Defendants contend that Dow, supra, stands for the proposition that any attempt to assign a takings claim against the United States to a third party is invalid. Although this may be generally

true, Defendants' reliance on Dow ignores the above mentioned precedent stating that the United States may consent to an assignment even if it doesn't comply with the requirements of the Assignment of Claims Act. Defendants' reliance on Argent, supra, and United States v. Shannon, 342 U.S. 288 (1952) is also misguided. These cases have held that absent a valid voluntary assignment of a compensation claim against the Government for the taking of property, the general rule is that the owner at the time of the taking is the party who has the claim and is to receive payment. These cases do not preclude the Government from recognizing assignment of takings claims and thereby removing the absence of a valid voluntary assignment. Therefore, it certainly cannot be said that this is one of those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent.

The Court thereby finds that all of Defendants' arguments in support of their position that the June 20, 2007 arbitration award should be vacated must be rejected. Therefore, the Court will confirm the June 20, 2007 arbitration award in this matter.

For the above stated reasons, Plaintiffs' request to confirm the June 20, 2007 arbitration award is GRANTED.